IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-CR-00272-MSN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## JAMES B. COMEY, JR.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT

James B. Comey, Jr., by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 12(b), moves this Court to dismiss the government's indictment. As explained further below, the government has singled out Mr. Comey for prosecution because of his protected speech and because of President Trump's personal animus toward Mr. Comey. Such a vindictive and selective prosecution violates the First Amendment, Due Process Clause, and equal protection principles. The proper remedy for this unconstitutional prosecution is dismissal with prejudice. Any lesser remedy would be insufficient in light of the government's flagrant misconduct and the need to deter the government from bringing further unconstitutional prosecutions.

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

    A.    Mr. Comey's Decades of Public Service Precede his Private Role as Vocal Critic of President Trump ............................................................ 2

    B.    As a Private Citizen, Mr. Comey Criticizes President Trump's Conduct in Office, While President Trump Responds with Vitriol.......... 4

    C.    President Trump Begins His Second Term and Retaliates Against Mr. Comey .................................................................................................. 8

    D.    President Trump's Hand-Picked Interim U.S. Attorney Prosecutes Mr. Comey, and President Trump Celebrates.......................................... 12

    E.    The Indictment Is Facially Flawed ......................................................... 14

ARGUMENT .................................................................................................................. 16

    I.    THE GOVERNMENT HAS VINDICTIVELY PROSECUTED MR. COMEY IN VIOLATION OF THE DUE PROCESS CLAUSE AND THE FIRST AMENDMENT ............................................................... 17

    A.    The Constitution Prohibits the Government from Vindictively Prosecuting a Defendant ....................................................................... 17

    B.    Objective Evidence Establishes that the Government Vindictively Prosecuted Mr. Comey.......................................................................... 18

        1.    The President harbors genuine animus toward Mr. Comey, including because of Mr. Comey's protected speech ................. 18

        2.    Mr. Comey would not have been prosecuted but for President Trump's animus ..................................................... 22

    II.    THE GOVERNMENT HAS SELECTIVELY PROSECUTED MR. COMEY, IN VIOLATION OF EQUAL PROTECTION PRINCIPLES ............ 26

    A.    The Constitution Prohibits the Government from Selectively Prosecuting a Defendant for Arbitrary Reasons, Including for Exercising First Amendment Rights ......................................................... 27

    B.    President Trump Has Directly Admitted that the Government is Prosecuting Mr. Comey For an Impermissible Discriminatory Purpose .................................................................................................... 27

    C.    In Any Event, Clear Evidence Establishes that the Government Is Selectively Prosecuting Mr. Comey for Impermissible Reasons............. 29

        1.    The government has declined to prosecute similarly situated individuals ...................................................... 29

# TABLE OF CONTENTS
(continued)

Page

    2.    The government's prosecution of Mr. Comey is invidious and in bad faith.............................................................................. 34

III.    THE PROPER REMEDY IS DISMISSAL WITH PREJUDICE....................... 35

IV.    AT MINIMUM, DISCOVERY AND A HEARING ARE WARRANTED BECAUSE MR. COMEY HAS SHOWN A REALISTIC LIKELIHOOD OF VINDICTIVENESS AND SELECTIVENESS............................................ 38

CONCLUSION.................................................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Nova Scotia v. United States*,
   487 U.S. 250 (1988)..................................................................................................35

*Berger v. United States*,
   295 U.S. 78 (1935)....................................................................................................19

*Blackledge v. Perry*,
   417 U.S. 21 (1974)....................................................................................................18

*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978)............................................................................................17, 22

*Bragan v. Poindexter*,
   249 F.3d 476 (6th Cir. 2001) ....................................................................................20

*Bronston v. United States*,
   409 U.S. 352 (1973)..................................................................................................15

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971)..................................................................................................27

*Collins v. Harker Heights*,
   503 U.S. 115 (1992)..................................................................................................19

*Comey v. U.S. Dep't of Justice*,
   No. 25-cv-7625 (S.D.N.Y. Sept. 15, 2025)........................................................8, 9, 11

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998)..........................................................................................19, 20, 21

*Goodfellas, Inc. v. Dunkel*,
   No. 3:15-CV-1633, 2016 WL 6599977 (M.D. Pa. Nov. 8, 2016) ....................................28, 34

*Gov't of Virgin Islands v. Fahie*,
   419 F.3d 249 (3d Cir. 2005)......................................................................................35

*Hartman v. Moore*,
   547 U.S. 250 (2006)............................................................................................19, 20

*Hu v. City of New York*,
   927 F.3d 81 (2d Cir. 2019)....................................................................................29, 32

## TABLE OF AUTHORITIES
### (Continued)

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)............................................................................................................18

*OneWest Bank, F.S.B. v. Drayton*,
    29 Misc. 3d 1021 (Sup. Ct. 2010)....................................................................................32

*Purze v. Vill. of Winthrop Harbor*,
    286 F.3d 452 (7th Cir. 2002) ......................................................................................29, 32

*Snyder v. Phelps*,
    562 U.S. 443 (2011)............................................................................................................20

*Texas v. Johnson*,
    491 U.S. 397 (1989)............................................................................................................18

*Trump v. United States*,
    No. 22-cv-81294 (S.D. Fl. Aug. 22, 2022) .......................................................................11

*United States v. Adams*,
    870 F.2d 1140 (6th Cir. 1989) ...........................................................................................21

*United States v. Armstrong*,
    517 U.S. 456 (1996)......................................................................................26, 27, 29, 39

*United States v. Avenatti*,
    433 F. Supp. 3d 552 (S.D.N.Y. 2020)................................................................................21

*United States v. Aviv*,
    923 F. Supp. 35 (S.D.N.Y. 1996) ......................................................................................21

*United States v. Ball*,
    18 F.4th 445 (4th Cir. 2021) ..............................................................................................17

*United States v. Bundy*,
    968 F.3d 1019 (9th Cir. 2020) ...............................................................................35, 36, 37

*United States v. Crowthers*,
    456 F.2d 1074 (4th Cir. 1972) ...........................................................................................29

*United States v. Falk*,
    479 F.2d 616 (7th Cir. 1973) .................................................................................23, 34, 35

*United States v. Goodson*,
    204 F.3d 508 (4th Cir. 2000) .............................................................................................35

*United States v. Goodwin*,
    457 U.S. 368 (1982)..............................................................................................18, 19, 39

## TABLE OF AUTHORITIES
(Continued)

*United States v. Greene*,
  697 F.2d 1229 (5th Cir. 1983) ......................................................................23, 34, 35

*United States v. Haggerty*,
  528 F. Supp. 1286 (D. Colo. 1981) ..............................................................................35

*United States v. Hasting*,
  461 U.S. 499 (1983) .................................................................................................35, 38

*United States v. Koh*,
  199 F.3d 632, 640 (2d Cir. 1999) ...............................................................................17

*United States v. McDonald*,
  553 F. Supp. 1003 (S.D. Tex. 1983) ......................................................................29, 32

*United States v. Monsoor*,
  77 F.3d 1031 (7th Cir. 1996) ......................................................................................21

*United States v. Olvis*,
  97 F.3d 739 (4th Cir. 1996) ...............................................................................27, 29, 33

*United States v. P.H.E.*,
  965 F.2d 848 (10th Cir. 1992) ....................................................................................39

*United States v. Sanders*,
  211 F.3d 711 (2d Cir. 2000) ...............................................................................17, 18, 21

*United States v. Sells Eng'g, Inc.*,
  463 U.S. 418 (1983) ......................................................................................................36

*United States v. Steele*,
  461 F.2d 1148 (9th Cir. 1972) .............................................................23, 24, 29, 32, 34, 35

*United States v. Torquato*,
  602 F.2d 564 (3d Cir. 1979) ...............................................................................26, 28, 34

*United States v. Venable*,
  666 F.3d 893 (4th Cir. 2012) .........................................................................29, 32, 33, 38, 39

*United States v. Williams*,
  504 U.S. 36 (1992) .......................................................................................................35

*United States v. Wilson*,
  262 F.3d 305 (4th Cir. 2001) ................................................17, 18, 19, 21, 22, 26, 38, 39

*Vill. of Willowbrook v. Olech*,
  528 U.S. 562 (2000) .....................................................................................................27

**TABLE OF AUTHORITIES**
(Continued)

*Wade v. United States*,
  504 U.S. 181 (1992)............................................................................................................19

*Wayte v. United States*,
  470 U.S. 598 (1985)....................................................................................................27, 34

**Constitution, Statutes, Regulations, and Rules**

U.S. Const.:
  Amend. I ...............................................................................1, 4, 18, 19, 26, 27, 36
  Amend. V ...............................................................................1, 16, 17, 18, 19, 22, 26

18 U.S.C.
  § 1001(a)(2) ............................................................................................................13
  § 1505 ....................................................................................................................13
  § 3282 ..........................................................................................................12, 22, 23
  § 3282(a) ..........................................................................................................22, 23
  § 3288 ....................................................................................................................37

28 U.S.C.
  § 546..............................................................................................................12, 23
  § 546(a) ................................................................................................................12
  § 546(c)(2) ..........................................................................................................12
  § 546(d) ................................................................................................................12

28 C.F.R. § 0.85 ..........................................................................................................2

Fed. R. Crim. P. 1(b)(1)(D).....................................................................................36

Fed. R. Crim. P. 6(d)(1) .........................................................................................36

Fed. R. Crim. P. 12(b)(3)(A).....................................................................................1

**Miscellaneous Government Documents**

John H. Durham, Rep. on Matters Related to Intel. Activities and Investigations
  Arising out of the 2016 Presidential Election (May 12, 2023)..................................4

Memorandum on Closing Arctic Haze Investigation (Sept. 8, 2017), in
  Declassified FBI Materials Produced to the House Judiciary Committee.................3

*Oversight of the Federal Bureau of Investigation: Hearing Before the S. Comm.
  on the Judiciary*, 115th Cong. (May 3, 2017)..........................................................3

*Oversight of the Crossfire Hurricane Investigation: Day 3*, *Hearing Before the
  U.S. Senate Committee on the Judiciary*, 116th Cong. (Sept. 30, 2020) ................14

**TABLE OF AUTHORITIES**
(Continued)

Remarks Prior to a Working Lunch With African Leaders and an Exchange With Reporters, 2009 Daily Comp. Pres. Doc. 202500757, (July 9, 2025) .......................................8

Statement on the Revocation of the Security Clearance of Former Director of the Central Intelligence Agency John O. Brennan, 2009 Daily Comp. Pres. Doc. 201800534 (Aug. 15, 2018) ...................................................................................6, 20

