IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| United States of America, ) | |
| ) | |
| v. ) | Case No.: 1:25-CR-00272-MSN |
| ) | |
| James B. Comey, Jr., ) | UNDER SEAL |
| ) | |
| Defendant. ) | |
| _____ ) | |

### JAMES B. COMEY, JR.'S OPPOSITION TO GOVERNMENT'S
### MOTION FOR IMPLEMENTATION OF A FILTER PROTOCOL

James B. Comey, Jr., by and through undersigned counsel, opposes the government's Motion for Implementation of Filter Protocol filed on October 13, 2025. ECF No. 38. In its filing, the government states that it has "quarantined evidence … obtained through judicial warrants in a previous government investigation." ECF No. 38 at 2. These materials were seized from Mr. Comey's lawyer and include privileged communications. Now, the government seeks the Court's permission to review these materials under a filter team protocol, presuming a legal right to do so. But that presumption is unfounded. The government has no lawful basis to review materials obtained more than five years ago, in a closed investigation that ended without any charges, pursuant to stale warrants for separate offenses, including materials that remain under seal by another court. Mr. Comey cannot consent to an unlawful review of materials seized from his lawyer.

The Court should deny the government's motion without prejudice to refiling, after the government identifies a valid legal basis for its search and fully discloses the scope of the materials it seeks to review.

I.   **Factual Background**

   A.  **Arctic Haze Investigation**

In or about 2017, prosecutors from the U.S. Attorney's Office for the District of Columbia ("USAO-DDC") opened an investigation, referred to by the Federal Bureau of Investigation (FBI) as "Arctic Haze." This investigation related to an alleged unauthorized disclosure of classified information to *New York Times* reporter Michael Schmidt, which was published in an April 22, 2017, article titled "Comey Tried to Shield the FBI from Politics. Then He Shaped an Election." *See* Memorandum on Closing Arctic Haze Investigation, (Sep. 8, 2017), in Declassified FBI Materials Produced to the House Judiciary Committee, at -057, https://perma.cc/HZN7-B5QN.

Of relevance here, the investigation centered on the article's disclosure of classified information regarding one of the reasons Mr. Comey decided to unilaterally announce the closing of the "Midyear Exam" investigation concerning then-Candidate Hillary Clinton's handling of classified information as Secretary of State. *Id.* Daniel Richman, a professor at Columbia Law School, friend of Mr. Comey's, and former Special Government Employee at the FBI, was quoted by name in the article and was interviewed in November 2019 as part of the Arctic Haze investigation. *Id.* at -060–62. The Arctic Haze investigation closed with no charges in September 2021, as it had not "yielded sufficient evidence to criminally charge any person, including Comey or Richman." *Id.* at -065.

   B.  **The Search Warrants at Issue**

Discovery to date indicates that in 2019 and 2020, investigators from the USAO-DDC obtained three separate warrants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and a fourth warrant for ▮▮▮▮▮▮

██████████,[1] all in connection with the Arctic Haze investigation (the "Arctic Haze Warrants"). The government now seeks to review materials obtained under the Arctic Haze Warrants in this matter.

<u>The First Warrant</u>

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[1] The government designated discovery containing some of the information in these sentences as Protected Materials under the Protective Order in this case. Although the defense sees no reason why this information cannot be made public, out of an abundance of caution, the defense is redacting these sentences from public filing in the first instance. The defense is leaving unredacted the materials and information the Court publicly included in its October 20, 2025, Order. ECF No. 61.

[2] ████████████████████████████████████████████████████████ ECF No. 38 at 4–6.

