IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-CR-00272-MSN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## JAMES B. COMEY JR.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT

James B. Comey, Jr., by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 12(b), moves this Court to dismiss the indictment. As explained in the accompanying Memorandum, Count One seeks to punish Mr. Comey for responding to Senator Ted Cruz's fundamentally ambiguous questions with literally true answers. As a matter of law, neither those questions nor those answers can serve as the basis for a violation of 18 U.S.C. § 1001(a)(2). Thus, under longstanding principles of criminal law, Count One must be dismissed. If Count Two rests on the same allegedly false statements, it should be dismissed for the same reasons. And in any event, Count Two should be dismissed because it fails to give Mr. Comey adequate notice of the charges against him.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

ARGUMENT .................................................................................................................. 5

    I.      COUNT ONE MUST BE DISMISSED BECAUSE IT RESTS ON A
            PARTICULAR INTERPRETATION OF FUNDAMENTALLY
            AMBIGUOUS QUESTIONS .......................................................................... 6

          A.     Senator Cruz's Questions at the 2020 Senate Hearing Were
                Fundamentally Ambiguous .......................................................... 7

               1.    Senator Cruz's imprecise compound questions made it
                       unclear whether he was asking about Mr. McCabe or FBI
                       officials more broadly .................................................... 8

               2.    Senator Cruz's use of alternating narrow and broad
                       questions reinforces that the line of questioning was
                       fundamentally ambiguous .............................................. 11

               3.    Senator Cruz's questions were riddled with other
                       ambiguities that would have made it difficult for any
                       reasonable person to understand them ......................... 14

          B.     Count One Rests on a Particular Interpretation of Senator Cruz's
                Fundamentally Ambiguous Questions and Thus Must Be
                 Dismissed ................................................................................. 16

    II.     MR. COMEY'S LITERALLY TRUE ANSWERS SEPARATELY
            WARRANT DISMISSAL OF COUNT ONE ................................................... 16

    III.   COUNT TWO SHOULD BE DISMISSED FOR SIMILAR REASONS .......... 20

CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bronston v. United States*,
    409 U.S. 352 (1973).............................................................................5, 17, 19, 20

*Fotie v. United States*,
    137 F.2d 831 (8th Cir. 1943) ...............................................................................17, 20

*Russell v. United States*,
    369 U.S. 749 (1962)...........................................................................................6, 20, 21

*United States v. Chujoy*,
    207 F. Supp. 3d 626 (W.D. Va. 2016) .............................................................7, 8, 11

*United States v. Earp*,
    812 F.2d 917 (4th Cir. 1987) ...............................................................................17, 20

*United States v. Elfenbein*,
    144 F.4th 551 (4th Cir. 2025) ....................................................................................7

*United States v. Farmer*,
    137 F.3d 1265 (10th Cir. 1998) .................................................................................7

*United States v. Freitekh*,
    114 F.4th 292 (4th Cir. 2024) ....................................................................................4

*United States v. Good*,
    326 F.3d 589 (4th Cir. 2003) ...................................................................................17

*United States v. Hairston*,
    46 F.3d 361 (4th Cir. 1995) .....................................................................................17

*United States v. Landau*,
    737 F. Supp. 778 (S.D.N.Y. 1990) ...........................................................7, 8, 10, 15

*United States v. Lighte*,
    782 F.2d 367 (2d Cir. 1986)......................................................................................6

*United States v. Mosby*,
    143 F.4th 264 (4th Cir. 2025) ....................................................................................6

*United States v. Paolicelli*,
    505 F.2d 971 (4th Cir. 1974) .............................................................................11, 17

*United States v. Razzaia*,
    370 F. Supp. 577 (D. Conn. 1973).........................................................................15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Rendon-Marquez,*
   79 F. Supp. 2d 1361 (N.D. Ga. 1999) .............................................................8, 10

*United States v. Ryan,*
   828 F.2d 1010 (3d Cir. 1987).................................................................................7

*United States v. Sainz,*
   772 F.2d 559 (9th Cir. 1984) .............................................................................6, 7

*United States v. Sarwari,*
   669 F.3d 401 (4th Cir. 2012) .............................................................................6, 7

*United States v. Serafini,*
   167 F.3d 812 (3d Cir. 1999)...........................................................7, 11, 12, 13, 19

*United States v. Smith,*
   54 F.4th 755 (4th Cir. 2022) .........................................................................5, 16, 18

*United States v. Strohm,*
   671 F.3d 1173 (10th Cir. 2011) ............................................................................7

**Statutes, Regulations, and Rules**

18 U.S.C.
   § 1001(a)(2) ..................................................................................... *passim*
   § 1505...............................................................................................5, 6, 20

28 C.F.R. § 0.85 ...............................................................................................1

Fed. R. Crim. P. 12(b)(3)(A)..................................................................................1

**Other Authorities**

Linda F. Harrison, *The Law of Lying: The Difficulty of Pursuing Perjury Under
   the Federal Perjury Statutes*, 35 U. Tol. L. Rev. 397 (2003) ................................7, 8

Office of the Inspector General, Department of Justice, *A Report of Investigation
   of Certain Allegations Relating to Former FBI Deputy Director Andrew
   McCabe* (Feb. 2018) ........................................................................................4

*Oversight of the Crossfire Hurricane Investigation: Day 3*, Hearing Before the
   Sen. Comm. on the Judiciary, 116th Cong. (Sept. 30, 2020).....................................2