159 Cong. Rec. S6004 (daily ed. July 29, 2013) .........................................................2

**News Reports and Other Media**

Devlin Barrett, et al., *U.S Attorney Was Forced Out After Clashes Over How to Handle Russia Inquiry*, N.Y. Times (Oct. 14, 2025) ...............................................10

Chris Cillizza, *Jeff Sessions keeps forgetting and forgetting and forgetting about Russia and the 2016 election*, CNN (Nov. 3, 2017) ...............................................30

James B. Comey, *If Trump-Style Justice Becomes the Norm, Nobody is Safe*, Wash. Post (Aug. 25, 2020) .......................................................................................7

Phil Cross, *Okla. AG's Office confirms Pruitt used private email for state business*, Fox 25 (Feb. 24, 2017) ..................................................................................31

David Dayen, *Mnuchin Lied About His Bank's History of Robo-Signing Foreclosure Documents*, The Intercept (Jan. 25, 2017)..........................................31

Katherine Faulders, et al., *Ex-Special Counsel John Durham Undercut Case Against James Comey in Interview With Prosecutors: Sources*, ABC News (Oct. 6, 2025) ......................................................................................................9

Katherine Faulders, et al., *More Turmoil at Virginia US Attorney's Office Following Comey Indictment*, ABC News (Oct. 8, 2025) ....................................11

Alan Feuer, *Trump's Pick to Replace Ousted U.S. Attorney Lacks Prosecutorial Experience*, N.Y. Times (Sept. 22, 2025) ...............................................................11

James V. Grimaldi, *Rep. Tom Price Got Privileged, Discounted Offer on Biomedical Stock, Company Says*, Wall St. J. (Jan. 30, 2017) ...............................31

Jeremy Herb, et al., *Inside the Seven Tumultuous Days that Led to the James Comey Indictment*, CNN (Sept. 28, 2025) .................................................................9

Carol Leonnig, et al. *How Trump's new U.S. attorney got Comey indicted—by herself*, MSNBC, (Sept. 26, 2025) ..........................................................................12

Erica Orden, *Maurene Comey, Daughter of James Comey and Prosecutor of Jeffrey Epstein, is Fired*, Politico (July 16, 2025) ...................................................8

## TABLE OF AUTHORITIES
(Continued)

Jacob Rosen, et al., *Judge who reviewed James Comey's indictment was confused by prosecutor's handling of case, transcript shows*, CBS News (Sept. 26, 2025) ...................................................................................................................13

The Joe Rogan Experience #2334: *Kash Patel* (June 6, 2025) ....................................10

Michael S. Schmidt, *Trump Wanted I.R.S. Investigations of Foes, Top Aide Says*, N.Y. Times (Nov. 13, 2022) ..............................................................................6, 20

MSNBC, *Comey: Trump is Coming for the FBI, DOJ* (YouTube, May 22, 2024).......................7

John Sharp, *Jeff Sessions praises Trump 10 years after helping elect him and their famous falling out: 'He's still delivering'*, AL.com (Jan. 24, 2025) ......................................34

Brooke Singman, *FBI Launches Criminal Investigation of John Brennan, James Comey: DOJ Sources*, FOX News (July 8, 2025) ....................................8

Brooke Singman, *Patel found thousands of sensitive Trump-Russia probe docs inside 'burn bags' in secret room at FBI*, Fox News (July 30, 2025) ....................................10

Glenn Thrush, et al, *Inside the Trump Administration's Push to Prosecute James Comey*, N.Y. Times (September 27, 2025) ..............................................9

Glenn Thrush, et al*, U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025).......................................9, 10

*Transcript: James Comey's interview with ABC News chief anchor George Stephanopoulos*, ABC News: *World News Now* (Apr. 15, 2018).............................................4

*White House Daily Briefing*, C-SPAN (July 23, 2018) ....................................................6

Matt Zapotosky, *Sessions does not recall any meeting with Russian official at Mayflower hotel*, Wash. Post (June 13, 2017) .........................................................30

92NY, *James Comey in Conversation with Nicole Wallace* (YouTube, Dec. 10, 2018) .....................................................................................................................6, 7

## INTRODUCTION

The indictment in this case arises from multiple glaring constitutional violations and an egregious abuse of power by the federal government.  The United States Constitution entitles individuals to speak out against the government and, in turn, forbids the government from retaliating against individuals for their protected speech.  And bedrock principles of due process and equal protection have long ensured that government officials may not use courts to punish and imprison their perceived personal and political enemies.  But that is exactly what happened here.

President Trump ordered the Department of Justice (DOJ) to prosecute Mr. Comey because of personal spite and because Mr. Comey has frequently criticized the President for his conduct in office.  When no career prosecutor would carry out those orders, the President publicly forced the interim U.S. Attorney to resign and directed the Attorney General to effectuate "justice" against Mr. Comey.  He then installed a White House aide with no prosecutorial experience as interim U.S. Attorney.  The President's new hand-picked interim U.S. Attorney indicted Mr. Comey just days later—and days before the relevant statute of limitations was set to expire.

Defendant James B. Comey, Jr., submits this motion to dismiss under Federal Rule of Criminal Procedure 12(b)(3)(A) because the government's conduct in this case violates two settled and surpassingly important legal doctrines.  First, the government instigated a vindictive prosecution based on Mr. Comey's protected speech, in violation of the Due Process Clause and First Amendment.  Second, the government engaged in selective prosecution, in violation of equal protection principles.  Dismissal of federal criminal charges under these doctrines has been rare.  That is because for decades the DOJ has maintained the highest standard of ethics, following only the facts and the law to determine whether to bring criminal charges.  This case

marks a sharp departure from that tradition.  Ample objective evidence—much of which comes directly from government officials' own public statements and admissions—establishes that the government's animus toward Mr. Comey led directly to this vindictive and selective prosecution.

The proper remedy for the government's constitutional violations is a dismissal with prejudice.  That is the only way to cure the government's flagrant misconduct and to deter similar future prosecutions of perceived political opponents.

## STATEMENT OF FACTS

### A.    Mr. Comey's Decades of Public Service Precede his Private Role as Vocal Critic of President Trump

Mr. Comey devoted much of his career to government service before becoming a private citizen who vigorously spoke out on public and political issues.  From 1987 to 2005, he spent all but three years serving at the DOJ—first as an Assistant United States Attorney, later as United States Attorney, and eventually as Deputy Attorney General under President George W. Bush.  Later, President Barack Obama nominated Mr. Comey to serve as Director of the Federal Bureau of Investigation (FBI).  On July 29, 2013, the Senate confirmed Mr. Comey by a vote of 93 to 1. 159 Cong. Rec. S6004 (daily ed. July 29, 2013).

As FBI Director, Mr. Comey oversaw the FBI's daily operations, including investigations into national security threats and federal crimes involving terrorism, fraud, political corruption, gang violence, and cybercrimes.  *See* 28 C.F.R. § 0.85.  Among the many investigations Mr. Comey supervised was "Crossfire Hurricane," a counterintelligence investigation into alleged links between President Trump's 2016 campaign and the Russian government, as well as "Midyear Exam," a 2016 investigation into then-candidate Hillary Clinton's alleged mishandling of classified information during her tenure as Secretary of State.

After President Trump was elected in 2016, Mr. Comey continued to serve as FBI Director.  On May 3, 2017, Mr. Comey testified at the Senate Judiciary Committee's annual FBI oversight hearing.  *See Oversight of the Federal Bureau of Investigation: Hearing Before the S. Comm. on the Judiciary*, 115th Cong. (May 3, 2017) (Statement of James B. Comey, Dir. FBI, at 44:00), http://bit.ly/3WdliN9.  Many of the questions focused on Mr. Comey's handling of the Crossfire Hurricane and Midyear Exam investigations related to President Trump and Secretary Clinton, respectively.  *Id.*  As relevant here, Senator Chuck Grassley asked Mr. Comey: "[H]ave you ever authorized someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton investigation?"  Mr. Comey answered: "No."  *See Excerpt of Transcript of Oversight of the Federal Bureau of Investigation*, *Hearing Before the U.S. Senate Committee on the Judiciary*, 115th Cong., at 5 (May 3, 2017) ("FBI Oversight Transcript"), Exhibit B.

On May 9, 2017, President Trump fired Mr. Comey as FBI Director.  Thereafter, various prosecutors at the DOJ and the FBI investigated whether Mr. Comey had committed wrongdoing during his tenure as FBI Director, and all investigations concluded with no charges against him. In August 2017, the DOJ and the FBI initiated "Arctic Haze," an investigation into whether Mr. Comey had illegally disclosed classified information to the news media through Daniel Richman, a Columbia Law School professor and former FBI Special Government Employee.  *See* Memorandum on Closing Arctic Haze Investigation (Sept. 8, 2017), in Declassified FBI Materials Produced to the House Judiciary Committee, at -057, https://perma.cc/HZN7-B5QN. The government ultimately concluded that there was not "sufficient evidence to criminally charge any person, including Comey or Richman."  *Id.* at -065.

Additionally, in March 2019, Attorney General William Barr appointed John Durham as Special Counsel to review the FBI's and DOJ's handling of investigations into alleged connections between President Trump's 2016 campaign and the Russian government. *See* John H. Durham, Rep. on Matters Related to Intel. Activities and Investigations Arising out of the 2016 Presidential Election (May 12, 2023), https://perma.cc/AB9S-BUFE. As part of the investigation, Special Counsel Durham scrutinized whether the FBI had mishandled the Crossfire Hurricane investigation. *See id.* at 46-68. Although the final "Durham Report" offered critiques of the FBI's investigative standards, it did not find that Mr. Comey or any other senior FBI personnel violated any federal criminal statutes. *See id.* at 17-18.