██████████████████████████████████████████████████████████████

████████████████████████

### The Second Warrant

USAO-DDC obtained another warrant on ████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████

### The Third and Fourth Warrants

USAO-DDC obtained two more search warrants on ██████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████

Collectively, the Arctic Haze Warrants authorized the government to search Mr. Richman's materials from ████████████████████████████, a timespan that includes a

---

[3] ██████████████████████████████████████████████████████████████
████████████████████████████████████████████

[4] ████████████ was not produced by the government; the defense asked the government to produce it on October 23, 2025, but received no response.

period during which Mr. Richman represented Mr. Comey, and a period that predates the testimony at issue in this case by more than three years. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The government's filing indicates that an earlier privilege review was conducted on the materials seized by the 2020 warrants, involving a filter team and Mr. Richman's counsel. ECF No. 38 at 2. Mr. Richman is an attorney who represented Mr. Comey beginning in May 2017, in addition to other clients. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Richman also had sensitive and private materials belonging to his students within the seized materials. The government acknowledges that neither Mr. Comey nor his attorneys previously participated in privilege review of these materials. ECF No. 38 at 2. The defense understands that Mr. Richman's counsel and the filter team in USAO-DDC agreed that private materials related to his students, as well as privileged materials, would not be provided to the case team.

It is unclear whether the government intends to search only the materials marked responsive by the USAO-DDC team that the Arctic Haze Warrants authorized them to seize, or if the government intends to review both responsive and non-responsive materials from the Arctic Haze Warrants (i.e., the full raw returns). The government declined to answer the defense's requests for more information. Similarly, it is not clear whether materials from the Arctic Haze Warrants have already been produced in this matter. Finally, based on the discovery produced by the government, it appears that the government has not obtained any search warrants in connection with the instant matter, including any warrant authorizing a search of the Arctic Haze materials for evidence of the two offenses with which Mr. Comey is charged.

### C. The Privilege Spill

The defense's concerns with the government's respect for—and ability to safeguard—the defendant's attorney-client privileged materials are not merely hypothetical. Materials produced in discovery confirm that the lead case agents, ███████████████████████████████ ███████████████, may have been exposed to attorney-client privileged materials belonging to Mr. Comey.

On September 25, 2025, ███████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████.

### D. The Filter Motion

On October 10, 2025, the government sent the defense a draft filter protocol. The defense then requested copies of the relevant warrants, but the government declined to produce

---

[5] *See* ECF No. 7.

them on the basis that they would be produced in discovery on October 13, and elected to file its motion before any discovery was produced.

The government's proposed protocol would authorize a Filter Team to review quarantined evidence (presumably from the Arctic Haze Warrants described above) using search terms and sampling to identify potentially privileged material ("PPM"). ECF No. 38 at 2–3. PPM would be withheld from the Prosecution Team unless disclosure is authorized by the privilege holder or the Court. ECF No. 38-1 at 1–3. The proposed protocol authorizes the Filter Team "to disclose to the Prosecution Team discovery material that" the Team does not "identif[y] as PPM." *Id.* at 2. It also permits the disclosure of "PPM over which the Putative Privilege Holder(s) do(es) not assert a privilege" objection through a privilege logging process "within three calendar days." ECF No. 38-1 at 2–4. Any remaining disputes proceed to item-by-item adjudication by the Court. ECF No. 38-1 at 3–5. The protocol invokes Federal Rule of Evidence 502(d) to limit waiver and provides a clawback process for inadvertent disclosures, which the government suggests will streamline privilege claims. *See* ECF No. 38 at 3, 5. The government states that such an approach is consistent with other cases in this District, but fails to mention that none of those cases involved the review of materials seized from the defendant's attorney. *See* ECF No. 38 at 6.

Given the heightened privilege concerns inherent in such a review—and the fact that the government may already have been tainted by exposure to Mr. Comey's privileged information—the defense does not believe that this protocol sufficiently protects Mr. Comey's privileges. Should the government elect to proceed with a lawful review and identify to the defense the materials to be reviewed, the defense stands ready to confer regarding that protocol. However, that is not the situation before the Court.

## II. The Court Should Deny the Government's Motion for a Filter Protocol

The Fourth Amendment plainly prohibits the government from doing exactly what it seeks to do here: the Arctic Haze warrants were obtained more than five years ago in a separate and now-closed criminal investigation and authorized the seizure of evidence of separate offenses. Yet the government seeks to turn those warrants into general warrants to continue to rummage through materials belonging to Mr. Comey's lawyer in an effort to seize evidence of separate alleged crimes. The Court should not authorize the government to conduct an unlawful review.