*Oversight of the Federal Bureau of Investigation: Hearing Before the S. Comm.
   on the Judiciary*, 115th Cong. (May 3, 2017)..........................................................2

## INTRODUCTION

Count One of the indictment seeks to punish Mr. Comey for seconds of testimony he gave in response to compound and ambiguous questioning.  But longstanding principles of criminal law make clear that the government cannot prove a violation of 18 U.S.C. § 1001(a)(2) unless it establishes that the defendant gave false answers to precise questions.  Here, the indictment conspicuously omits the lengthy, confusing questions that prompted Mr. Comey's testimony.  Specifically, after speaking for more than a minute, Senator Ted Cruz asked Mr. Comey to recall statements he had made three years earlier and to simultaneously address statements that Senator Cruz incorrectly claimed were made by Andrew McCabe, the former Deputy Director of the Federal Bureau of Investigation (FBI).  In doing so, Senator Cruz never indicated that he wanted Mr. Comey to address the statements or activities of any person except for Mr. McCabe.  Viewed in context, Senator Cruz's questions cannot form the basis for a violation of Section 1001(a)(2) because they were fundamentally ambiguous.  And, regardless, Mr. Comey's answers to them were literally true.  Count One thus must be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(A).  Count Two should be dismissed for the same reason to the extent it rests on those same alleged false statements, and for the independent reason that it deprives Mr. Comey of his right to notice of the charge against him.

## BACKGROUND

From September 4, 2013, to May 9, 2017, Mr. Comey served as Director of the Federal Bureau of Investigation (FBI).  As FBI Director, Mr. Comey oversaw the FBI's operations, including investigations into national security threats and federal crimes involving terrorism, fraud, political corruption, gang violence, and cybercrimes.  *See* 28 C.F.R. § 0.85.  Among the many investigations at the FBI during Mr. Comey's tenure was "Crossfire Hurricane," a counterintelligence investigation into alleged links between President Trump's 2016 campaign

1

and the Russian government, as well as "Midyear Exam," an investigation begun in 2015 into then-candidate Hillary Clinton's alleged mishandling of classified information during her tenure as Secretary of State.

On May 3, 2017, Mr. Comey voluntarily testified at the Senate Judiciary Committee's annual FBI oversight hearing. *See Oversight of the Federal Bureau of Investigation: Hearing Before the S. Comm. on the Judiciary*, 115th Cong. (May 3, 2017) (Statement of James B. Comey, Dir. FBI, at 44:00), http://bit.ly/3WdliN9. As relevant here, Mr. Comey engaged in the following exchange with Senator Charles Grassley:

> SEN. GRASSLEY:    Director Comey, have you ever been an anonymous source in news reports about matters relating to the Trump investigation or the Clinton investigation?
>
> MR. COMEY:    Never.
>
> SEN. GRASSLEY:    Question two on [*sic*] relatively related, have you ever authorized someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton investigation?
>
> MR. COMEY:    No.

*See* Exhibit B to Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, ECF No. 59-2 at 5 ("2017 Hearing Transcript").

Three years later, on September 30, 2020, Mr. Comey voluntarily appeared before the same committee at a hearing on the Crossfire Hurricane investigation. *See Oversight of the Crossfire Hurricane Investigation: Day 3, Hearing Before the Sen. Comm. on the Judiciary*, 116th Cong. (Sept. 30, 2020), http://bit.ly/4o2ekHb.[1] As relevant here, Mr. Comey engaged in the following exchange with Senator Ted Cruz:

---

[1] Before the hearing, the committee agreed that it would be limited to four specific topics: (i) "Crossfire Hurricane," (ii) the December 2019 Department of Justice Inspector General report's "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane

2

| SEN. CRUZ: | On May 3, 2017 in this committee, Chairman Grassley asked you point blank "have you ever been an anonymous source in news reports about matters relating to the Trump investigation or the Clinton investigation?"  You responded under oath "never."  He then asked you "have you ever authorized someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton administration."  You responded again under oath, "no." |
|---|---|
| | Now, as you know, Mr. McCabe, who works for you, has publicly and repeatedly stated that he leaked information to The Wall Street Journal and that you were directly aware of it and that you directly authorized it.  Now, what Mr. McCabe is saying and what you testified to this committee cannot both be true; one or the other is false.  Who's telling the truth? |
| MR. COMEY: | I can only speak to my testimony.  I stand by what, the testimony you summarized that I gave in May of 2017. |
| SEN. CRUZ: | So, your testimony is you've never authorized anyone to leak.  And Mr. McCabe when if he says contrary is not telling the truth, is that correct? |
| MR. COMEY: | Again, I'm not going to characterize Andy's testimony, but mine is the same today. |

*See* Exhibit A ("Oversight Hearing Video Clip"); Exhibit C to Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, ECF No. 59-3 at 11 ("Oversight Hearing Transcript").[2] The colloquy thus reflects that Senator Cruz's questions focused exclusively on an asserted contradiction between Mr. McCabe and Mr. Comey.[3]

---

Investigation," (iii) the Carter Page FISA applications, and (iv) Christopher Steele's source network and primary sub-source.

[2] For the rest of this brief, references to the exchange between Mr. Cruz and Mr. Comey cite to the Oversight Hearing Video Clip, which provides the most accurate depiction of the exchange. But the Oversight Hearing Transcript is a useful reference as well.