### B.    As a Private Citizen, Mr. Comey Criticizes President Trump's Conduct in Office, While President Trump Responds with Vitriol

As a private citizen, Mr. Comey has vigorously and prominently exercised his First Amendment right to criticize President Trump. In response, President Trump has repeatedly attacked and threatened Mr. Comey. That pattern began soon after Mr. Comey's May 2017 termination as FBI Director and has continued up until—and even after—the indictment in this case.[1]

In April 2018, news accounts highlighted the upcoming publication of Mr. Comey's book, *A Higher Loyalty*. On April 15, ABC News released portions of an interview with Mr. Comey in which he compared President Trump to a New York mafia boss, calling him "untethered to truth," "unethical," and "morally unfit to be President." *Transcript: James Comey's interview with ABC News chief anchor George Stephanopoulos*, ABC News: *World News Now* (Apr. 15, 2018), https://perma.cc/6PZM-2ZEW. Mr. Comey also described President Trump as "[a] person who sees moral equivalence in Charlottesville, who talks about and treats

---

[1] Exhibit D to this motion summarizes public statements made by Mr. Comey and President Trump, respectively, in this context.

women like they're pieces of meat, and who lies constantly about matters big and small." *Id.*

That same month, President Trump posted numerous tweets displaying his personal animus toward Mr. Comey. He called Mr. Comey "a proven *LEAKER & LIAR*" and "a weak and untruthful slime ball," and stated that Mr. Comey "should be prosecuted." Donald J. Trump (@realDonaldTrump), X (Apr. 13, 2018, 08:01 ET), https://perma.cc/ND2J-QMUQ; Donald J. Trump (@realDonaldTrump), X (Apr. 13, 2018, 08:17 ET), https://perma.cc/KP3N-SM25. Five days after ABC released the interview with Mr. Comey, President Trump expressed frustration that "Shadey [sic] James Comey can Leak and Lie and make lots of money from a third rate book (that should never have been written)." Donald J. Trump (@realDonaldTrump), X (Apr. 20, 2018, 06:34 ET), https://perma.cc/SP56-KQAA. A week later, President Trump accused Mr. Comey of "illegally leak[ing] CLASSIFIED INFORMATION" and stated that Mr. Comey was "either very sick or very dumb." Donald J. Trump (@realDonaldTrump), X (Apr. 27, 2018, at 06:26 ET), https://perma.cc/BR25-WP3A.

Later that year, Mr. Comey spoke out against President Trump in connection with his actions in office. For instance, after President Trump gave remarks crediting Vladimir Putin's denials of Russian election interference, Mr. Comey tweeted: "This was the day an American president stood on foreign soil next to a murderous lying thug and refused to back his own country." James Comey (@Comey), X (July 16, 2018, at 17:06 ET), https://perma.cc/BBU6-9UCZ. And shortly before the 2018 midterm elections, Mr. Comey posted a tweet maintaining that "[t]he United States should be a shining light for the world, modeling a democracy that values truth" and that "Trump" is "dimming that light." James Comey (@Comey), X (Oct. 20, 2018, at 12:52 ET), https://perma.cc/QMF7-NABY.

Around this time, President Trump began exploring the possibility of using his official powers to retaliate against Mr. Comey. General John F. Kelly, President Trump's Chief of Staff from July 2017 through December 2018, has publicly stated that President Trump expressed a desire to deploy the FBI, DOJ, and Internal Revenue Service (IRS) against his critics, including Mr. Comey. Michael S. Schmidt, *Trump Wanted I.R.S. Investigations of Foes, Top Aide Says*, N.Y. Times (Nov. 13, 2022), https://perma.cc/G2FL-7HCQ. When General Kelly opposed deploying the IRS against Mr. Comey, he recalled President Trump stating that Mr. Comey was writing negatively about him and that he "[didn't] want [Comey] making money." *Id.*

Similarly, in July 2018, the White House Press Secretary announced that President Trump was "exploring" stripping John Brennan, the former director of the Central Intelligence Agency (CIA), of his security clearance in response to Mr. Brennan's criticisms of the President. *White House Daily Briefing*, C-SPAN (July 23, 2018) (video), https://bit.ly/4n4ZwWP. She added that the President was also looking into stripping the clearances of four others who had criticized the President, including Mr. Comey.[2] Soon thereafter, the President officially revoked Mr. Brennan's clearance. Statement on the Revocation of the Security Clearance of Former Director of the Central Intelligence Agency John O. Brennan, 2009 Daily Comp. Pres. Doc. 201800534 (Aug. 15, 2018), https://perma.cc/TW4F-JQ6J. The official White House announcement referred to former government officials using their clearances "to validate their political attacks" and stated that the President was "evaluating action with respect to" other individuals, including "James Comey." *Id.*

Leading up to the 2020 presidential election, Mr. Comey publicly advocated against President Trump's re-election. Mr. Comey urged Americans to "get off the couch" and vote

---

[2] In fact, Mr. Comey no longer had a security clearance at that time.

because President Trump's tenure had been an "attack on our values."  92NY, *James Comey in Conversation with Nicole Wallace* (YouTube, Dec. 10, 2018), https://bit.ly/3WcYblU.   He observed that while "Russia is engaged in efforts to undermine all manner of American institutions," President Trump "tweets lies about those institutions nearly every day."  *Id.*  He also authored a Washington Post op-ed maintaining that "if Trump-style justice becomes our tradition, nobody is safe" and urging election of "a president who will reflect the core values of honesty and decency that are the lifeblood or our nation and its institutions."  James B. Comey, *If Trump-Style Justice Becomes the Norm, Nobody is Safe*, Wash. Post (Aug. 25, 2020), https://perma.cc/KU44-VFSS.  In turn, President Trump responded by retweeting attacks calling Mr. Comey "a corrupt piece of garbage," "filth," "a disgraced lier [sic] & leaker," and a "weasel" who should "be in jail."  Donald J. Trump (@realDonaldTrump), X (Apr. 30, 2020, at 08:07 ET) (deleted) (reposted from Dan Bongino, @dbongino), https://perma.cc/CY38-AUML; Donald J. Trump (@realDonaldTrump), X (Sept. 10, 2020, at 08:51 ET), https://perma.cc/DL7J-65N2; Donald J. Trump (@realDonaldTrump), X (May 25, 2020, at 21:07 ET) (repost from Marie, @MarieLeff), https://perma.cc/Y9FR-3EH6; Donald J. Trump (@realDonaldTrump), X (Sept. 15, 2020, at 12:42 ET) (reposted from Rep. Jim Jordan, @Jim_Jordan), https://perma.cc/BQ97-QRUQ.

During the Biden presidency, Mr. Trump's attacks on Mr. Comey were sporadic until 2024, when Mr. Comey publicly warned during the election campaign that a second Trump term would have "serious" implications "for the Justice Department and the FBI, because Trump is coming for those institutions."  MSNBC, *Comey: Trump is Coming for the FBI, DOJ*, at 06:16 (YouTube, May 22, 2024), https://bit.ly/4oumoQV.  Then-candidate Trump responded by calling

Mr. Comey a corrupt liar who had perpetrated "[h]orrors."    Donald J. Trump, @realDonaldTrump, TruthSocial (May 24, 2024, at 17:57 ET), https://perma.cc/7J9D-PTMB.

**C.    President Trump Begins His Second Term and Retaliates Against Mr. Comey**

Since taking office for a second term in January 2025, President Trump has installed his former personal lawyers and advisors as high-level officials in DOJ, including as Attorney General, Deputy Attorney General, and FBI Director.  He has then publicly and repeatedly urged those officials to investigate and prosecute his longtime perceived political enemies, including Mr. Comey.

On July 9, 2025, public reports emerged stating that the DOJ was investigating Mr. Comey and Mr. Brennan.  *See* Brooke Singman, *FBI Launches Criminal Investigation of John Brennan, James Comey: DOJ Sources*, FOX News (July 8, 2025), https://perma.cc/J25X-C85P.  The following day, President Trump referred to Mr. Comey and Mr. Brennan as "crooked as hell" and "truly bad people and dishonest people," noting that "maybe they have to pay a price for that . . . whatever happens, happens."  Remarks Prior to a Working Lunch With African Leaders and an Exchange With Reporters, 2009 Daily Comp. Pres. Doc. 202500757, (July 9, 2025), https://perma.cc/EN8R-YDZ4.  He also posted a quote from a Fox News commentator stating that "James Comey needs daily therapy" and "is so obsessed with his hatred of Trump."  Donald J. Trump (@realDonaldTrump), TruthSocial, (July 10, 2025, at 09:13 ET), https://perma.cc/V9HV-SBAP.  And he included Mr. Comey alongside a list of "the Losers and Criminals of the Biden Administration."  Donald J. Trump (@realDonaldTrump), Truth Social, (July 12, 2025, at 17:21 ET), https://perma.cc/2SNF-83VJ.

On July 16, 2025, the DOJ abruptly fired Mr. Comey's daughter, Maurene Comey, a veteran Assistant United States Attorney in the Southern District of New York.  *See* Erica Orden,

*Maurene Comey, Daughter of James Comey and Prosecutor of Jeffrey Epstein, is Fired*, Politico (July 16, 2025), https://perma.cc/K8UD-8A3A.  Ms. Comey's firing came just three months after she had received her latest "outstanding" review and only a day after she had been asked to lead a public corruption case.  *See* Compl. at ¶ 3, *Comey v. U.S. Dep't of Justice*, No. 25-cv-7625 (S.D.N.Y. Sept. 15, 2025), ECF No. 1.  The DOJ gave no justification for Ms. Comey's firing other than a citation to Article II of the Constitution.  *Id.*

Around this same time, a team of career prosecutors from the U.S. Attorney's Office for the Eastern District of Virginia conducted an investigation of Mr. Comey.  *See* Glenn Thrush, et al*., U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025), https://perma.cc/Q75E-873N.  In September 2025, prosecutors interviewed Mr. Richman, but he was "not helpful" in their efforts to build a case.  Glenn Thrush, et al, *Inside the Trump Administration's Push to Prosecute James Comey*, N.Y. Times (September 27, 2025), https://perma.cc/6MFG-8D3U.  The government also reportedly interviewed Special Counsel Durham, who stated that his investigation had not uncovered evidence supporting charges against Mr. Comey.  *See* Katherine Faulders, et al., *Ex-Special Counsel John Durham Undercut Case Against James Comey in Interview With Prosecutors: Sources*, ABC News (Oct. 6, 2025), https://perma.cc/EJ4Z-D66B.  Multiple reports also stated that the career prosecutors ultimately concluded that no case should be brought against Mr. Comey.[3]  *See id.*; Thrush, et al., *Inside the Trump Administration's Push to Prosecute James Comey*, *supra*; Jeremy Herb, et al., *Inside the Seven Tumultuous Days that Led to the James Comey Indictment*, CNN (Sept. 28, 2025), https://perma.cc/4VP7-86ZV.

---

[3] As discussed *infra*, these reports are corroborated by the absence of any career prosecutor from the September 25, 2025, grand jury presentation that resulted in the indictment charging Mr. Comey in this case.

News reports also indicate that around the same time, an overlapping investigation focused on Mr. Comey began in the Western District of Virginia.  In June 2025, FBI Director Kash Patel stated that he was investigating allegedly classified documents found in a "room that Comey and others hid from the world" at the FBI in so-called "burn bags."  The Joe Rogan Experience #2334: *Kash Patel*, at 28:45 - 29:25 (June 6, 2025), bit.ly/3Wf83M1; *see* Brooke Singman, *Patel found thousands of sensitive Trump-Russia probe docs inside 'burn bags' in secret room at FBI*, Fox News (July 30, 2025), bit.ly/4n87a2J.  Although it is unclear whether and to what extent the government coordinated or jointly conducted the two investigations, a similar pattern of pressure and resistance appears to have played out in the Western District of Virginia.  The interim U.S. Attorney for the Western District of Virginia resigned in August because he refused to further demote or remove a career prosecutor who did not believe the case should be pursued; that prosecutor subsequently resigned as well.  Devlin Barrett, et al., *U.S Attorney Was Forced Out After Clashes Over How to Handle Russia Inquiry*, N.Y. Times (Oct. 14, 2025), https://perma.cc/Q999-9FWE.