### A. Applicable Law

Courts have repeatedly held that the government must execute search warrants within a reasonable period of time, including with respect to electronic data. As the Fourth Circuit has explained, district courts "retain[] the authority to determine that prolonged retention of non-responsive data by the government violated the Fourth Amendment." *United States v. Zelaya-Veliz*, 94 F.4th 321, 338 (4th Cir. 2024) (citation omitted).[6] That authority derives from application of the general "Fourth Amendment reasonableness" standard. *Id.* And "[c]ourts have applied this reasonableness standard to suppress evidence when the government delayed unreasonably in sifting through social media warrant returns for relevant evidence." *Id.* (citing *United States v. Cawthorn*, 682 F. Supp. 3d 449, 458–60 (D. Md. 2023)). In *Cawthorn*, for instance, the district court held that two years was "an ample amount of time to conduct the

---

[6] Mr. Comey reserves his right to move to suppress these warrants, to the extent the government continues to use them in this manner. *See, e.g.*, *United States v. Place*, 462 U.S. 696, 709–10 (1983) (a seizure lawful at its inception can nevertheless violate the Fourth Amendment based on agents' subsequent conduct); *DeMassa v. Nunez*, 770 F.2d 1505, 1508 (9th Cir. 1985) ("an attorney's clients have a legitimate expectation of privacy in their client files"). Until the government answers the questions the defense has previously raised about these warrants, which to date have remained unanswered and which are detailed at the end of this submission, the defense will not be in a position to file an appropriately targeted suppression motion.

8

necessary review" of digital materials, and "[c]ontinued access to search through the data beyond what the Government ha[d] already identified as responsive in its report would be unreasonable." 682 F. Supp. 3d at 459 n.7. *See id.* at n.8 (noting that the good faith exception does not apply "where the error was not with the warrant itself but, rather, the government's execution of that warrant in the context of a search of electronic data") (citation omitted).

It is similarly well-established that "[u]nder the Fourth Amendment, when law enforcement personnel obtain a warrant to search for a specific crime but later, for whatever reason, seek to broaden their scope to search for evidence of another crime, a new warrant is required." *United States v. Nasher-Alneam*, 399 F. Supp. 3d 579, 592 (S.D. W. Va. 2019) (citing *United States v. Williams*, 592 F.3d 511, 516 n.2 (4th Cir. 2010)); *see also Terry v. Ohio*, 392 U.S. 1, 19 (1968) ("The scope of the search must be strictly tied to and justified by the circumstances which rendered its initiation permissible.") (cleaned up).

"Given the heightened potential for government abuse of stored electronic data, it is imperative that courts ensure that law enforcement scrupulously contain their searches to the scope of the search warrant which permitted the search in the first place. This is especially true where, as here, the illegal search was conducted at the behest of lawyers–the people in the best position to know what was allowed under the law." *Nasher-Alneam*, 399 F. Supp. 3d at 595. A reasonable warrant thus "confine[s] the executing officers' discretion by restricting them from rummaging through [digital] data in search of unrelated criminal activities." *Zelaya-Veliz*, 94 F.4th at 337 (citation omitted).

### B. Discussion

The government's request to implement a filter protocol should be denied. The government seeks to revive and repurpose years-old warrants from a closed investigation to conduct new searches for different crimes. Under the Fourth Amendment's reasonableness

9

requirement and the particularity principles that govern digital searches, the proposed review is plainly unconstitutional and beyond the scope of the prior judicial authorizations. Mr. Comey reserves all rights to challenge the processes outlined in the filter protocol, but as a threshold matter, the Court cannot authorize a protocol for an unconstitutional search.