[3] Compounding the ambiguity, Senator Cruz mischaracterized Mr. McCabe's actual statements in claiming a contradiction between Mr. McCabe's account and Mr. Comey's testimony.  There is no record of Mr. McCabe ever stating that Mr. Comey authorized him to leak information to the Wall Street Journal, much less a record of "repeated" and "public" statements to that effect. Mr. McCabe was interviewed multiple times and in none of those interviews did Mr. McCabe assert that he spoke in advance with Mr. Comey about his disclosure to the Wall Street Journal.

Apparently based on that testimony, the government has charged Mr. Comey with a two-count indictment.  Count One charges Mr. Comey with making false statements to Congress, in alleged violation of 18 U.S.C. § 1001(a)(2).  *See* ECF No. 1 at 1.  To prove that a defendant violated Section 1001(a)(2), the government must establish that (1) the defendant made a false statement to a governmental agency, (2) the defendant acted knowingly or willfully, and (3) the false statement was material to a matter within the jurisdiction of the agency.  *United States v. Freitekh*, 114 F.4th 292, 310 (4th Cir. 2024).  Here, the government attempts to satisfy those elements by alleging the following:

> On or about September 30, 2020, in the Eastern District of Virginia, the defendant, JAMES B. COMEY JR., did willfully and knowingly make a materially false, fictitious, and fraudulent statement in a matter within the jurisdiction of the legislative branch of the Government of the United States, by falsely stating to a U.S. Senator during a Senate Judiciary Committee hearing that he, JAMES B. COMEY JR., had not "authorized someone else at the FBI to be an anonymous source in news reports" regarding an FBI investigation concerning PERSON 1.

> That statement was false, because, as JAMES B. COMEY JR. then and there knew, he in fact had authorized PERSON 3 to serve as an anonymous source in news reports regarding an FBI investigation concerning PERSON 1.

ECF No. 1 at 1.  On October 15, 2025, the government confirmed to the defense that "PERSON 1" refers to Hillary Clinton and "PERSON 3" refers to Daniel Richman.  Additionally, although the indictment does not specifically reference Senator Cruz, Mr. Comey's exchange with Senator Cruz is the only part of the 2017 Senate hearing that touched on whether Mr. Comey had "authorized someone else at the FBI to be an anonymous source in news report."  *See* Oversight Hearing Video Clip.

---

Rather, Mr. McCabe stated in his last interview that he informed Mr. Comey that he had leaked information *after* he had done so.  Office of the Inspector General, Department of Justice, *A Report of Investigation of Certain Allegations Relating to Former FBI Deputy Director Andrew McCabe*, at 12 (Feb. 2018), https://perma.cc/GKQ7-DAJP.  Indeed, more than two years *before* the hearing, the Department of Justice's Office of Inspector General found that Mr. McCabe did not consult with Mr. Comey before talking to news outlets.  *See id.* at 33-34.

Count Two charges Mr. Comey with "corruptly endeavor[ing] to influence, obstruct and impede" a Senate Judiciary Committee investigation on or about the same date "by making false and misleading statements before that committee," in alleged violation of 18 U.S.C. § 1505. *Id.* at 2. The indictment does not specify which "false and misleading statements" Mr. Comey allegedly made, and why they were allegedly false or misleading. Similarly, the indictment does not specify how Mr. Comey allegedly "corruptly endeavor[ed] to influence, obstruct, and impede" the Committee's investigation, or even which investigation that was. *Id.*

## ARGUMENT

Section 1001(a)(2) authorizes the government to prosecute witnesses who misled government investigators by giving materially false answers to clear questions. But it does not authorize the government to create confusion by posing an imprecise question and then seek to exploit that confusion by placing an after-the-fact nefarious interpretation on the ensuing benign answer. Indeed, basic due process principles in criminal law require that the questioner frame his questions with clarity so that a witness does not have to guess. "The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston v. United States*, 409 U.S. 352, 360 (1973) (citations omitted). Accordingly, "[p]recise questioning is imperative as a predicate for the offense of perjury." *Id.* at 362. And a perjury statute cannot be "invoked . . . so long as the witness speaks the literal truth." *Id.* at 360.[4]

Applying those principles here, Count One must be dismissed. Count One alleges that Mr. Comey made a false statement in response to Senator Cruz's questions at a 2020 Senate hearing. ECF No. 1 at 1. But those questions—which required Mr. Comey to recall statements he had made three years prior and simultaneously address another individual's alleged

---

[4] "Though *Bronston* dealt with a perjury charge," the Fourth Circuit has "since applied its holding to § 1001 offenses." *United States v. Smith*, 54 F.4th 755, 767 (4th Cir. 2022).

statements—were "fundamentally ambiguous" and thus cannot support a conviction under Section 1001(a)(2).  *See United States v. Mosby*, 143 F.4th 264, 276 (4th Cir. 2025).  Nor can Mr. Comey's "literally true answer[s]" to those questions support a conviction.  *See United States v. Sarwari*, 669 F.3d 401, 406 (4th Cir. 2012).  Fundamental to any false statement charge are both clear questions and false answers.  Neither exists here.