President Trump's efforts to prosecute Mr. Comey thus faced two significant obstacles: (1) there was insufficient evidence of a crime, despite the President's repeated statements to the contrary; and (2) career and appointed prosecutors, following established DOJ policy, were not willing to proceed with a prosecution in the absence of sufficient evidence.[4]  President Trump sought to address the second hurdle with urgency.  The Trump Administration reportedly had been pressuring interim U.S. Attorney Erik Siebert—whom President Trump had nominated to the permanent post of U.S. Attorney, and who had been unanimously appointed to continue as

---

[4] *See* Justice Manual 9-27.220 Cmt. ("[N]o prosecution should be initiated against any person unless the attorney for the government believes that the admissible evidence is sufficient to obtain and sustain a guilty verdict by an unbiased trier of fact.").

interim U.S. Attorney by the judges in this District—to indict Mr. Comey, among others. *See* Thrush, et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, *supra*. When Mr. Siebert appeared unwilling, President Trump told reporters in the Oval Office that he wanted Mr. Siebert "out." *Id.* Mr. Siebert resigned on September 19, 2025. *Id.* The DOJ then fired First Assistant U.S. Attorney Maya Song. *See* Katherine Faulders, et al., *More Turmoil at Virginia US Attorney's Office Following Comey Indictment*, ABC News (Oct. 8, 2025), https://perma.cc/R2HW-V5Y9.

The next day, President Trump publicly posted a statement on social media explicitly pressing the Attorney General to prosecute Mr. Comey, Attorney General James, and Senator Adam Schiff. The post read as follows:

> "Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer, it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT."

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, at 18:44 ET), https://perma.cc/A7RW-2TEC.

Less than 48 hours after President Trump's post, Lindsey Halligan was sworn in as interim U.S. Attorney for this District. Pamela Bondi, Attorney General, *Order No. 6402-2025: Authorizing Lindsey Halligan To Be The Interim United States Attorney For The Eastern District of Virginia During The Vacancy In That Office* (Sept. 22, 2025) ("Halligan Appointment Sheet"), Exhibit A. Ms. Halligan was a special assistant to the President and White House official. *See*

Alan Feuer, *Trump's Pick to Replace Ousted U.S. Attorney Lacks Prosecutorial Experience*, N.Y. Times (Sept. 22, 2025), https://perma.cc/YW66-M3HF. She had previously worked as an insurance lawyer and personal lawyer for President Trump and had no prosecutorial experience. *See id.*; Compl., *Trump v. United States*, No. 22-cv-81294 (S.D. Fl. Aug. 22, 2022), ECF No. 1.

The Attorney General purported to appoint Ms. Halligan pursuant to 28 U.S.C. § 546, which provides that "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant," but specifies that "[a] person appointed" through that mechanism may not serve beyond "the expiration of 120 days after appointment by the Attorney General under this section." 28 U.S.C. § 546(a), (c)(2); *see* Halligan Appointment Sheet, Exhibit A. Section 546 further states that "[i]f an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d). Because Mr. Siebert had previously been appointed under Section 546(a) and more than 120 days had elapsed since that appointment, the Attorney General lacked authority to appoint Ms. Halligan under Section 546.[5]

### D. President Trump's Hand-Picked Interim U.S. Attorney Prosecutes Mr. Comey, and President Trump Celebrates

On her fourth day in office, September 25, 2025, Ms. Halligan sought a grand jury indictment of Mr. Comey—just days before the five-year statute of limitations on Mr. Comey's purported offense was set to expire. *See* 18 U.S.C. § 3282. No other prosecutor from the U.S. Attorney's Office for the Eastern District of Virginia participated in the grand jury presentation.[6] *See* Tr. of Return of Grand Jury Indictment Proceedings at 4 (Sept. 25, 2025) ("Grand Jury

---

[5] In a concurrently filed motion, Mr. Comey argues that the indictment should be dismissed because it was secured and signed by an unlawfully appointed official.

[6] The custom in the Eastern District of Virginia is for the prosecutor who presented the case to the Grand Jury to sign the indictment along with the U.S. Attorney. Here, only Ms. Halligan signed. ECF No. 1 at 2.

Transcript"), ECF No. 10; *see also* Carol Leonnig, et al. *How Trump's new U.S. attorney got Comey indicted—by herself*, MSNBC, (Sept. 26, 2025), https://perma.cc/R886-ADRW.   Ms. Halligan presented the grand jury with a three-count indictment.   The grand jury returned a "no true bill" on the first count.   *See* Grand Jury Transcript at 5.   Yet after staying well past normal court hours, the grand jury returned a true bill on the other two counts by only a slim majority. *See id.* at 1-4, 7; Jacob Rosen, et al., *Judge who reviewed James Comey's indictment was confused by prosecutor's handling of case, transcript shows*, CBS News (Sept. 26, 2025), https://perma.cc/R654-4Q45.

Count One of the indictment charges Mr. Comey with making false statements to Congress, in alleged violation of 18 U.S.C. § 1001(a)(2).  *See* ECF No. 1 at 1.  The indictment alleges that on or about September 30, 2020, Mr. Comey "falsely stat[ed] to a U.S. Senator during a Senate Judiciary Committee hearing that he . . . had not 'authorized someone else at the FBI to be an anonymous source in news reports' regarding an FBI investigation concerning PERSON 1.'"   *Id.*   The indictment further alleges that Mr. Comey's "statement was false, because, as [Mr. Comey] then and there knew, he in fact had authorized PERSON 3 to serve as an anonymous source in news reports regarding an FBI investigation concerning PERSON 1." *Id.*[7]  Count Two charges Mr. Comey with "corruptly endeavor[ing] to influence, obstruct and impede" a Senate Judiciary Committee investigation on or about the same date "by making false and misleading statements before that committee," in alleged violation of 18 U.S.C. § 1505.  *Id.* at 2.

On September 25, President Trump celebrated the indictment of Mr. Comey on social media.  He posted:  "JUSTICE IN AMERICA! One of the worst human beings this Country has

---

[7] On October 15, 2025, the government confirmed to the defense that Person 1 refers to Hillary Clinton and Person 3 refers to Daniel Richman.

ever been exposed to is James Comey, the former Corrupt Head of the FBI. Today he was indicted by a Grand Jury on two felony counts for various illegal and unlawful acts. He has been so bad for our Country, for so long, and is now at the beginning of being held responsible for his crimes against our Nation. MAKE AMERICA GREAT AGAIN!" Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 25, 2025, at 19:24 ET), https://perma.cc/N9T4-2ZPA.

President Trump also posted a word of thanks to those in DOJ who had effectuated his wishes: "I'd like to thank Kash Patel, and the outstanding members of the FBI, for their brilliant work on the recent Indictment of the Worst FBI Director in the History of our Country, James 'Dirty Cop' Comey. The level of enthusiasm by the FBI was incredible, but only caused by the fact that they knew Comey for what he is, and was, a total SLIMEBALL! Again, thank you to the FBI and, specifically, those that worked on this case with U.S. Attorney Lindsey Halligan, and the DOJ. Thank you for your attention to this matter. MAKE AMERICA GREAT AGAIN! President DJT." Donald J. Trump (@realDonaldTrump), Truth Social (Sep. 26, 2025, at 18:40 ET), https://perma.cc/V9AS-9NKB.

### E.    The Indictment Is Facially Flawed

The indictment focuses on testimony that Mr. Comey gave in response to questioning by Senator Ted Cruz at a Senate Judiciary Committee hearing on the Crossfire Hurricane investigation. *See Oversight of the Crossfire Hurricane Investigation: Day 3*, *Hearing Before the U.S. Senate Committee on the Judiciary*, 116th Cong. (Sept. 30, 2020), http://bit.ly/4o2ekHb. During that hearing, Senator Cruz described how, during 2017 testimony before the Senate Judiciary Committee, Mr. Comey had denied "ever authoriz[ing] someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton Administration." *Excerpt of Transcript of Oversight of the Crossfire Hurricane Investigation: Day 3*, *Hearing Before the U.S. Senate Committee on the Judiciary*, 116th Cong., at 11 (Sept. 30,

2020) ("Crossfire Hurricane Oversight Transcript"), Exhibit C.  Senator Cruz then asserted that Andrew McCabe, who previously served as Mr. Comey's Deputy Director of the FBI, "publicly and repeatedly stated that he leaked information to the Wall Street Journal and that [Mr. Comey was] directly aware of it, and that [Mr. Comey] directly authorized it." *Id.*

Senator Cruz asked Mr. Comey "[w]ho's telling the truth?"  Mr. Comey responded: "I can only speak to my testimony," and "I stand by . . . the testimony you summarized that I gave in May of 2017." *Id.*  Senator Cruz followed up by asking: "So, your testimony is you've never authorized anyone to leak.  And Mr. McCabe when if he says contrary, is not telling the truth, is that correct?" *Id.*  In response, Mr. Comey stated: "Again, I'm not going to characterize [McCabe's] testimony, but mine is the same today." *Id.*

The indictment misstates the exchange between Senator Cruz and Mr. Comey.  Senator Cruz asked Mr. Comey to affirm or deny prior testimony that he authorized "someone else at the FBI to be an anonymous source in news reports about . . . the Clinton *Administration*."  But Hillary Clinton was not elected, and Senator Grassley's original questioning in 2017 related to the "Clinton *investigation*."  *See* FBI Oversight Transcript at 5, Exhibit B.  The indictment nonetheless mischaracterizes Mr. Comey as stating that he "had not 'authorized someone else at the FBI to be an anonymous source in news reports' *regarding an FBI investigation concerning PERSON 1*," ECF No. 1 at 1 (emphasis added).  Thus, the indictment replaces Senator Cruz's reference to the "Clinton Administration" with a reference to "PERSON 1" (Hillary Clinton) and misleadingly attributes statements to Mr. Comey that he did not in fact make during his September 30, 2020, testimony.[8]

Further, the indictment omits Senator Cruz's words that explicitly narrow the focus of his

---

[8]  Mr. Comey expects to move to dismiss Count One based on a defense of literal truth.  *See Bronston v. United States,* 409 U.S. 352 (1973).

questions to Mr. McCabe and misleadingly implies that the questioning related to Mr. Richman. In fact, Mr. Comey's September 2020 exchange with Senator Cruz made no reference whatsoever to Mr. Richman, who ultimately appears in the indictment as PERSON 3. Instead, the context of the exchange confirms that Senator Cruz was asking about leaks by Mr. McCabe—indeed, Senator Cruz asked Mr. Comey whether he or Mr. McCabe was "telling the truth." In other words, the indictment presents an inaccurate description of the testimony at the heart of this case.