      First, the Arctic Haze Warrants, by their express terms, do not authorize the government to conduct the searches it now seeks. The Arctic Haze Warrants targeted only alleged violations of █████████████████████████████████████████████████████████████ ████████████████████████████. The government now proposes to use those warrants to search for evidence of different crimes that arose from a proceeding that occurred *after* USAO-DDC obtained the Arctic Haze warrants. The Fourth Amendment forbids this expansion without a new warrant. *See Nasher-Alneam*, 399 F. Supp. 3d at 589, 595 ("[I]t is imperative that searches of electronic information strictly comply with the parameters outlined in the warrant to avoid effectively converting a search warrant … into the sort of general warrant forbidden by the Fourth Amendment."). Permitting a search here would convert the prior authorizations into general warrants, giving the government license to rummage for any offense, in any matter, in perpetuity, contrary to the Fourth Amendment's particularity and reasonableness requirements. *See United States v. Wardle*, 2013 WL 3776267, at *5 (D. Utah July 17, 2013) (a second search of hard drives for a different case could not be treated as a "subsequent search" authorized by an initial warrant); *see also Riley v. California*, 573 U.S. 373, 401 (2014) (requiring government to obtain a warrant before searching cell phone lawfully seized incident to arrest); *United States v. Sedaghaty*, 728 F.3d 885, 913 (9th Cir. 2013) (requiring government to obtain a warrant before conducting additional search of lawfully seized computer hard drive).

10

Second, the government's proposed renewed review of the seized digital data is unreasonable under the Fourth Amendment. The Fourth Amendment demands reasonable execution of digital warrants, including timely review and the return or sealing of non-responsive data. Courts suppress or curtail access to digital returns when the government unreasonably delays its review. *See Zelaya-Veliz*, 94 F.4th at 338; *Cawthorn*, 682 F. Supp. 3d at 459 (two-year delay in review was unreasonable). The delay here far exceeds the two-year period found unreasonable in *Cawthorn*. Continued access and renewed searching under these circumstances is precisely the sort of "prolonged retention" *Zelaya-Veliz* recognized as unreasonable under the Fourth Amendment. The Arctic Haze investigation was closed in 2021 after a comprehensive, iterative review of the seized materials. Each successive warrant sought increasingly granular details or attempted to address potential gaps in the collection, yet the government ultimately determined that the evidence was insufficient to proceed with any charges. This outcome underscores both the lack of any ongoing investigative need to revisit the materials and the unreasonableness of any subsequent review for separate offenses years later. *See Asinor v. District of Columbia*, 111 F.4th 1249, 1252, 1255–59 (D.C. Cir. 2024) ("continued possession" of phone was unreasonable under the Fourth Amendment because government's "legitimate investigatory purpose" had dissipated).

Finally, the government errs in contending that Mr. Comey should be required to move to challenge the warrants simultaneously with the government beginning its review. *See* ECF No. 38 at 4. The Court cannot and should not authorize the government to conduct a plainly unlawful review, no matter what protocol applies.

For the foregoing reasons, the Court should deny the government's motion to implement its proposed filter protocol without prejudice, and direct the government to disclose the following information to allow both the Court and the defense to assess the appropriateness of the protocol:

1. The legal authority for the contemplated review.

2. Whether any quarantined materials have been accessed by, shared with, or provided to the case team (and, if so, which materials were reviewed by which personnel on which day), and whether any such materials have been produced in discovery.

3. The protocol used during the prior filter review, including search parameters, segregation measures, privilege determinations, and associated logs or correspondence.

4. Whether the government intends to search raw returns or only the set already filtered in the prior review. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 181 (4th Cir. 2019), as amended (Oct. 31, 2019) (holding that "the magistrate judge erred" by approving a filter protocol "without first ascertaining" the materials to be reviewed).

5. Whether non-lawyers will conduct any portion of the Filter Review. *See* ECF No. 38-1 ¶ 2 n.2 ("The Filter Team is comprised of Two Assistant United States Attorneys, *and their support staff*") (emphasis added); *see In re Search Warrant Issued June 13, 2019*, 942 F.3d at 177 (criticizing the use of non-lawyers to designate documents as nonprivileged).

Only with these disclosures can the Court determine the legal validity of the proposed searches and assess any proposed filter process consistent with its supervisory role over privilege determinations.

Dated: October 27, 2025                     Respectfully submitted,


                                           JAMES B. COMEY, JR.
                                           By Counsel

*/s/   Jessica Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone:  (703) 684-7908
Facsimile:  (703) 649-6360
Email:  jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone:  (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 479-6000

Ephraim A. McDowell (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

Michael R. Dreeben (*pro hac vice*)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone:  (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

13

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 27th day of October, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/  *Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*