In turn, Section 1505 authorizes the government to prosecute a witness who "corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes" a "pending proceeding" before a Congressional committee.  18 U.S.C. § 1505.  As noted, Count Two alleges that Mr. Comey violated Section 1505 by making "false and misleading statements" to the Senate Judiciary Committee but fails to specify which statements were allegedly false and misleading.  *See* ECF No. 1 at 2.  To the extent Count Two rests on the same allegedly false statements as Count One, it should be dismissed for the same reasons.  And in any event, Count Two should be dismissed because it fails to give Mr. Comey adequate notice of the charges against him.  *See Russell v. United States*, 369 U.S. 749, 766 (1962).

## I.    COUNT ONE MUST BE DISMISSED BECAUSE IT RESTS ON A PARTICULAR INTERPRETATION OF FUNDAMENTALLY AMBIGUOUS QUESTIONS

An "answer to a fundamentally ambiguous question may not, as a matter of law, form the basis for a false statement" under Section 1001(a)(2).  *Mosby*, 143 F.4th at 276 (citing *Sarwari*, 669 F.3d at 407).  "The purpose of the rule of fundamental ambiguity is three-fold, namely, to (1) preclude convictions grounded on surmise or conjecture; (2) prevent witnesses from unfairly bearing the risks of inadequate examination; and (3) encourage witnesses to testify (or at least not discourage them from doing so)."  *United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998).  To achieve those goals, "[c]ourts have required near-absolute clarity from the questioner in order to support a perjury charge," and have similarly applied that requirement to analogous

false-statements charges such as those here. *United States v. Strohm*, 671 F.3d 1173, 1178 (10th Cir. 2011) (citing Linda F. Harrison, *The Law of Lying: The Difficulty of Pursuing Perjury Under the Federal Perjury Statutes*, 35 U. Tol. L. Rev. 397, 403 (2003)); *see United States v. Elfenbein*, 144 F.4th 551, 567 n.14 (4th Cir. 2025) (explaining that "where the relevant language is fundamentally ambiguous," a "false-statement conviction is . . . impossible").

A false-statements charge that rests on a particular interpretation of a fundamentally ambiguous question must be dismissed. Whether a predicate question is "fundamentally ambiguous" is a "question of law for the court" to resolve before trial. *United States v. Chujoy*, 207 F. Supp. 3d 626, 651 (W.D. Va. 2016) (citing *Sarwari*, 669 F.3d at 407); *United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir. 1987), *abrogated on other grounds by*, *United States v. Wells*, 519 U.S. 482, 486, n.3 (1997) (explaining that when a question is "fundamentally ambiguous," "it is not amenable to jury interpretation"). And if a court decides that the predicate question is fundamentally ambiguous, the charge must be dismissed if it does not allege that the defendant's answer was false under every interpretation of the question. *See United States v. Serafini*, 167 F.3d 812, 824 (3d Cir. 1999) ("As there is no allegation that—with the question so understood—the defendant's answer was false, that subportion of the indictment pertaining to statement 3 was rightly stricken.").

A. **Senator Cruz's Questions at the 2020 Senate Hearing Were Fundamentally Ambiguous**

A question is fundamentally ambiguous if there are multiple ways to interpret it and "'men of ordinary intellect [would not] agree'" on which interpretation is correct. *Chujoy*, 207 F. Supp. 3d at 651 (alteration in original) (quoting *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986)). For instance, courts regularly deem "compound questions" fundamentally ambiguous when they make it difficult for a witness to tell which part of the question he should

respond to.  *See id*. (citing *Strohm*, 671 F.3d at 1179); *see, e.g.*, *United States v. Landau*, 737 F. Supp. 778, 783 (S.D.N.Y. 1990); *United States v. Rendon-Marquez*, 79 F. Supp. 2d 1361, 1363-64 (N.D. Ga. 1999).  Other factors that bear on whether a question is fundamentally ambiguous include "the context of the question and answer," the "inherent vagueness . . . of certain words and phrases," and "defects in syntax or grammar in a question."  *Chujoy*, 207 F. Supp. 3d at 651 (citing *Strohm*, 671 F.3d at 1179).

Senator Cruz's questions are fundamentally ambiguous because people of ordinary intellect would not be expected to understand that he meant to ask a broad question about Mr. Comey's interactions with anyone at the FBI—including Daniel Richman—during a colloquy focused on Mr. McCabe.  On the contrary, a reasonable person readily would have understood Senator Cruz to be asking only whether Mr. Comey had specifically authorized Mr. McCabe to be an anonymous source in news reports.

1. **Senator Cruz's imprecise compound questions made it unclear whether he was asking about Mr. McCabe or FBI officials more broadly**

When a government official "combines two or more discrete inquiries in one question" but "elicits a single response from the witness, it may be impossible . . . to know which question the witness believed he was answering."  Harrison, *supra* at 405; *see, e.g.*, *Landau*, 737 F. Supp. at 783 (finding "compound question that elicited a singular response" to be fundamentally ambiguous).  That is exactly what Senator Cruz did at the 2020 Senate Hearing.

As relevant here, Senator Cruz asked Mr. Comey two questions, each of which contained a discrete inquiry about Mr. McCabe and a discrete inquiry about FBI officials more broadly.  As a prelude to his first question, Senator Cruz described the 2017 exchange between Mr. Comey and Senator Grassley:

8

> On May 3, 2017 in this committee, Chairman Grassley asked you point blank "have you ever been an anonymous source in news reports about matters relating to the Trump investigation or the Clinton investigation?" You responded under oath "never." He then asked you "have you ever authorized someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton administration." You responded again under oath, "no."