## **ARGUMENT**

The Due Process Clause of the Fifth Amendment protects all persons against federal government action designed to penalize protected speech or to wield government power based on animus. Those protections are at their zenith when the government invokes the criminal process to deprive a person of liberty. Established due process principles therefore prohibit vindictive prosecutions to punish the assertion of rights or to express animus. Similarly, established equal protection principles prohibit selective prosecutions that invidiously impose penalties based on arbitrary classifications. The circumstances of the charging decision in this case—a last-minute retaliatory charge after a torrent of personal invective by a President who expressly sought charges regardless of the facts—warrant dismissal with prejudice on both vindictive and selective prosecution grounds. At a minimum, if the Court does not dismiss the indictment outright, concrete and objective facts justify thorough discovery into the suspect prosecutorial decision-making process that led to this flawed indictment and a hearing at which the government must justify its decision to bring these unfounded and retaliatory charges.

## I.   THE GOVERNMENT HAS VINDICTIVELY PROSECUTED MR. COMEY IN VIOLATION OF THE DUE PROCESS CLAUSE AND THE FIRST AMENDMENT

The Constitution forbids the government from prosecuting an individual based on his protected speech or based on a government official's animus toward the individual. Objective evidence establishes that President Trump directed the prosecution of Mr. Comey in retaliation for Mr. Comey's public criticisms and to punish Mr. Comey because of personal spite. Such a vindictive prosecution serves no legitimate government interest and contradicts fundamental constitutional values.

### A.   The Constitution Prohibits the Government from Vindictively Prosecuting a Defendant

"[V]indictive prosecution has no place in our system of justice." *United States v. Ball*, 18 F.4th 445, 454 (4th Cir. 2021). It is thus "well established that a prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). Indeed, "for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional'" and "a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citations omitted).

"To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Wilson*, 262 F.3d at 314. A defendant may satisfy the first prong by showing either that "the prosecutor harbored genuine animus toward the defendant," or that the prosecutor "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse.'" *United*

*States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (quoting *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)).  And a defendant may satisfy the second prong by showing that "he would not have been prosecuted . . . but for the vindictive motive" of the prosecutor or her superiors. *Wilson*, 262 F.3d at 317 (emphasis omitted).

Though a defendant can establish an "improper motive with direct evidence," such a motive can also be "presumed" if the defendant "shows that the circumstances 'pose a realistic likelihood of vindictiveness.'"  *Id.* at 314 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)). "[A] presumption of vindictive prosecution . . . must be supported by a showing sufficiently strong to overcome the presumption of prosecutorial regularity" that normally attaches to prosecutorial "charging decisions."  *Id.* at 315.  Where a defendant makes that showing, "the burden shifts to the government to present objective evidence justifying its conduct."  *Id.*

### B.    Objective Evidence Establishes that the Government Vindictively Prosecuted Mr. Comey

"In the ordinary case," a "prosecutor's charging decision is presumptively lawful" and rests within her "broad discretion."  *Wilson*, 262 F.3d at 315 (citation omitted).  This is no ordinary case.  Here, "direct evidence" establishes that the President harbors "genuine animus toward" Mr. Comey, including because of Mr. Comey's protected speech, *id.* at 314; that he installed his personal attorney as a "stalking horse" to carry out his bidding, *Sanders*, 211 F.3d at 717; and that she then prosecuted Mr. Comey—days before the statute of limitations expired, with a faulty indictment—to effectuate the President's wishes.  On this record alone, Mr. Comey has established actual "prosecutorial vindictiveness."  *Wilson*, 262 F.3d at 314.

### 1.    The President harbors genuine animus toward Mr. Comey, including because of Mr. Comey's protected speech

"[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right."

*United States v. Goodwin*, 457 U.S. 368, 372 (1982). The First Amendment at its core protects an individual's right to express "dissatisfaction with the policies" and leadership "of this country." *Texas v. Johnson*, 491 U.S. 397, 411 (1989). Indeed, the First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Where the government prosecutes a defendant to punish him for his protected speech, that action violates the Due Process Clause and the First Amendment. See *Goodwin*, 457 U.S. at 372; *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.").

More broadly, the Due Process Clause forbids vindictive prosecutions motivated by the government's "genuine animus toward the defendant," regardless of whether that animus is connected to the defendant's exercise of his constitutional rights. *Wilson*, 262 F.3d at 314. That is because "the Due Process Clause was intended to prevent government officials 'from abusing [their] power, or employing it as an instrument of oppression.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992)) (alterations in original). And that principle applies with particular force here because "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). Thus, a vindictive prosecution brought to effectuate the President's animus toward a defendant or because the

President perceives the defendant as a political foe is unquestionably "arbitrary," *Lewis*, 523 U.S. at 847, and serves no "legitimate Government end," *Wade v. United States*, 504 U.S. 181, 186 (1992).

Here, the objective evidence establishes that President Trump harbors genuine animus toward Mr. Comey, both based on Mr. Comey's protected speech and based on President Trump's arbitrary personal bias. As explained above, as a private citizen, Mr. Comey has repeatedly spoken out against President Trump's conduct in office and urged Americans to vote against President Trump in the 2020 and 2024 elections. *See supra* at 6-7. Such "[s]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (citation omitted).

In response to Mr. Comey's protected speech, President Trump has resorted to personal attacks and calls to retaliate against Mr. Comey through punishment and imprisonment. For instance, during his first term, President Trump openly discussed deploying the IRS against Mr. Comey because Mr. Comey was writing critically about him. *See* Schmidt, *Trump Wanted I.R.S. Investigations of Foes*, *supra*. President Trump also revoked John Brennan's security clearance because of Mr. Brennan's criticisms, while threatening to do the same to Mr. Comey (even though Mr. Comey no longer had a clearance). *See* Statement on the Revocation of the Security Clearance of Former Director of the Central Intelligence Agency John O. Brennan, 2009 Daily Comp. Pres. Doc. 201800534 (Aug. 15, 2018), https://perma.cc/TW4F-JQ6J. And President Trump tweeted about prosecuting Mr. Comey and sending him to jail, among other personal attacks and insults. *See supra* at 4-7. Overall, the pattern of President Trump's statements and actions demonstrate a clear intent to subject Mr. Comey to "[o]fficial reprisal for [his] protected speech." *Hartman*, 547 U.S. at 256; *see Bragan v. Poindexter*, 249 F.3d 476, 483-84 (6th Cir.

2001) (finding "reasonable likelihood of vindictiveness" where prosecutors had "some stake in deterring Petitioner's exercise of his First Amendment rights").

Not only has President Trump sought to retaliate against Mr. Comey "for speaking out," *Hartman*, 547 U.S. at 256, but he has also done so based on his personal bias—the very definition of "arbitrary" government conduct, *Lewis*, 523 U.S. at 845-46 (citations omitted). Among other things, President Trump has publicly called Mr. Comey "a corrupt piece of garbage," "a disgraced liar & leaker," a "weasel," "a weak and untruthful slime ball," and "very sick or very dumb." *See supra* at 4-7. Those statements reveal a deep personal animus toward a perceived political enemy. *See, e.g.*, *United States v. Avenatti*, 433 F. Supp. 3d 552, 575 (S.D.N.Y. 2020) (finding "ample evidence of the animosity President Trump feels towards" the defendant based on President Trump's statements); *United States v. Aviv*, 923 F. Supp. 35, 37 (S.D.N.Y. 1996) (finding that statements by government agents that defendant was "dishonest, unreliable and unpatriotic" established an "unusually strong showing" of animus). Engineering the prosecution of a perceived political enemy (or any person) because of animus—as President Trump has done here—is the quintessential "abuse[] [of] power" that "the Due Process Clause was intended to prevent." *Lewis*, 523 U.S. at 846 (citations omitted).

A claim of vindictive prosecution in this case does not depend on a showing that Ms. Halligan herself harbors "genuine animus toward" Mr. Comey. *Wilson*, 262 F.3d at 314. Rather, the claim turns on the animus harbored by the official who prompted the prosecution—here, the President—revealed in repeated expressions of malice, which he translated into action by installing and then "prevail[ing] upon [Ms. Halligan] to bring the charges . . . such that [she] could be considered a 'stalking horse.'" *Sanders*, 211 F.3d at 717; *see United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996) (where an outside party "in some way prevail[s] upon the

prosecutor in making the decision to seek an indictment," the "ill will, whoever its bearer," may be "imputed to federal prosecutors"). That is more than sufficient to establish a vindictive prosecution claim. In *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989), for instance, the Sixth Circuit held that the defendant showed "'evidence' of vindictive prosecution" based on the theory that "the EEOC was able to prevail upon the Department of Justice to institute a prosecution that would not have been undertaken but for [the defendant's] exercise of her statutory right to sue." *Id.* at 1146. The same logic applies with even greater force here because the President—the head of the Executive Branch and Ms. Halligan's ultimate supervisor— instigated a prosecution that would otherwise not have been brought to punish Mr. Comey for his free speech and for who he is. That action violates the Due Process Clause, which bars any "agent of the State [from] pursu[ing] a course of action whose objective is to penalize a person's reliance on his legal rights," *Bordenkircher*, 434 U.S. at 363 (citations omitted), or for the arbitrary and lawless reason of personal animosity.[9] President Trump's repeated public statements and action leave no doubt as to the government's genuine animus toward Mr. Comey.

## 2. Mr. Comey would not have been prosecuted but for President Trump's animus

Having shown that President Trump "acted with genuine animus toward" Mr. Comey, the next question is whether Mr. Comey "would not have been prosecuted but for that animus." *Wilson*, 262 F.3d at 314. The answer is yes. Only after President Trump directed his Attorney General to bring charges and install a White House official as interim U.S. Attorney were charges brought. The causal connection between President Trump's animus and this prosecution

---

[9] So deep is President Trump's animosity towards Mr. Comey that it extends to his family: Mr. Comey's daughter was fired as a federal prosecutor for no stated reason other than "Article II"— the source of presidential power. *See supra* at 8-9. Targeting a person by punishing a family member provides unequivocal objective evidence of personal animus that has no place in the exercise of government power.

is clear.

After years of publicly criticizing Mr. Comey's speech and character, President Trump orchestrated Mr. Comey's indictment mere days before the statute of limitations expired. *See* 18 U.S.C. § 3282(a) (five-year statute of limitations). As explained above, when interim U.S. Attorney Erik Siebert resisted pressures to prosecute Mr. Comey, President Trump publicly stated that he wanted Mr. Siebert "out"—thus prompting Mr. Siebert to resign. *See supra* at 10.