*See* Oversight Hearing Video Clip. Senator Cruz did not stop and ask Mr. Comey whether his statements to Senator Grassley were true. Instead, he continued on to describe a statement by Mr. McCabe:

> Now, as you know, Mr. McCabe, who works for you, has publicly and repeatedly stated that he leaked information to The Wall Street Journal and that you were directly aware of it and that you directly authorized it. Now, what Mr. McCabe is saying and what you testified to this committee cannot both be true; one or the other is false.

*Id.* He then asked: "Who's telling the truth?" *Id.* By structuring his question that way, Senator Cruz raised two issues: (1) whether Mr. Comey was telling the truth in his 2017 exchange with Senator Grassley, and (2) whether Mr. McCabe was telling the truth in what Senator Cruz incorrectly characterized as Mr. McCabe's recent statements. But instead of asking Mr. Comey to address each of those issues separately, he only asked Mr. Comey to address the question of whether Mr. Comey or Mr. McCabe was telling the truth.

The compound structure of Senator Cruz's second question was nearly identical to the first. After Mr. Comey responded to the first question, Senator Cruz stated: "So, your testimony is you've never authorized anyone to leak." *See id.* Senator Cruz then paused and, after a moment, proceeded to ask a question: "And Mr. McCabe when if he says contrary is not telling the truth, is that correct?" *Id.* By structuring his comment and question that way, Senator Cruz signaled to Mr. Comey that he should specifically address the question about whether Mr. McCabe was lying.

Courts have regularly determined that similar compound questions are fundamentally ambiguous. In *Landau*, for instance, the government had asked the defendant, a general contractor whose work for a company had been delayed due to union picketing, whether he had told the company or its representatives that he "had to make payments to the union or that it was necessary because of the union's picketing that it cost you more money." 737 F. Supp. at 780-81. The court held that the question was fundamentally ambiguous because it compounded two separate inquiries—"whether payments to the union were necessary and whether the picketing cost more money"—and "elicited a singular response." *Id.* at 783. Accordingly, the court concluded that the question could not "as a matter of law . . . support a perjury conviction" and dismissed the indictment. *Id.* at 784-85.

Similarly, in *Rendon-Marquez*, the court determined that the following question on an Immigration and Naturalization Service form was too ambiguous to support a conviction under Section 1001:

> Have you knowingly committed any crime or offense, for which you have not been arrested; or have you been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations?

79 F. Supp. 2d at 1362. The court explained that the form "asked two separate and distinct questions" but "provided space for only one 'yes' or 'no' answer." *Id.* at 1363.

Likewise, each of Senator Cruz's questions compounded two separate inquiries—whether Mr. Comey was telling the truth in 2017 and whether Mr. Comey had authorized Mr. McCabe to be an anonymous source—but asked for the equivalent of a "yes" or "no" response only as to the second inquiry. Any reasonable witness would have found it difficult to know that Senator Cruz wanted Mr. Comey both to answer the binary question just asked and also to address the prior comments. This is especially so where the questioner did not confront Mr. Comey with what the

10

government is now claiming he "then and there" knew (alleged conduct involving Mr. Richman) but instead confronted Mr. Comey with an inaccurate account of Mr. *McCabe's* statements.

### 2. Senator Cruz's use of alternating narrow and broad questions reinforces that the line of questioning was fundamentally ambiguous

Even if Senator Cruz's use of compound questions did not by itself make those questions fundamentally ambiguous, context confirms that Mr. Comey could not have reasonably known that Senator Cruz was asking him to answer a broad question about anyone at the FBI when asked a specific question about Mr. McCabe. As noted, the "context of the question and answer" can establish that a witness could not have understood what he was being asked. *Chujoy*, 207 F. Supp. 3d at 651 (citing *Strohm*, 671 F.3d at 1179); *see United States v. Paolicelli*, 505 F.2d 971, 973 (4th Cir. 1974) (citing *Fotie v. United States*, 137 F.2d 831, 842 (8th Cir. 1943)) (explaining that a false statement charge cannot "be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows"). Accordingly, the court "must look to the context of the defendant's statement to determine whether the defendant and his questioner joined issue on a matter of material fact" to which the defendant allegedly uttered a false material declaration. *Serafini*, 167 F.3d at 821 (citing *United States v. Sainz*, 772 F.2d 559, 562 (9th Cir. 1984)).

As relevant here, context can establish that a defendant would have understood a facially broad question to have a much narrower focus. The Third Circuit's decision in *Serafini*, which affirmed the district court's pre-trial dismissal of a perjury charge, is instructive. *See id.* at 816-19. As part of an investigation into suspected campaign finance violations, the government asked the defendant a series of three questions about a $2,000 check he had received from his nephew, ostensibly as a reimbursement for his $1,000 donation to Bob Dole's presidential campaign:

11

| **Question 1:** | Is there any check that your [*sic*] received that reimbursed you other than that $2,000 check for your contribution? |
|---|---|
| **Answer:** | No. |
| **Question 2:** | Is there another check that you are aware of that is connected to this investigation, to this Dole contribution, other than the $2,000? |
| **Answer:** | Not other than what you have shown me today, no. |
| **Question 3:** | Did you receive any other money, whether by cash, or check, or any other form from Michael at or around the time period you made your Dole contribution other than this $2,000 check? |
| **Answer:** | I can't specifically remember, however, we transfer money back and forth quite often for different reasons and I can't honestly say that there wasn't some kind of transfer, I mean, we do it all of the time. |

*Id*. at 818.  After discovering that the $2,000 had served to reimburse both the defendant and his aide for respective $1,000 contributions, the government charged the defendant with making a false statement in response to Question 2.  *Id.* at 819.  The government claimed that Question 2 had asked the defendant to identify any other check he was aware of and that he had been aware of at least two others—the aide's check to the campaign and his check reimbursing the aide.  *Id*.