A day later, President Trump posted a statement on social media that provides smoking-gun evidence that this prosecution would not have occurred but for the President's animus toward Mr. Comey. The post was addressed expressly to "Pam," the Attorney General. *See supra* at 11. In the post, the President complained that "[n]othing [was] being done" to "Comey, Adam 'Shifty' Schiff, [and] Leticia," even though "[t]hey're guilty as hell" and "there is a GREAT CASE." *Id.* He then asserted that "Lindsey Halligan is a really good lawyer, and likes you, a lot." *Id.* And he emphasized that "[w]e can't delay any longer" because "it's killing our reputation and credibility" and "JUSTICE MUST BE SERVED, NOW!!!" *Id.*

Within 48 hours of President Trump's post, the Attorney General purported to appoint Lindsey Halligan—a White House aide without any prosecutorial experience—as interim U.S. Attorney for the Eastern District of Virginia. *See supra* at 11.[10] Just four days after her unlawful interim appointment, Ms. Halligan proceeded to seek and (narrowly) obtain a grand jury indictment against Mr. Comey. *See supra* at 12. Following that indictment—the result of highly irregular procedures—President Trump celebrated via social media and specifically thanked the FBI Director and Ms. Halligan for their work in securing the indictment. *See supra* at 13-14.

---

[10] As explained in Mr. Comey's concurrently filed motion to dismiss, Ms. Halligan's appointment was unlawful because the only statute that the Attorney General cited—28 U.S.C. § 546—does not authorize that appointment.

President Trump's decision to unlawfully manipulate the prosecutorial process for the express purpose of bringing a charge against Mr. Comey proves that his animus was the but-for cause of this prosecution. Where the "government ha[s] followed unusual discretionary procedures in deciding to prosecute," those aberrant procedures provide strong evidence that the prosecution was brought for an improper reason. *United States v. Greene*, 697 F.2d 1229, 1236 (5th Cir. 1983); *see United States v. Steele*, 461 F.2d 1148, 1151-52 (9th Cir. 1972); *United States v. Falk*, 479 F.2d 616, 621 (7th Cir. 1973). In *Steele*, for instance, the defendants were individuals who had "publiciz[ed] a dissident view of the census as an unconstitutional invasion of privacy" and were prosecuted for refusing to return their census forms. 461 F.2d at 1150-51. The court observed that, before the prosecution, a U.S. Census official had "ordered his staff to compile special background dossiers on [the defendants], a discretionary procedure not followed with any other offenders." *Id.* at 1151. The court concluded that an "enforcement procedure that focuses upon the vocal offender is inherently suspect, since it is vulnerable to the charge that those chosen for prosecution are being punished for their expression of ideas, a constitutionally protected right." *Id.* at 1152. Here, President Trump's "enforcement procedure"—the eleventh-hour appointment of a political ally for the express purpose of prosecuting a longtime critic, accompanied by a social media post pushing the DOJ to indict—is decisive evidence that the government would not have prosecuted Mr. Comey but for his "expression of ideas" that President Trump disliked.

That sequence of public events provides more than enough evidence for this Court to conclude that President Trump's animus was the but-for cause of the government's decision to prosecute Mr. Comey. But there is more: Widespread and corroborated reporting about the

24

findings of the unbiased investigators and prosecutors who assessed the case against Mr. Comey removes any doubt that no prosecution would have been brought but for animus.

To begin, multiple investigations by career prosecutors into Mr. Comey and Mr. Richman, particularly related to leaks of purportedly classified information and the handling of "Crossfire Hurricane," resulted in no charges against Mr. Comey or Mr. Richman. *See supra* at 3, 8-9. Nonetheless, in 2025, interim U.S. Attorney Siebert also investigated Mr. Comey's actions, and his team interviewed Mr. Richman, who is Person 3 in the indictment. Mr. Richman's testimony was "not helpful" to bringing charges. *See supra* at 9. Additionally, Special Counsel Durham reportedly told those same prosecutors that his investigation into Crossfire Hurricane had not uncovered evidence supporting charges against Mr. Comey. *Id.* Accordingly, career prosecutors working on the matter concluded that there was insufficient evidence to prosecute Mr. Comey. *Id.*

The substance of Mr. Comey's 2020 testimony confirms that he would not have been indicted absent the President's intervention. During the relevant exchange, it is clear that Senator Cruz was not referring to Mr. Richman and that Mr. Comey did not intend his answer to reference Mr. Richman. As noted above, the context of their exchange removes any doubt that Senator Cruz was instead inquiring into Mr. Comey's interactions with Deputy Director McCabe. *See supra* at 14-16. Specifically, Senator Cruz referenced "Mr. McCabe['s] . . . state[ment] that he leaked information to the Wall Street Journal" and then asked Mr. Comey "[w]ho's telling the truth?" *See* Crossfire Hurricane Oversight Transcript at 11, Exhibit C. Because Senator Cruz was asking about Mr. McCabe, not Mr. Richman, Mr. Comey plainly did not knowingly or willfully lie to Congress about his interactions with Mr. Richman or act with the corrupt intent to mislead Congress about those interactions. No reasonable prosecutor would

have brought such a deficient case; the only explanation is that the President's handpicked interim U.S. Attorney did so to carry out the President's wishes.

The record as it currently exists shows a clear causal link between President Trump's animus and the prosecution of Mr. Comey. With the statute-of-limitations deadline looming and no career prosecutor—not even President Trump's own interim U.S. Attorney (Mr. Siebert)—willing to seek the indictment, the President took matters into his own hands by directing his Attorney General to seek "JUSTICE" against Mr. Comey and to unlawfully appoint a White House aide who would prosecute this case. She then immediately did so. This is thus the rare case in which a defendant can "prove an improper motive" and a causal connection "with direct evidence." *Wilson*, 262 F.3d at 314. Accordingly, Mr. Comey has established that his prosecution "was motivated by *actual* vindictiveness," and the indictment must be dismissed. *Id.* at 316.

## II.    THE GOVERNMENT HAS SELECTIVELY PROSECUTED MR. COMEY, IN VIOLATION OF EQUAL PROTECTION PRINCIPLES

The prosecution of Mr. Comey was not only vindictive, but also selective. Equal protection principles bar the government from selectively prosecuting individuals based on an arbitrary classification. Here, the government selectively targeted Mr. Comey because he had exercised his First Amendment right to criticize President Trump. Indeed, President Trump's social media post ordering his Attorney General to effectuate the prosecution of Mr. Comey, following years of personal attacks, constitutes a direct admission of discriminatory purpose to single out a perceived political enemy for prosecution. And even to the extent Mr. Comey must show that similarly situated individuals were not prosecuted, he can readily do so.

A. **The Constitution Prohibits the Government from Selectively Prosecuting a Defendant for Arbitrary Reasons, Including for Exercising First Amendment Rights**

The "equal protection component of the Due Process Clause" prohibits the government from selectively deciding "whether to prosecute . . . based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotations omitted). Defendants most often invoke a selective-prosecution defense when the government has targeted them for membership in a protected class. *Id.* at 470. But a defendant may also raise a "class of one" claim by showing that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see United States v. Torquato*, 602 F.2d 564, 569 n.9 (3d Cir. 1979) ("It is clear that [the defendant] could raise his claim of selective prosecution based on individual discrimination.").

"To establish a selective-prosecution claim, a defendant must demonstrate that the prosecution 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (citation omitted). The government has recognized that a defendant may be able to satisfy both selective-prosecution prongs by identifying "direct admissions by" government officials "of discriminatory purpose." *Armstrong*, 517 U.S. at 469 n.3 (citing Brief for United States). Absent such evidence, a defendant must establish "both (1) that 'similarly situated individuals . . . were not prosecuted'" and "(2) that the decision to prosecute was 'invidious or in bad faith.'" *Olvis*, 97 F.3d at 743 (citations omitted).

B. **President Trump Has Directly Admitted that the Government is Prosecuting Mr. Comey For an Impermissible Discriminatory Purpose**

In most cases, "the 'presumption of regularity' that supports prosecutorial decisions"

requires the defendant to "support a selective-prosecution claim with 'clear evidence'" that similarly situated individuals were not prosecuted. *Olvis*, 97 F.3d at 743 (citing *Armstrong*, 517 U.S. at 464). But where the record shows that the government's actions are infected with "bad faith or improper behavior," the presumption of regularity falls away. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). That is the case here.

The government's decision to prosecute an individual has an impermissible "discriminatory purpose" if it is based on the individual's exercise of constitutional rights or other "arbitrary" factors. *Wayte v. United States*, 470 U.S. 598, 608 (1985). Most relevant here, the government cannot selectively prosecute an individual "because of his exercise of First Amendment rights." *Id.* at 606-07. Nor can the government selectively prosecute an individual based on "personal or political bias" against that individual. *Torquato*, 602 F.2d at 568; *see Goodfellas, Inc. v. Dunkel,* No. 3:15-CV-1633, 2016 WL 6599977, at *9 (M.D. Pa. Nov. 8, 2016) (explaining that a "prosecuting body's personal bias unrelated to suspect classifications may serve as a cognizable 'arbitrary factor' for purposes of a selective enforcement claim").

The President's message to the Attorney General, capping years of personal invective in response to protected speech, constitutes a direct admission that the decision to prosecute was based on those impermissible factors. For many years, President Trump has sought to prosecute or otherwise punish Mr. Comey because of overt hostility to Mr. Comey's protected speech and because of his personal bias against Mr. Comey. *See supra* at 4-7. But despite President Trump's yearslong campaign to prosecute Mr. Comey, no career or appointed prosecutor had ever agreed to do so. *See supra* at 7-11. Thus, Mr. Trump made clear to his Attorney General that the only way to achieve "JUSTICE" against Mr. Comey was by ousting Mr. Siebert and installing Ms. Halligan. *See supra* at 11. This statement is a direct admission that the decision to

prosecute Mr. Comey was not based on a good-faith application of law to facts. Instead, it was based on President Trump's yearslong personal antipathy toward Mr. Comey. For that reason alone, this Court can conclude that the government has selectively prosecuted Mr. Comey in violation of his right to equal protection of the law.

### C. In Any Event, Clear Evidence Establishes that the Government Is Selectively Prosecuting Mr. Comey for Impermissible Reasons

To the extent Mr. Comey must show that similarly situated individuals were not prosecuted, he can readily do so. And the objective evidence establishes an invidious and bad-faith motivation for this prosecution.