The Third Circuit held that Question 2 was fundamentally ambiguous because "read in context, the question takes on a particular meaning wholly at odds with the 'broad, openended' significance the government now seeks to attribute to it."  *Id.* at 820.  The court explained that although Question 2 could in isolation be interpreted as asking whether the defendant was aware of *any* other checks, the government's "antecedent and subsequent questions" focused on whether the defendant had *personally received* any other reimbursement checks.  *Id*. at 819, 821.  Given the "narrow subject matter" of those questions, the court explained, the defendant could easily have interpreted the "'sandwiched' question" to ask whether he had personally received other checks from his nephew besides the $2,000 check.  *See id.* at 821.  Indeed, the best way for

12

the defendant "to inject into the question sufficient intelligibility so that he could reply" was to "treat the question as referentially sequential to questions he had just answered." *Id.* Context thus showed that the defendant would not have understood the question to have "the limitlessly capacious construction the government would have it bear." *Id.*

Context shows that the questions at issue here were even more ambiguous and unfair than those in *Serafini*, as Mr. Comey was expressly invited to answer only the narrower questions. As explained above, Senator Cruz began by summarizing Mr. Comey's response to Senator Grassley's broad question about whether Mr. Comey had "ever authorized someone else at the FBI to be an anonymous source in news reports." *See* Oversight Hearing Video Clip. But Senator Cruz then narrowed his focus, incorrectly asserting that "Mr. McCabe, who works for you, has publicly and repeatedly stated that he leaked information to the Wall Street Journal and that you were directly aware of it and that you directly authorized it." *Id.* Accordingly, when Senator Cruz asked Mr. Comey to address "Who's telling the truth," *id.*, the best—and perhaps only—way for Mr. Comey to "inject into the question sufficient intelligibility so that he could reply" was to "treat the question as referentially sequential" to Senator Cruz's "immediately antecedent" assertion about Mr. McCabe. *Serafini*, 167 F.3d at 821. In other words, a reasonable witness most readily would have understood Senator Cruz to be asking him to specifically address whether he had authorized Mr. McCabe to serve as a source to the Wall Street Journal. Similarly, although Senator Cruz began his second question by referencing Mr. Comey's general statement that he had "never authorized anyone to leak," he again narrowed his focus, asking: "And Mr. McCabe when if he says contrary is not telling the truth, *is that correct?*" Oversight Hearing Video Clip (emphasis added).

13

Context thus underscores that Count One rests on a fundamentally ambiguous question.[5] As the indictment frames it, Senator Cruz's question was whether Mr. Comey had "authorized *someone else* at the FBI to be an anonymous source in news reports." ECF No. 1 at 1 (emphasis added). But that quoted language is taken from a statement by Senator Cruz that is a preface to the question that followed four seconds later. *See* Oversight Hearing Video Clip. When fairly "read in context, the question takes on a particular meaning wholly at odds with the 'broad, openended' significance the government now seeks to attribute to it," *Serafini*, 167 F.3d at 820—specifically, that context suggests that Senator Cruz was asking only about whether Mr. Comey had authorized Mr. McCabe to be an anonymous source to the Wall Street Journal.[6]

> **3.    Senator Cruz's questions were riddled with other ambiguities that would have made it difficult for any reasonable person to understand them**

Senator Cruz's focus on Mr. McCabe is alone sufficient to establish fundamental ambiguity when measured against the government's current apparent interpretation. But there is more: Senator Cruz's questions were riddled with other ambiguities that would have made it difficult for any reasonable person to understand them in the moment. For instance, Senator Cruz asked Mr. Comey to affirm or deny prior testimony that he authorized "someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton *administration*." Oversight Hearing Video Clip (emphasis added). As of May 3, 2017, there was no "Trump investigation," but rather an investigation into whether there were links between four individuals associated with the Trump presidential campaign and Russia. *See* Report On The Investigation Into Russian Interference In The 2016 Presidential Election Vol. II at 58

---

[5] To be sure, even if the narrow and broad interpretations were equally plausible, the questions were fundamentally ambiguous.

[6] Adding to this context, Mr. Comey voluntarily agreed to testify at this particular hearing on the understanding that the topics of questioning would be limited to only four topics, none of which related to the Midyear Exam investigation involving Hillary Clinton. *See supra* at 2 n.1.

("Comey also told the President that congressional leaders were aware that the FBI was not investigating the President personally."), https://perma.cc/W3DH-PLS3.    And the "Clinton Administration" had ceased to exist some 17 years before.  Senator Grassley's original question in 2017 was about the "Clinton *investigation*."  2017 Hearing Transcript at 5 (emphasis added).