### 1. The Government has declined to prosecute similarly situated individuals

Absent a direct admission of discriminatory purpose, a defendant must present "evidence that the Government has failed to prosecute others who are similarly situated to the defendant." *Armstrong*, 517 U.S. at 469. That requirement is designed to "isolate the factor allegedly subject to impermissible discrimination." *Olvis*, 97 F.3d at 744 (citation omitted). "If all other things are equal, the prosecution of only those persons [to whom the factor applies] . . . gives rise to an inference of discrimination." *Id.* (alteration in original).

"Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Venable*, 666 F.3d 893, 900-01 (4th Cir. 2012). In "a 'class of one' case," a defendant typically must show that he was "treated differently than someone who is *prima facie* identical in all relevant respects." *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *see Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019).

The central factor for determining whether certain individuals are "similarly situated" to the defendant is whether they have engaged in similar conduct. *Venable*, 666 F.3d at 901-02; *see*

*Steele*, 461 F.2d at 1151; *Hu*, 927 F.3d at 97.  Conduct can be similar when it occurred in similar locations, *see United States v. Crowthers*, 456 F.2d 1074, 1078 (4th Cir. 1972), and when the individuals were serving in similar roles, *see United States v. McDonald*, 553 F. Supp. 1003, 1007 (S.D. Tex. 1983).  In addition, district courts must "take into account several factors that play important and legitimate roles in prosecutorial decisions," including "the strength of the evidence against a particular defendant," "the defendant's role in the crime," "the defendant's candor and willingness to plead guilty," "the amount of resources required to convict a defendant," and "the extent of prosecutorial resources."  *Venable*, 666 F.3d at 901.

Based on those factors, clear evidence establishes that the government "failed to prosecute others who are similarly situated to" Mr. Comey.  *Armstrong*, 517 U.S. at 469.  The gravamen of the government's case is its allegation that Mr. Comey testified falsely before Congress in 2020, by affirming the testimony he gave in 2017 while he was FBI Director.  *See supra* at 13-17.  Around the same time, similar allegations—with a much stronger evidentiary basis—had been raised against at least four other individuals who served as heads of agencies during President Trump's first term.  *None* of them were charged.

*First*, Attorney General Jeff Sessions allegedly made false statements to the Senate Judiciary Committee about his communications with the Russian Government.  In January 2017, Senator Al Franken asked Mr. Sessions: "If there is any evidence that anyone affiliated with the Trump campaign communicated with the Russian government in the course of this campaign, what will you do?"  Chris Cillizza, *Jeff Sessions keeps forgetting and forgetting and forgetting about Russia and the 2016 election*, CNN (Nov. 3, 2017), https://perma.cc/Q2GY-JKUG.  Mr. Sessions replied that he was "not aware of any of those activities," that he had "been called a surrogate at a time or two in that campaign," and that he "did not have communications with the

Russians." *Id.* At another hearing in October 2017, Senator Franken asked Mr. Sessions: "You don't believe that surrogates from the Trump campaign had communications with the Russians? Is that what you're saying?" *Id.* Mr. Sessions again replied that he "did not" and was "not aware of anyone else that did." *Id.* Mr. Sessions later acknowledged, however, that he had met with Russian Ambassador Sergey Kislyak twice during the campaign. Matt Zapotosky, *Sessions does not recall any meeting with Russian official at Mayflower hotel*, Wash. Post (June 13, 2017), https://perma.cc/X78A-ZXS9.

*Second*, Environmental Protection Agency Administrator Scott Pruitt allegedly made false statements to the Senate Environmental and Public Works Committee about his use of a personal email account during his tenure as Oklahoma Attorney General. In January 2017, Senator Cory Booker asked Mr. Pruitt: "Have you ever conducted business using your personal email accounts, nonofficial Oklahoma attorney general email accounts, text messages, instant messenger, voicemails, or any other medium?" Phil Cross, *Okla. AG's Office confirms Pruitt used private email for state business*, Fox 25 (Feb. 24, 2017), https://perma.cc/2XPS-6FYU. Mr. Pruitt replied: "I use only my official OAG email address and government-issued phone to conduct official business." *Id.* The Oklahoma Attorney General's Office later confirmed that Mr. Pruitt had in fact used a private email address for state business. *Id.*

*Third*, Secretary of Health and Human Services Tom Price allegedly made false statements to the Senate Health, Education, Labor & Pension Committee about a discount he received when he purchased shares of a biotechnology company. In January 2017, Senator Franken asked Mr. Price whether he had received a special deal when he purchased discounted shares in a company called Innate Immuno. James V. Grimaldi, *Rep. Tom Price Got Privileged, Discounted Offer on Biomedical Stock, Company Says*, Wall St. J. (Jan. 30, 2017),

https://perma.cc/P4SQ-UABX.  Mr. Price responded that he had not received a special deal because the discounted shares "were available to every single individual that was an investor at the time."  *Id.*  But the company's officials later disclosed that Mr. Price had received a "special friends and family" deal that was available to only six U.S. investors.  *Id.*

*Fourth*, Treasury Secretary Steve Mnuchin allegedly made false statements to the Senate Finance Committee about OneWest Bank, where he had served as Chairman and CEO.  In January 2017, Senator Bob Casey asked Mr. Mnuchin: "Did OneWest 'robo-sign' documents relating to foreclosures and evictions?"  David Dayen, *Mnuchin Lied About His Bank's History of Robo-Signing Foreclosure Documents*, The Intercept (Jan. 25, 2017), https://perma.cc/B874-TJYH.  Mr. Mnuchin replied that "OneWestBank did not 'robo-sign' documents."  *Id.*  That statement directly contradicted a New York Supreme Court decision finding that a Vice President at OneWest admitted to robo-signing foreclosure-related documents when Mr. Mnuchin ran the company.  *See OneWest Bank, F.S.B. v. Drayton*, 29 Misc. 3d 1021, 1040 (Sup. Ct. 2010).

Those four individuals are "*prima facie* identical" to Mr. Comey "in all relevant respects."  *Purze*, 286 F.3d at 455.  Those individuals and Mr. Comey have been accused of engaging in similar conduct (making misleading statements) to the same government body (the United States Senate) while serving in similar roles (heads of Executive Branch agencies) at the same time (the first months of President Trump's first term).  District courts have found individuals to be "similarly situated" in analogous circumstances.  In *McDonald*, for instance, the court determined that the defendant—an air traffic controller prosecuted for going on strike—was similarly situated with other air traffic controllers who had gone on strike in the same region of Texas.  *See* 553 F. Supp. at 1007.  Similarly, in *Hu*, the court determined that Asian

construction workers were similarly situated with White construction workers who had engaged in the "same conduct" at the "same jobsite." 927 F.3d at 97. And in *Steele*, the court determined that Hawaiian census protestors prosecuted for failing to comply with census requirements were similarly situated with other Hawaii residents who had failed to turn in their census cards. 461 F.2d at 1151.

All the other factors that "play important and legitimate roles in prosecutorial decisions" weigh in Mr. Comey's favor or are neutral. *Venable*, 666 F.3d at 901. Mr. Sessions, Mr. Pruitt, Mr. Price, and Mr. Mnuchin all played the same "role in the [alleged] crime" as Mr. Comey— they each testified before the Senate and made the allegedly false statement at issue. *Id.* To the extent that any differences exist in "the strength of the evidence against . . . particular" individuals, *id.*, the distinction is that the evidence against Mr. Comey is significantly weaker than the evidence against the other individuals. Indeed, the public record shows that several of those individuals made objectively false statements. By contrast, the available evidence, even that apparently relied upon by the government here, demonstrates that Mr. Comey's statements were literally true—a belief apparently shared by the multiple career prosecutors who recommended against prosecution. *See supra* at 9-11. And it is implausible that the "amount of resources required to convict" those individuals, or "the extent of prosecutorial resources" required to investigate those individuals would have been materially different than the resources marshalled against Mr. Comey. *Venable*, 666 F.3d at 901.

In sum, "no distinguishable legitimate prosecutorial factors . . . might justify making different prosecutorial decisions with respect to" Mr. Comey, Mr. Sessions, Mr. Pruitt, Mr. Price, and Mr. Mnuchin. *Id.* at 900-01. And yet, the government treated Mr. Comey differently. "[C]lear evidence" therefore shows that Mr. Comey satisfies the first prong of his selective-

prosecution claim.  *Olvis*, 97 F.3d at 743 (citations omitted).

> **2.    The government's prosecution of Mr. Comey is invidious and in bad faith**

Having established that "similarly situated individuals . . . were not prosecuted," showing

that the "decision to prosecute was 'invidious or in bad faith'" is straightforward.  *Olvis*, 97 F.3d

at 743 (citations omitted).  Indeed, given the striking similarities between Mr. Comey and those

individuals, it is easy "to isolate the factor[s]" that led the government to prosecute Mr. Comey.

*Id.* at 744 (citation omitted).  The obvious difference between Mr. Comey and those individuals

is that Mr. Comey has been an outspoken critic of President Trump.  *See supra* at 4-7.  The other

individuals, by contrast, are President Trump's political allies.  For instance, although President

Trump dismissed Mr. Sessions as Attorney General in 2018, Mr. Sessions has remained a loyal

supporter of President Trump.  John Sharp, *Jeff Sessions praises Trump 10 years after helping*

*elect him and their famous falling out: 'He's still delivering'*, AL.com (Jan. 24, 2025),

https://perma.cc/8VWR-6R6X.  The other significant difference between Mr. Comey and those

individuals is that President Trump has spent years threatening, denigrating, and demeaning Mr.

Comey.  *See supra* at 4-7.  While President Trump has criticized some of the other individuals in

the past, President Trump has never called for their prosecution, criticized their private speech,

or referred to them as "very sick or very dumb."

The prosecution of a defendant is also "invidious or in bad faith" if "it rests upon . . . the

desire to prevent his exercise of constitutional rights."  *United States v. Greene*, 697 F.2d 1229,

1234 (5th Cir. 1983).  Courts have routinely held that a prosecution is arbitrary or invidious

where, as here, clear evidence establishes that the government prosecuted an individual "because

of his exercise of First Amendment rights."  *Wayte*, 470 U.S. at 606; *see, e.g.*, *United States v.*

*Falk*, 479 F.2d 616, 621 (7th Cir. 1973) (recognizing selective prosecution claim where

government prosecuted individual who "advis[ed] others on methods of legally avoiding military service and in protesting American actions in Vietnam"); *Steele*, 461 F.2d at 1150 (recognizing selective prosecution claim where government prosecuted defendant who "publiciz[ed] a dissident view of the census as an unconstitutional invasion of privacy"). Courts have similarly held that a prosecution is arbitrary or invidious where, as here, clear evidence establishes that the prosecution is based on "personal or political bias" against the defendant. *Torquato*, 602 F.2d at 568; *see, e.g.*, *Goodfellas, Inc.*, 2016 WL 6599977, at *9 (recognizing a selective prosecution claim where a town council enforced a criminal ordinance against a defendant who was a competitor of a business owned by the council's president).