Senator Cruz's use of the words "never" and "ever" injected additional ambiguity. Courts have explained that questions asking witnesses to recall whether they "ever" have done something are ambiguous because it is difficult to answer them without a perfect memory.  *See United States v. Razzaia,* 370 F. Supp. 577, 579 (D. Conn. 1973).  Questioners can "avoid[]" such "ambiguities" by "focus[ing] the witness's attention on [a] particular" day or time.  *Id.*; *see also Landau*, 737 F. Supp. at 781 (finding questions that asked witness whether he "never" had done something to be ambiguous).  Accordingly, when Senator Cruz referenced Senator Grassley's question asking whether Mr. Comey "ever authorized someone else at the FBI to be an anonymous source in news reports," *see* Oversight Hearing Video Clip, he made it even more difficult for Mr. Comey to understand what he was asking.

Finally, when Senator Cruz referenced Senator Grassley's question about whether Mr. Comey authorized "someone else *at the FBI*" to serve as anonymous source, there was no reason to assume that he was referring to anyone but full-time employees like Mr. McCabe—who were stationed at the FBI—as opposed to someone like Mr. Richman, who was a Special Government Employee living fulltime in New York.  *Id.*  Senator Cruz's errors are "a form of imprecision whose consequences must be laid at the table of the questioner, not the questioned."  *Serafini*, 167 F.3d at 824 (cleaned up) (citing *Sainz*, 772 F.2d at 563).[7]

---

[7] The best way to fully appreciate the ambiguity of Senator Cruz's questions is to watch the Oversight Hearing Video Clip submitted to the Court as Exhibit A.

15

### B.     Count One Rests on a Particular Interpretation of Senator Cruz's Fundamentally Ambiguous Questions and Thus Must Be Dismissed

Persons of ordinary intellect could—and likely would—have understood Senator Cruz to be asking Mr. Comey whether he authorized Mr. McCabe to serve as an anonymous source to the Wall Street Journal.  Thus, because there is "no allegation that—with the question so understood—[Mr. Comey's] answer was false," Count One should be "stricken."  *Serafini*, 167 F.3d at 824.

The indictment alleges that Mr. Comey's "statement was false, because . . . he in fact had authorized PERSON 3 to serve as an anonymous source in news reports regarding an FBI investigation concerning PERSON 1."  ECF No. 1 at 1.  On October 15, 2025, the government confirmed to the defense that PERSON 3 refers to Daniel Richman and PERSON 1 refers to Hillary Clinton.  But as noted, a reasonable person could have understood Senator Cruz's questions to be entirely unrelated to Mr. Richman or anyone else at the FBI—and to have focused on Mr. McCabe alone.

On that reasonable understanding, the indictment contains no allegations that Mr. Comey's answers were false: it never alleges that Mr. Comey made a false statement regarding Mr. McCabe.  On the contrary, the indictment omits Senator Cruz's statements about Mr. McCabe, obscuring the context necessary to understand both the questions themselves and Mr. Comey's responses.  The indictment thus impermissibly "lift[s] a statement of the accused out of its immediate context" and "giv[es] it a meaning wholly different than that which its context clearly shows."  *Paolicelli*, 505 F.2d at 973.  As a result, Count One cannot "be sustained."  *Id.*

## II.    MR. COMEY'S LITERALLY TRUE ANSWERS SEPARATELY WARRANT DISMISSAL OF COUNT ONE

Regardless of whether Senator Cruz's questions were fundamentally ambiguous, the Court should also dismiss Count One because Mr. Comey's answers were literally true.  Where a

16

witness's answer is "not responsive to the question asked," it cannot serve as the basis for a "false-statements" charge if it was "literally true" under any interpretation of the question. *United States v. Smith*, 54 F.4th 755, 767 (4th Cir. 2022) (citing *Bronston* 409 U.S. at 353); *see also Bronston*, 409 U.S. at 360 (explaining that a false-statement statute cannot be "invoked simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth").  Although "the literal-truth defense is 'a narrow one,'" *Smith*, 54 F.4th at 767 (citation omitted), the Fourth Circuit has dismissed numerous perjury and related charges based on a defendant's literally true answers.  *See, e.g.*, *United States v. Good*, 326 F.3d 589, 591-92 (4th Cir. 2003) (reversing conviction because the defendant's negative response on a security application as to whether she had been convicted of "Burglary, Theft, Armed robbery, Possession or Distribution of Stolen Property, Dishonesty, Fraud, or Misrepresentation" was literally true given that her embezzlement conviction was not one of the crimes listed); *United States v. Hairston*, 46 F.3d 361, 375-76 (4th Cir. 1995) (reversing conviction given context that made it "obvious" the defendant used the word "prepare" in a particular manner that made her answers regarding the preparation of a tax document literally true); *United States v. Earp*, 812 F.2d 917, 918-20 (4th Cir. 1987) (reversing conviction when the defendant's negative answer when asked if he had ever burned crosses at the residences of interracial couples was literally true, even though the defendant had stood watch with a shotgun while others tried and failed to do so).