The government's decision to bypass its normal prosecutorial process is further evidence that the prosecution is invidious and in bad faith. Indeed, where the "government ha[s] followed unusual discretionary procedures in deciding to prosecute," courts have regularly concluded that the prosecution is based on an impermissible purpose. *Greene*, 697 F.2d at 1236; *Steele*, 461 F.2d at 1151; *Falk*, 479 F.2d at 621; *see also United States v. Haggerty*, 528 F. Supp. 1286, 1293 (D. Colo. 1981) (explaining that the "government's failure to follow its normal prosecutorial procedures mandates stricter judicial scrutiny of the prosecution"). To say the least, for all of the reasons discussed above, the government has "followed unusual discretionary procedures in deciding to prosecute" Mr. Comey. *Greene*, 697 F.2d at 1236; *see supra* at 10-14. Everything about this prosecution smacks of irregularity—which provides compelling evidence that Mr. Comey is being singled out for punishment based on his "expression of ideas," *Steele*, 461 F.2d at 1152, and for personal animus, in violation of fundamental equal protection principles.

## III.    THE PROPER REMEDY IS DISMISSAL WITH PREJUDICE

A dismissal with prejudice is the only remedy that will vindicate fundamental constitutional values and deter the government from vindictively and selectively prosecuting

perceived political opponents. In criminal cases, a federal court may use its "supervisory powers" to "implement a remedy" aimed at vindicating "recognized rights" and "deter[ring] illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983). For instance, "the supervisory power can be used to dismiss an indictment because of misconduct before the grand jury." *United States v. Williams*, 504 U.S. 36, 46 (1992) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)). As several courts of appeals have explained, such a dismissal may be *with* prejudice. *See United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000); *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 255 (3d Cir. 2005); *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020).

To determine whether "government misconduct" "merit[s] dismissal with prejudice," courts typically consider three factors. They start by asking if "there is '(1) flagrant misbehavior and (2) substantial prejudice.'" *Bundy*, 968 F.3d at 1031. If the answer to both is yes, they assess whether (3) "any lesser sanction will put the defense at a greater disadvantage than it would have faced had the government" not "violat[ed] . . . a federal constitutional right." *Id.* at 1043. Here, those factors compel a dismissal with prejudice.

To start, the government has flagrantly violated due process, equal protection, and the First Amendment by prosecuting Mr. Comey based on his protected speech and based on personal animus. Those acts alone satisfy the first factor. And there is more: The government effectuated the prosecution through a separate and independent willful violation—an unlawful appointment of a White House aide as interim U.S. Attorney.[11] The government's conduct is

---

[11] The government also violated the Federal Rules of Criminal Procedure, which allow only "attorneys for the government" to be "present while the grand jury is in session," Fed. R. Crim. P. 6(d)(1), and define such attorneys to include only "attorney[s] *authorized by law* to conduct" grand jury proceedings, Fed. R. Crim. P. 1(b)(1)(D) (emphasis added). Those rules implement the longstanding principle that grand jury proceedings must remain secret and thus reinforce that

antithetical to fundamental constitutional principles and serves no legitimate governmental end.

The second dismissal-with-prejudice factor is also satisfied because the Executive Branch's flagrant "misconduct" caused "substantial prejudice" to Mr. Comey. *Bundy*, 968 F.3d at 1031. None of the unbiased and evenhanded prosecutors who have assessed the case against Mr. Comey participated in seeking this indictment or appeared in this litigation. *See supra* at 9-13. This prosecution was brought only because the President directed it—in an express message to the Attorney General—in order to seek retribution against Mr. Comey. *See supra* at 11, 22-26. Absent the government's grave misconduct, Mr. Comey would not have been indicted, and the statute of limitations on his alleged offenses would have expired.

Finally, dismissal with prejudice is warranted because any other remedy would put Mr. Comey "at a greater disadvantage than [he] would have faced had the government" not violated the Constitution. *Id.* at 1043. In fact, dismissing the indictment without prejudice would *reward* the government for its last-minute installation of Ms. Halligan as interim U.S. Attorney and consequent manipulation of the statute of limitations. As noted, the statute of limitations on Mr. Comey's purported offenses was set to expire just ten days after Ms. Halligan's unlawful appointment. Had the Attorney General not appointed Ms. Halligan at the eleventh hour, there is no reason to believe that the indictment would have been filed within the limitations period. That timing is significant not only because it allowed the government to bring this prosecution, but also because the government will likely argue that the filing of the indictment tolls the limitations period under 18 U.S.C. § 3288. And if this Court were to dismiss *without* prejudice, the government will likely argue that it has six months from the date of dismissal to file a new

---

the unlawful appointment of Ms. Halligan tainted the structure of the grand jury proceeding. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983).

indictment.  *See id.*[12]  The government would thus be in a better position than it would have been but for its constitutional violations.  And Mr. Comey is in a worse position because he faces criminal prosecution, rather than experiencing the repose of an expired limitations period.

Moreover, if the Court were to dismiss the indictment without prejudice based on a vindictive and selective prosecution, it would leave the government—with the same President and Attorney General in place—free to continue its unconstitutional efforts.  Because Mr. Comey's constitutional claims involve a showing of vindictive, willful, and arbitrary conduct, the merits of those claims overlap nearly completely with the question of whether dismissal should be with prejudice.  Indeed, absent a dismissal with prejudice, Mr. Comey would face a potential perpetual state of being vindictively prosecuted.[13]  To prevent that affront to the integrity of the criminal justice system, dismissal must be with prejudice.

In sum, this Court should exercise its "supervisory power" to "deter" the government's "illegal conduct."  *Hasting*, 461 U.S. at 505.

## IV.    AT MINIMUM, DISCOVERY AND A HEARING ARE WARRANTED BECAUSE MR. COMEY HAS SHOWN A REALISTIC LIKELIHOOD OF VINDICTIVENESS AND SELECTIVENESS

A defendant may obtain "discovery on the government's prosecutorial decisions" by "advancing objective evidence tending to show" that the prosecution was motivated by vindictive animus.  *Wilson*, 262 F.3d at 315.  Similarly, "to obtain discovery" on a selective-

---

[12] Mr. Comey disputes that reading of Section 3288.  But for present purposes, the important point is that the government can at least argue that Section 3288 allows it to file a new indictment if this case is dismissed without prejudice—thus prolonging this deeply flawed case.

[13] The government's pattern of firing or demoting prosecutors who do not believe charges against Mr. Comey are warranted—in both the Eastern District of Virginia and the Western District of Virginia, *see supra* at 9-11—further illustrates why dismissal with prejudice must be the remedy here.  The government will not stop its animus-based persecution of Mr. Comey absent such a remedy.

prosecution claim, a defendant "must produce some evidence making a credible showing" on both elements. *Venable*, 666 F.3d at 900.

At the very least, the record before the Court readily establishes "a realistic likelihood of 'vindictiveness,'" *Wilson*, 262 F.3d at 314 (citations omitted), and a "credible showing" of selectiveness, *Venable*, 666 F.3d at 900. Indeed, those thresholds are met based on President Trump's public statements and social media posts alone. Those posts show that President Trump harbors animus and personal bias toward Mr. Comey, including because of Mr. Comey's protected speech criticizing the President. And President Trump's post ordering the Attorney General to seek "JUSTICE" against Mr. Comey and to unlawfully appoint a White House aide as interim U.S. Attorney who then prosecuted Mr. Comey demonstrate that the President's animus, personal bias, and desire to silence Mr. Comey's speech led directly to this prosecution. Thus, President Trump's public statements provide "objective evidence" giving rise, at a minimum, to "a realistic likelihood of 'vindictiveness,'" *Wilson*, 262 F.3d at 314-15, and a "credible showing" of selectiveness, *Venable*, 666 F.3d at 900; *see United States v. P.H.E.*, 965 F.2d 848, 860 (10th Cir. 1992) (holding that defendants established "a presumption of vindictiveness" by "showing that the indictment is the tainted fruit of a prosecutorial attempt to curtail . . . First Amendment protected speech").

In light of those showings, if the Court does not dismiss the indictment on the present record, it should afford Mr. Comey discovery into "the government's prosecutorial decisions" in this case. *Wilson*, 262 F.3d at 315. When such "discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim." *Armstrong*, 517 U.S. at 468. Here, discovery would allow Mr. Comey to further confirm the extreme irregularities in this prosecution, including the determinations by career prosecutors that

insufficient evidence exists to charge.  Following such discovery, the burden must "shift[] to the government to present objective evidence justifying its conduct."  *Wilson*, 262 F.3d at 315; *see Goodwin*, 457 U.S. at 376 n.8.  Thus, to the extent the Court concludes that the record does not yet establish actual vindictiveness or selectiveness, it should allow discovery and conduct an evidentiary hearing.

## <u>CONCLUSION</u>

For the foregoing reasons, the indictment should be dismissed with prejudice.  Alternatively, the Court should order discovery and conduct a hearing on vindictive and selective prosecution.

Dated: October 20, 2025                      Respectfully submitted,

                                             JAMES B. COMEY, JR.
                                             By Counsel

                                             */s/   Jessica N. Carmichael*
                                             Jessica N. Carmichael (VA Bar No. 78339)
                                             CARMICHAEL ELLIS & BROCK, PLLC
                                             108 N. Alfred Street, First Floor
                                             Alexandria, VA 22314
                                             Telephone:  (703) 684-7908
                                             Facsimile:  (703) 649-6360
                                             Email:  jessica@carmichaellegal.com

                                             Patrick J. Fitzgerald (*pro hac vice*)
                                             (Mich. Bar No. P86579)
                                             P.O. Box 277
                                             New Buffalo, MI 49177
                                             Telephone:  (312) 758-4454

                                             Rebekah Donaleski (*pro hac vice*)
                                             COOLEY LLP
                                             55 Hudson Yards
                                             New York, NY 10001
                                             Telephone:  (212) 479-6000

                                             Ephraim A. McDowell (*pro hac vice* application
                                             pending)
                                             Elias S. Kim (*pro hac vice* application pending)
                                             COOLEY LLP
                                             1299 Pennsylvania Ave. NW, Suite 700
                                             Washington, DC 20004
                                             Telephone:  (202) 842-7800

                                             Michael R. Dreeben (*pro hac vice* application
                                             pending)
                                             600 New Jersey Ave. NW
                                             Washington, DC 20001
                                             Telephone:  (202) 695-2562

                                             *Counsel for Defendant James B. Comey, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of October, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/   Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*