Here, Mr. Comey's answers to Senator Cruz's questions were "literally true."  *Smith*, 54 F.4th at 767.  When Senator Cruz's preliminary statements are omitted from the questions and answers, it is apparent that the Senator posed two questions to Mr. Comey.  The first question was: between Mr. Comey and Mr. McCabe, "Who's telling the truth?"  *See* Oversight Hearing

Video Clip. A direct answer to this question would have required Mr. Comey to respond either, "I am telling the truth" or "Andrew McCabe is telling the truth." Mr. Comey, however, did not respond by stating who was telling the truth. He stated: "I can only speak to my testimony. I stand by . . . the testimony you summarized that I gave in May of 2017." *See id.* Although those statements did not respond directly to Mr. Cruz's question, they were literally true. Mr. Comey could only speak to his own testimony—he could not read Mr. McCabe's mind and know whether Mr. McCabe intentionally lied in the statements described by Senator Cruz. This is all the more true where Senator Cruz cited statements that Mr. McCabe simply had not made. Likewise, Mr. Comey's statement that he stood by his prior testimony was truthful regardless of whether that prior testimony was itself truthful.[8]

The same is true of Mr. Comey's answer to Senator Cruz's second question. Senator Cruz asked: "So, your testimony is you've never authorized anyone to leak. And Mr. McCabe when if he says contrary is not telling the truth, is that correct?" *See* Oversight Hearing Video Clip. A direct answer to this question would have required Mr. Comey to state either, "Correct, Andrew McCabe is not telling the truth," or "Incorrect, Andrew McCabe is telling the truth." Mr. Comey said neither of those things. He instead stated that he was "not going to characterize Andy's testimony, but mine is the same today." *See id.* Again, that response is literally true. Mr. Comey in fact did not characterize Mr. McCabe's testimony. And his statement that his testimony is "the same today" simply meant that he did not intend to revisit his prior testimony. That was a literally true statement regardless of whether the prior testimony was itself truthful.

---

[8] Mr. Comey firmly maintains that his prior testimony *was* truthful. But for purposes of the literal truth defense, the truthfulness of the prior testimony is irrelevant. Mr. Comey can truthfully "stand by" prior testimony—even if the government were correct (and it is not) that the prior testimony was false. Accordingly, the statement that Mr. Comey "stand[s] by" his prior testimony cannot serve as the basis for a false statement charge.

Further, as detailed above, Senator Cruz's questions referenced whether Mr. Comey authorized anonymous sources to report on the "Trump investigation," which did not exist during his tenure as FBI Director, and the "Clinton administration," which had ended nearly 17 years earlier. *See supra* at 14. So Mr. Comey's answers to the questions were literally true, and the government cannot incorrectly rewrite his responses to form a false-statements charge. Ignoring those details, the government presented an indictment to the grand jury that misstates Mr. Comey's testimony. But if a person cannot be charged by "the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows," *Serafini*, 167 F.3d at 820 (citation omitted), he certainly cannot be charged where the statement lifted out of context must be rewritten to claim that it is false.

In sum, although Mr. Comey did not respond directly to Senator Cruz's questions, his responses were literally true. Section 1001(a)(2) does not criminalize non-responsive testimony—it criminalizes only *false* testimony. And Mr. Comey's testimony here cannot plausibly be characterized as false. Of course, Senator Cruz could have followed up by asking for clearer answers, or he could have reframed his initial questioning with greater precision. Or Senator Cruz could have asked Mr. Comey about other specific individuals, including Mr. Richman. But he did not. And that is what the questioner must have done if the government wishes later to prosecute a defendant. *Bronston*, 409 U.S. at 360 (noting "burden is on the questioner to pin the witness down to the *specific* object of the questioner's inquiry" (emphasis added)). The questioner must "press on for the information he desires." *Id.* at 362. "The government cannot now correct this failure by a prosecution for making a false declaration." *Earp*, 812 F.2d at 919-20 (citing *Bronston*, 409 U.S. at 362). Accordingly, regardless of whether

Senator Cruz's questions were fundamentally ambiguous, Count One should be dismissed on the independent basis that Mr. Comey's answers were literally true.

## III.    COUNT TWO SHOULD BE DISMISSED FOR SIMILAR REASONS

Count Two alleges that Mr. Comey violated Section 1505 by making "false and misleading statements" to the Senate Judiciary Committee.  ECF No. 1 at 2.  The indictment does not, however, specify which "false and misleading statements" Mr. Comey allegedly made, why they were allegedly false or misleading, or even which investigation he allegedly endeavored to corrupt.

To the extent Count Two rests on the same false statements as Count One, that count should also be dismissed for the reasons set forth herein.  But as it stands, Count Two's lack of specificity renders it inherently and separately defective for failing to provide adequate notice to Mr. Comey of the charge against which he must defend.  *See Russell*, 369 U.S. at 766.

Such notice is of paramount importance here because of the broad scope of the relevant congressional hearing and the many topics covered in prolonged testimony.  The government cannot try Mr. Comey on cherry-picked statements from a four-hour hearing without specifying which statement it believes is false or misleading.  And surely the government does not believe that it may secure an indictment based on one statement placed before the grand jury and then switch to a different statement at trial.  That tactic would defeat the entire purpose of the grand jury performing its charging function.  *See id.*  It also provides yet another reason for disclosure of the grand jury proceedings, as Mr. Comey's concurrently filed Motion to Disclose Grand Jury Proceedings requests.  And it is a further basis to grant Mr. Comey's concurrently filed Motion for Bill of Particulars as to this charge.  Accordingly, the lack of specificity in Count Two deprives Mr. Comey of his right to notice of the charge against him, and that count is subject to dismissal based on that deficiency alone.

20

## **CONCLUSION**

For the foregoing reasons, the indictment should be dismissed with prejudice.

Dated: October 30, 2025

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/   Jessica N. Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone:  (703) 684-7908
Facsimile:  (703) 649-6360
Email:  jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone:  (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 479-6000

Ephraim A. McDowell (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

Michael R. Dreeben (*pro hac vice*)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone:  (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 30th day of October, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/  Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*