IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-CR-00272-MSN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**JAMES B. COMEY, JR.'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS INDICTMENT BASED ON UNLAWFUL APPOINTMENT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.     THE ATTORNEY GENERAL LACKED AUTHORITY TO APPOINT MS. HALLIGAN AS U.S. ATTORNEY ........................................................ 2

      A.     Section 546's Text Does Not Authorize Ms. Halligan's Appointment ..... 2

      B.     The Government's Sweeping Interpretation of Section 546 Is Inconsistent with the Statutory Structure and History ................................................... 5

            1.     The government's interpretation would allow the Executive Branch to indefinitely avoid seeking Senate confirmation of U.S. Attorneys .................................................................................... 5

            2.     The government's interpretation would empower the Attorney General to displace the district courts from their longstanding role of appointing interim U.S. Attorneys ............................................. 9

      C.     Ms. Halligan's Appointment Also Violates the Appointments Clause ... 12

II.     THE INDICTMENT SHOULD BE DISMISSED WITH PREJUDICE ............. 13

      A.     Dismissal of the Indictment Is Warranted ............................................... 13

            1.     Appointments Clause precedents require dismissal .................... 13

            2.     Criminal law remedial principles also require dismissal ............. 15

            3.     The Attorney General has not properly ratified Ms. Halligan's actions ........................................................................................ 18

      B.     Dismissal of the Indictment Should Be with Prejudice .......................... 20

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Advoc. Health Care Network v. Stapleton,*
  581 U.S. 468 (2017)................................................................................................7

*Bank of Nova Scotia v. United States,*
  487 U.S. 250 (1988)...........................................................................15, 16, 17, 18

*Collins v. Yellen,*
  594 U.S. 220 (2021)..............................................................................................13

*Diaz v. United States,*
  620 U.S. 526 (2024)................................................................................................6

*FEC v. NRA Political Victory Fund,*
  513 U.S. 88 (1994)..........................................................................................18, 19

*Fischer v. United States,*
  603 U.S. 480 (2024)................................................................................................3

*In re Grand Jury Proceedings,*
  671 F. Supp. 5 (D. Mass. 1987).............................................................................8

*Intel Corp. Inv. Pol'y Comm. v. Sulyma,*
  589 U.S. 178 (2020)................................................................................................7

*Kelley v. United States,*
  989 F.3d 67 (1st Cir. 2021)...................................................................................17

*Kennedy v. Braidwood Mgmt., Inc.,*
  145 S. Ct. 2427 (2025)..........................................................................................15

*Loper Bright Enterprises v. Raimondo,*
  603 U.S. 369 (2024)..............................................................................................10

*Lucia v. SEC,*
  585 U.S. 237 (2018)........................................................................................13, 14

*Marx v. General Revenue Corp.,*
  568 U.S. 371 (2013)................................................................................................4

*Massachusetts Trustees of Eastern Gas & Fuel Associates v. United States,*
  377 U.S. 235 (1964)..............................................................................................15

## TABLE OF AUTHORITIES
(continued)

**Page**

*McDowell v. United States*,
　159 U.S. 596 (1895) ............................................................................................. 12, 13

*Morrison v. Olson*,
　487 U.S. 654 (1988) ................................................................................................. 11

*Roberts v. Sea-Land Servs., Inc.*,
　566 U.S. 93 (2012) ..................................................................................................... 5

*Ryder v. United States*,
　515 U.S. 177 (1995) ............................................................................................. 13, 14

*Salomon-Guillen v. Garland*,
　123 F.4th 709 (4th Cir. 2024) .................................................................................... 4

*TRW Inc. v. Andrews*,
　534 U.S. 19 (2001) ..................................................................................................... 3

*United States Forest Serv. v. Cowpasture River Pres. Ass'n*,
　590 U.S. 604 (2020) ................................................................................................. 10

*United States v. Adams*,
　777 F. Supp. 3d 185 (S.D.N.Y. 2025) ...................................................................... 20

*United States v. Baldwin*,
　541 F. Supp. 2d 1184 (D.N.M. 2008) ................................................................. 11, 17

*United States v. Bennett*,
　464 Fed. App'x 183 (4th Cir. 2012) ......................................................................... 15

*United States v. Clawson*,
　104 F.3d 250 (9th Cir. 1996) ................................................................................... 19

*United States v. Garcia-Andrade*,
　13-cr-993, 2013 WL 4027859 (S.D. Cal. Aug. 6, 2013) .................................... 13, 17

*United States v. Gatz*,
　704 F. Supp. 3d 1317 (S.D. Fla. 2023) .................................................................... 19

*United States v. Giraud*,
　24-cr-00768, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) ......................... 7, 8, 11, 18

*United States v. Hasting*,
　461 U.S. 499 (1983) ................................................................................................. 20

# TABLE OF AUTHORITIES
(continued)

**Page**

*United States v. Hilario,*
    218 F.3d 19 (1st Cir. 2000)..................................................................11

*United States v. Mechanik,*
    475 U.S. 66 (1986)............................................................................16

*United States v. Perkins,*
    116 U.S. 483 (1886)..........................................................................12

*United States v. Perkins,*
    67 F.4th 583 (4th Cir. 2023) ................................................................7

*United States v. Providence Journal Co.,*
    485 U.S. 693 (1988)..........................................................................15

*United States v. Ramirez,*
    25-cr-264, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025)...............14, 15

*United States v. Sotomayor Vazquez,*
    69 F. Supp. 2d 286 (D.P.R. 1999).......................................................11

*United States v. Trump,*
    740 F. Supp. 3d 1245 (S.D. Fla. 2024) ..................................13, 17, 18

*Young v. U.S. ex rel. Vuitton et Fils S.A.,*
    481 U.S. 787 (1987)..........................................................................15

**Constitution, Statutes, Regulations, and Rules**

U.S. Const. Art. II, § 2, cl. 2 ...........................................................2, 11, 12

Preserving United States Attorney Independence Act, Pub. L. No. 110-34, § 2,
    121 Stat. 224 (2007)............................................................................7

18 U.S.C.
    § 3282....................................................................................................19
    § 3288....................................................................................................19

28 U.S.C.
    § 541.............................................................................................. *passim*
    § 545(a) ..................................................................................................4
    § 546.............................................................................................. *passim*
    § 546(b)..............................................................................................4, 6
    § 546(c)..................................................................................................3
    § 546(c)(1) .............................................................................................3

## TABLE OF AUTHORITIES
(continued)

Page

§ 546(c)(2) ...................................................................................................2, 3, 4, 9
§ 546(d) ................................................................................................................... *passim*

8 C.F.R. § 1003.1(a)(4) ........................................................................................4

Fed. R. Crim. P.
    1(b)(1) .........................................................................................................16
    1(b)(1)(D) ...................................................................................................15
    6(d)(1) .........................................................................................................15

**Miscellaneous**

Memorandum from Samuel A. Alito, Jr., to William P. Tyson (Nov. 13, 1986) ..........................10

Department of Justice, *White House and Justice Department Begin U.S. Attorney Transition* (Mar. 14, 2001)..........................................................................10

*The Federalist No.* 76 (C. Rossiter ed. 1961) .................................................6

H.R. Rep. No. 110-58 (2007)...............................................................................7

Henry B. Hogue, Cong. Rsch. Serv., RS21412, *Temporarily Filling Presidentially Appointed, Senate-Confirmed Positions* 6 n.23 (Jan. 25, 2008), .................................8

*Restoring Checks and Balances in the Confirmation Process of United States Attorneys: Hearing Before the H. Committee on the Judiciary*, 110th Cong. 139 (Mar. 6, 2007) ...........................................................................8

153 Cong. Rec. S3302 (Mar. 20, 2007) ...........................................................8

## <u>INTRODUCTION</u>

Since the Founding, U.S. Attorney nominees have been subject to the advice and consent of the Senate.  And since 1863, courts have appointed interim U.S. Attorneys when an office is vacant.  Those two structural safeguards help ensure that those who wield the enormous powers of a chief prosecutor will be qualified for the position and faithful to the rule of law—not personal allies of the President who will promise to do his bidding.

The government's position here would upend that longstanding tradition.  Under the government's reading of 28 U.S.C. § 546, the Attorney General (at the President's direction) can appoint a U.S. Attorney who will "serve indefinitely" "without Senate confirmation."  ECF No. 137 at 7 ("Opp.").  And as a result, there will never be a vacancy for district courts to fill.  That unprecedented interpretation of Section 546 conflicts with the statutory text, context, and history.  This Court should reject it and hold that Ms. Halligan was unlawfully appointed as U.S. Attorney.

The proper remedy for Ms. Halligan's unlawful appointment is dismissal with prejudice.  When Ms. Halligan presented Mr. Comey's indictment to the grand jury—just days before the statute of limitations expired—she purported to hold the mantle of U.S. Attorney.  But in fact, she was no different than a private citizen.  Despite the Attorney General's late-breaking attempts, she cannot go back in time and transform Ms. Halligan into an authorized prosecutor.  Where, as here, the only purported government official presenting an indictment to a grand jury lacks a lawful appointment, the indictment is void.  And under the extraordinary circumstances of this case, the void indictment must be dismissed with prejudice.  Any lesser remedy would reward the government for its willful violation of the law and manipulation of the statute of limitations.  This Court should not allow the government to continue this deeply flawed prosecution.

## ARGUMENT

I.  **THE ATTORNEY GENERAL LACKED AUTHORITY TO APPOINT MS. HALLIGAN AS U.S. ATTORNEY**

Section 546 gives the Attorney General a 120-day period in which to appoint interim U.S. Attorneys.  Because that period had long expired when the Attorney General purported to appoint Ms. Halligan, the appointment violates both Section 546 and the Appointments Clause.

### A.    Section 546's Text Does Not Authorize Ms. Halligan's Appointment

Section 546's text establishes a clear framework for appointment of interim U.S. Attorneys. The Attorney General "may appoint" an interim U.S. Attorney; Attorney General appointees may serve for "120 days" following the Attorney General's invocation of her appointment authority; after that period "expires," the "district court for such district may appoint a United States attorney to serve until the vacancy is filled."  28 U.S.C. §§ 546(a), (c)(2), (d).

Section 546's text undermines the government's interpretation.  The government contends (at 6-7) that "Section 546(c)(2)'s time limit applies on a per-appointment basis" and allows the Attorney General to "make multiple interim appointments," each lasting 120 days, even of the same person.  But if Congress had intended that result, it would have written: "A person appointed as United States attorney under this section may serve until . . . the expiration of 120 days after *that* appointment."  It did not do so.  Instead, Congress stated that the 120-day clock begins to run "after appointment by the Attorney General."  28 U.S.C § 546(c)(2).  And because subsection (d) shifts the appointment authority to the district court, the phrase "120 days after appointment by the Attorney General" must mean 120 days after the Attorney General first exercises her appointment power.  *Id.*  Otherwise, the Attorney General could perpetually renew appointments every 120 days to prevent the district court from ever appointing anyone under subsection (d).

2

The government insists (at 9) that "[t]he unadorned word 'appointment'" refers not to the Attorney General's initial exercise of her appointment authority, but instead to "the appointment of the 'person *appointed*.'"  But contrary to the government's modification, subsection (c)'s introductory text uses the indefinite article "a" ("A person appointed") to tie the 120-day limit to appointees generally, not the definite article "the" to tie the 120-day limit to each appointee specifically.  And the government acknowledges (at 9-10) that subsection (c)(1)—which ends an interim U.S. Attorney's service when a permanent U.S. Attorney is confirmed—"is not 'appointee-specific.'"  Yet the government does not explain why Congress would have vacillated between a generic provision in subsection (c)(1) and an appointee-specific provision in subsection (c)(2).

Critically, the government's interpretation of subsection (c) would fail to "give meaning" to two parts of Section 546.  *Fischer v. United States*, 603 U.S. 480, 493 (2024).  First, it would deprive the phrase "expiration of 120 days" of substantive effect.  28 U.S.C. § 546(c)(2).  Under the government's interpretation (at 7), that 120-day limit on Attorney General appointments is illusory because a single appointee can "serve indefinitely."  The government responds (*id.*) that the "120-day time limit" requires the Attorney General to "revisit her interim appointments every 120 days."  But the government does not deny that such "revisit[ing]" could simply consist of a pro forma reaffirmation of the appointment—meaning that the 120-day limit is no limit at all.

Second, under the government's interpretation, subsection (d) "would lie dormant in all but the most unlikely situations."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).  Subsection (d) expressly contemplates that "an appointment" may "expire[] under subsection (c)(2)," at which point "the district court for such district may appoint a United States attorney to serve until the vacancy is filled."  28 U.S.C. § 546(d).  But the government's interpretation would empower the Attorney General to prevent appointments from ever "expir[ing] under subsection (c)(2)," *id.*, by

simply "revisit[ing]" the appointment "every 120 days" to allow the appointee to "serve indefinitely," Opp. 7. And, in turn, that interpretation would empower the Attorney General to block district courts from ever "appoint[ing] a United States attorney." 28 U.S.C. § 546(d).

The government also argues (at 6) that because subsection (a) "identifies only" subsection (b) as an exception to the Attorney General's appointment authority, no other exceptions can exist. But "[t]he force of any negative implication . . . depends on context." *Marx v. General Revenue Corp.*, 568 U.S. 371, 381 (2013). Here, if the government's reading were correct, then the Attorney General could select an interim U.S. Attorney who does not "reside in the district for which he is appointed," 28 U.S.C. § 545(a)—notwithstanding Section 545(a)'s express requirement. Likewise, the Attorney General could expressly appoint an interim U.S. Attorney for a 130-day period, despite subsection (c)(2)'s clear 120-day limit. Yet even if subsection (b) were the only exception to the Attorney General's appointment authority, that would not answer the question of *when* the authority shifts to the district court under subsection (d). The answer is clear: "the expiration of 120 days" after the Attorney General's initial appointment. 28 U.S.C. § 546(c)(2).

The government's reliance (at 7-8) on *Salomon-Guillen v. Garland*, 123 F.4th 709 (4th Cir. 2024), is misplaced. There, the court interpreted a regulation providing for the appointment of "temporary Board members for terms not to exceed six months," 8 C.F.R. § 1003.1(a)(4), to allow "the same person" to be appointed "to multiple consecutive terms," 123 F.4th at 717. But whereas the regulatory language there used "the plural word[s]" "members" and "terms," *id.*, the statutory language here uses the singular "person" and "appointment." Regardless, *Salomon-Guillen* concluded that the regulatory text "simply does not address the issue of additional terms" and thus relied on regulatory "structure" and "history" supporting "the government's reading." *Id.* at 718 (citation omitted). Here, a similar analysis favors Mr. Comey: Even assuming *arguendo* that

Section 546 "simply does not address the issue" of successive 120-day appointments, *id.* (citation omitted), the statutory structure and history show they are barred.  *See infra* at 5-13.

**B.    The Government's Sweeping Interpretation of Section 546 Is Inconsistent with the Statutory Structure and History**

The government's interpretation of Section 546 imposes no limit on the Attorney General's appointment authority: She could reappoint the same person as U.S. Attorney every 120 days for an entire presidential term.  On that view, the Executive Branch would never need to seek Senate confirmation of a permanent U.S. Attorney under Section 541; and the district courts would likely never again appoint an interim U.S. Attorney under Section 546(d).  By nullifying multiple critical statutory provisions, the government's interpretation contradicts the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted).  That is not a "policy argument," Opp. 15, but instead an argument that the statutory framework does not give the Executive Branch *carte blanche* authority to circumvent the safeguards that Congress established.

**1.    The government's interpretation would allow the Executive Branch to indefinitely avoid seeking Senate confirmation of U.S. Attorneys**

The government's interpretation of Section 546 would allow the Attorney General to appoint a single person who would serve as U.S. Attorney for an entire presidential term—without ever being subject to Senate confirmation.  In the government's view, the "only" limit on the Attorney General's appointment authority under Section 546 is that she may not "appoint[] individuals to whom the Senate refused advice and consent." Opp. 1.  Other than that, the Attorney General may appoint anyone she pleases and then must only "revisit" and reaffirm "her interim appointment[] every 120 days." *Id.* at 7.  So long as the Attorney General conducts that pro forma "review," the appointee may "serve indefinitely" "without Senate confirmation." *Id.*

That sweeping interpretation of the Attorney General's authority under Section 546 would eviscerate Section 541.  Section 541 establishes the default rule that "[t]he President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district."  28 U.S.C. § 541(a).  That default rule has existed since the Founding.  ECF No. 60 at 2 ("Mem.").  And it serves the vital function of ensuring that U.S. Attorneys—who wield enormous power over individual liberty—are selected based on "merit" rather than based on their willingness to serve as "the obsequious instrument of [the President's] pleasure."  *The Federalist No.* 76, at 455, 458 (A. Hamilton) (C. Rossiter ed. 1961).

If the government were correct that an interim U.S. Attorney appointed by the Attorney General can "serve indefinitely" "without Senate confirmation," Opp. 7, then the President would have no reason to appoint a permanent U.S. Attorney to be confirmed by the Senate.  Instead, the Attorney General (at the President's direction) could simply appoint (and reappoint) someone under Section 546 who lacked the qualifications to survive the Senate's scrutiny—but who would willingly do the President's bidding.  That "reading" would impermissibly allow "the exception" in Section 546 for interim U.S. Attorneys to "swallow the rule" in Section 541 for permanent U.S. Attorneys.  *Diaz v. United States*, 620 U.S. 526, 537 (2024).  And more fundamentally, it would allow the President to install his personal allies as chief prosecutors across the country, without any check by the Senate—thus gravely threatening the evenhanded administration of justice.

Similarly, the government's interpretation would even render meaningless "Section 546(b)'s bar on appointees to whom the Senate has refused advice and consent."  Opp. 6.  If the Senate were to express concerns about a U.S. Attorney nominee, then the President could simply withdraw the nomination and direct the Attorney General to appoint that same person indefinitely as U.S. Attorney under Section 546—thus thwarting the confirmation process.  Indeed, that is why

the President assumed no risk in nominating Ms. Halligan as U.S. Attorney, *see id.* at 5 n.2, despite her lack of prosecutorial experience—if the Senate balks, he can simply withdraw the nomination before a vote, and she will continue to serve under Section 546 as if nothing had changed.[1]

The government's limitless theory also conflicts with the statutory history. In 2006, after Congress removed Section 546's "120-day limit and the district court's backstopping role," *United States v. Giraud*, 24-cr-00768, 2025 WL 2416737, at *11 (D.N.J. Aug. 21, 2025), the Executive Branch quickly fired multiple Senate-confirmed U.S. Attorneys and replaced them with interim appointees who could serve indefinitely without Senate confirmation, Mem. 16. In 2007, Congress restored the prior regime by passing the Preserving United States Attorney Independence Act, Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007). "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189 (2020). And yet the government would read the 2007 amendment to have none.

The government's account (at 11-12) of the statutory history contradicts the most reliable indications of congressional intent. The House Report states that the 2007 Act sought to close "a possible loophole that could permit United States Attorneys appointed on an interim basis to serve indefinitely without Senate confirmation." H.R. Rep. No. 110-58, at 5 (2007). Such an official committee report provides valuable evidence of congressional intent. *See United States v. Perkins*, 67 F.4th 583, 639 (4th Cir. 2023). By contrast, the government cites (at 11) a single Senator's "floor statement[]" and an "excerpt[] from [a] committee hearing[]"—two of "the least

---

[1] The President's nomination of Ms. Halligan should be immaterial to the Court's analysis. The President could withdraw the nomination tomorrow, and the government's legal argument would be exactly the same. The Court should reject the government's interpretation based on its logical consequences for the range of future cases.

illuminating forms of legislative history." *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 481 (2017) (citation omitted). And those materials are particularly underwhelming where, as here, the majority of Congress apparently did not read the pre-2006 statute the same way as Senator Kyl, *see* 153 Cong. Rec. S3302 (Mar. 20, 2007) (rejecting Senator Kyl's proposed amendment), and where the relevant hearing witness acknowledged the "legally problematic" nature of "the granting of successive appointments under the prior version of § 546 . . . in light of the ability of a district court to appoint a U.S. Attorney who may serve until the vacancy is filled pursuant to § 541." *Restoring Checks and Balances in the Confirmation Process of United States Attorneys: Hearing Before the H. Committee on the Judiciary*, 110th Cong. 139 (Mar. 6, 2007).

The government further asserts (at 10) that "at least eight U.S. Attorney vacancies" were filled through "successive 120-day appointments" between 1993 and 2006. But the government's support for that assertion—a footnote in a 2008 Congressional Research Service Report—does not address the circumstances of those appointments.[2] And the lone judicial decision cited by the government involved a distinct circumstance "where the district court for the [relevant] district . . . ha[d] expressly declined to exercise its power under § 546(d)." *In re Grand Jury Proceedings*, 671 F. Supp. 5, 7 (D. Mass. 1987). Thus, "[i]nferring Congress's acquiescence from a historical record this thin . . . is simply untenable." *Giraud*, 2025 WL 2416737, at *11.

The government insists (at 17) that "[t]he Executive Branch has little incentive to forgo th[e] benefits" of Senate confirmation. But those words ring hollow in light of this Administration's actions. In districts throughout the country, the Executive Branch has sought to evade Senate confirmation of acting and interim U.S. Attorneys through a novel series of

---

[2]    *See* Henry B. Hogue, Cong. Rsch. Serv., RS21412, *Temporarily Filling Presidentially Appointed, Senate-Confirmed Positions* 6 n.23 (Jan. 25, 2008), https://perma.cc/LRW7-4ARJ.

machinations—only to be rebuffed by courts. *See* Mem. 14 (citing cases). And while the Executive Branch has "secured Senate confirmation" of certain other U.S. Attorneys, Opp. 15, it will have no need to do so if the Judiciary endorses its interpretation here. In short, "presidential appointment and Senate confirmation [have] remain[ed] the norm," *id*. at 17, only because courts have rejected the government's attempts to circumvent the Appointments Clause; if that were to change, the Senate could be sidelined entirely.

> **2.    The government's interpretation would empower the Attorney General to displace the district courts from their longstanding role of appointing interim U.S. Attorneys**

Federal district courts have long played a role in appointing interim U.S. Attorneys. For more than 120 years, Congress granted courts *exclusive* authority to appoint interim U.S. Attorneys—without any involvement from the Attorney General at all. Mem. 14-15. In 1986, Congress gave the Attorney General a limited complementary role—allowing her to appoint interim U.S. Attorneys for a 120-day stint. *See* 28 U.S.C. § 546(a)-(c). But Congress expressly retained the district courts' appointment authority after that period "expires." *Id.* § 546(d).

The government believes that the 1986 law empowered the Attorney General to displace district courts from their longstanding role in appointing interim U.S. Attorneys. An Attorney General could simply reappoint an interim U.S. Attorney every 120 days—thus restarting the 120-day clock and ensuring that an appointment never actually "expires under subsection (c)(2)." 28 U.S.C. § 546(d). And if a district court did ever "attempt to make an appointment, the President [could] remove the court's appointee to ensure that the Attorney General's choice prevails." Opp. 15. That is not a "parallel grant of authority" to the Attorney General and district courts, *id.* at 13; it is a plenary grant of authority to the President and Attorney General.

The government's boundless reading flouts basic principles of statutory construction. The Supreme Court has repeatedly held that "when Congress wishes to 'alter the fundamental details

of a [statutory] scheme,'" it "speak[s] with the requisite clarity to place that intent beyond dispute." *United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 621 (2020) (citation omitted). Here, the government contends that Congress altered the fundamental details of Section 546 by effectively eliminating the district courts' entrenched role in appointing interim U.S. Attorneys. But the government identifies nothing in the statute that speaks with "the requisite clarity to place that intent beyond dispute." *Id.* To the contrary, Congress expressly *retained* the district courts' appointment authority in Section 546(d).

Unsurprisingly, the Executive Branch recognized the district courts' important role just days after the 1986 law's enactment. As now-Justice Samuel Alito wrote on behalf of the Office of Legal Counsel (OLC), "[t]he statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General." Memorandum from Samuel A. Alito, Jr., to William P. Tyson (Nov. 13, 1986), https://perma.cc/SD5Q-7CPH. Later presidential administrations adhered to the same view. *See* Department of Justice, *White House and Justice Department Begin U.S. Attorney Transition* (Mar. 14, 2001), https://perma.cc/8U85-YLSG. The government now disavows (at 12) the OLC memorandum because it originates from a supposedly outdated "era" of statutory interpretation. But it is well established that "an Executive Branch interpretation . . . issued roughly contemporaneously with enactment of [a] statute" carries significant weight. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024). Indeed, such an interpretation is far more persuasive than the government's *post hoc* litigating position expressed for the first time in 2025.

The government suggests (at 16) that tension exists between Section 546(d)'s authorization of district court appointments and Section 541's default rule of "Senate confirmation." In fact, those two provisions work seamlessly together. By shifting appointment authority from the

10

Attorney General to the district court after 120 days, Congress "provid[ed] an incentive for the President to exercise his statutory power under 28 U.S.C. § 541" to appoint U.S. Attorneys with the Senate's advice and consent. *United States v. Sotomayor Vazquez*, 69 F. Supp. 2d 286, 295 (D.P.R. 1999), aff'd 249 F.3d 1 (1st Cir. 2001). After all, the President will generally prefer his own Senate-confirmed appointee over the district court's selection.

Finally, the government maintains (at 17) that "constitutional avoidance favors" its cramped reading of Section 546(d). The government admits that under the Appointments Clause, "Congress may permit 'Courts of Law' to appoint some inferior officers." Opp. 17 (quoting U.S. Const. art. II, § 2, cl. 2). As a result, courts have uniformly rejected constitutional challenges to Section 546(d). *See, e.g.*, *United States v. Hilario*, 218 F.3d 19, 26-29 (1st Cir. 2000); *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1220-25 (D.N.M. 2008). And the Supreme Court has approvingly cited Section 546(d) while explaining that there is no "incongruity about a court having the power to appoint prosecutorial officers"; to the contrary, "in light of judicial experience with prosecutors in criminal cases, it could be said that courts are especially well qualified to appoint prosecutors." *Morrison v. Olson*, 487 U.S. 654, 676 & n.13 (1988).

Nonetheless, the government believes that constitutional concerns could arise if a district court were to appoint an interim U.S. Attorney "*even over the President's objection*." Opp. 18. But any such concerns would dissipate if the President "remains free to remove whomever the court selects." *Id.* While the government speculates (*id.*) that "the court could continue making appointments unacceptable to the President, and the President could continue removing appointees," it cites no such examples across the last four decades. And if that did occur, the President could potentially appoint an Acting U.S. Attorney under the time- and appointee-limited procedures of the Federal Vacancies Reform Act. *See Giraud*, 2025 WL 2416737, at *12-13.

Ultimately, the government admits (at 16) that district courts have generally "reappointed the Attorney General's choice"—which confirms that Section 541 and 546 have long struck a balance between respecting the President's law-enforcement prerogatives and preserving a role for court appointments to encourage the President to seek Senate confirmation of permanent U.S. Attorneys. The government's interpretation here would upend that balance.[3]

### C.    Ms. Halligan's Appointment Also Violates the Appointments Clause

Ms. Halligan's appointment also violates the Appointments Clause. Mem. 17-18. Absent presidential appointment and Senate confirmation, a person may hold an inferior office only in accordance with a "Law vesting [her] Appointment . . . in the President alone, in the Courts of Law, or in [a] Head of Department[]." U.S. Const., art. II, § 2, cl. 2. Here, Section 546 vests the appointment of interim U.S. Attorneys in the Attorney General. But Ms. Halligan's appointment does not comply with that law. And the Attorney General has "no constitutional prerogative of appointment to offices independently of the legislation of Congress." *United States v. Perkins*, 116 U.S. 483, 485 (1886).

Contrary to the government's suggestion (at 23), that does not mean that "every statutory violation would become" an Appointments Clause violation. Instead, an Appointments Clause violation occurs when a person purports to hold an inferior office without authorization by a "Law" Congress has enacted to "vest[] [her] Appointment." U.S. Const., art. II, § 2, cl. 2. The government relies (at 23) on *McDowell v. United States*, 159 U.S. 596 (1895), but there the relevant person had been properly appointed as "a judge of the United States district court, having all the

---

[3] The government argues (at 18) that district courts' transferring of motions raising Section 546 challenges to other districts "illustrates the danger" of Mr. Comey's interpretation. But any statute that vests "Courts of Law" with the authority to appoint inferior officers could become subject to litigation—and thus require recusal of certain judges who may exercise appointment authority. That is simply a consequence of the Appointments Clause's express terms.

powers attached to such office." *Id.* at 601. The only defect was a "misapplication of a statute providing for the assignment of already appointed judges to serve in other districts," which raised "a mere matter of statutory construction." *Ryder v. United States*, 515 U.S. 177, 181-82 (1995) (citation omitted). But the defect here is constitutional because it goes to whether Ms. Halligan properly possessed the "powers attached to [the] office" at all. *McDowell*, 159 U.S. at 601.

## II.    THE INDICTMENT SHOULD BE DISMISSED WITH PREJUDICE

The indictment should be dismissed because it was obtained by someone who lacked governmental authority. And the dismissal should be with prejudice to deter—not reward—the government's willful violation of the law.

### A.    Dismissal of the Indictment Is Warranted

Established remedial principles require dismissal of the indictment. The government's contrary arguments would leave Mr. Comey with no remedy at all.

#### 1.    Appointments Clause precedents require dismissal

Dismissal is warranted under the Supreme Court's Appointments Clause precedents. The indictment is "void" because Ms. Halligan was not "properly *appointed*"—and thus "did not lawfully possess" governmental authority—when she alone secured and signed the indictment. *Collins v. Yellen*, 594 U.S. 220, 257-58 (2021). Applying that principle, the Supreme Court has set aside judgments (including a criminal conviction) issued or reviewed by an improperly appointed adjudicator. *See Lucia v. SEC*, 585 U.S. 237, 251 (2018); *Ryder*, 515 U.S. at 188; *see also United States v. Trump*, 740 F. Supp. 3d 1245, 1302-03 (S.D. Fla. 2024).

The government claims (at 22-23) that the "de facto officer doctrine" would validate the indictment "even were Ms. Halligan not a government attorney at the time" she presented it to the grand jury. But the government cites no case applying the de facto officer doctrine to an invalidly appointed prosecutor who alone secured an indictment. *See United States v. Garcia-Andrade*, 13-

cr-993, 2013 WL 4027859, at *6 (S.D. Cal. Aug. 6, 2013) (rejecting doctrine in related context). And *Ryder* rejected application of that doctrine where a criminal defendant made "a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case." 515 U.S. at 182; *accord Lucia*, 585 U.S. at 251. The government has no sound basis for confining *Ryder* and *Lucia* to the context of "adjudicators" alone. Opp. 24. Instead, the Court has articulated the general principle that "Appointments Clause remedies are designed to . . . create '[]incentive[s] to raise Appointments Clause challenges.'" *Lucia*, 585 U.S. at 251 n.5. Yet by denying Mr. Comey any relief, the government's proposed rule would do the opposite.

On October 31, 2025—36 days after Ms. Halligan purported to secure the indictment, 31 days after the statute of limitations had expired, and 11 days after Mr. Comey had filed his motion to dismiss—the Attorney General purported to "appoint Ms. Halligan to the additional position of Special Attorney, as of September 22, 2025, and thereby ratify her employment as an attorney of the Department of Justice from that date going forward." ECF No. 137-1. But that action cannot retroactively transform Ms. Halligan into an authorized government attorney on the day she purported to secure the indictment. In *Lucia*, for instance, the Supreme Court found an Appointments Clause violation and set aside an adjudication because the relevant official "heard and decided [the petitioner's] case without the kind of appointment the [Appointments] Clause requires." 585 U.S. at 251. It did not matter that the official's "prior appointment[]" had been "ratif[ied]" by a Head of Department after the adjudication had been completed and "[w]hile th[e] case was on judicial review." *Id.* at 252 n.6. If such a *post hoc* ratification of a prior invalid appointment sufficed, then the government could moot every Appointments Clause challenge.

The government cites no authority suggesting that an invalid appointment can be excused so long as the government allegedly "*intended*" to vest the relevant official "with the powers" of

an office. Opp. 21. The court in *United States v. Ramirez*, 25-cr-264, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025), simply held that an improperly appointed Acting U.S. Attorney could serve *prospectively* as first assistant U.S. Attorney. *Id.* at *18. And *Massachusetts Trustees of Eastern Gas & Fuel Associates v. United States*, 377 U.S. 235 (1964), did not involve an appointments issue at all. Regardless of whether courts may excuse agency missteps in other contexts, "[t]he Appointments Clause is 'more than a matter of etiquette or protocol—it is among the significant structural safeguards of the constitutional scheme.'" *Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2442 (2025) (citation omitted). By labeling the defect here a "paperwork error," Opp. 26, the government highlights just how much its position strays from that fundamental principle.

## 2.    Criminal law remedial principles also require dismissal

Dismissal also follows from criminal law remedial principles. To start, this case involves a "fundamental" error that allows for "the presumption of prejudice." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-57 (1988). The "appointment of an interested prosecutor" is a "fundamental" error that "undermines confidence in the integrity of the criminal proceeding." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987) (plurality op.). The same logic applies to the *invalid* appointment of a prosecutor who lacks lawful authority to "wield [the] formidable criminal enforcement powers" at all. *Id.* Because Ms. Halligan was no differently situated than a private citizen, her presentation of an indictment to the grand jury compromised "the structural protections" on which the grand jury system depends. *Bank of Nova Scotia*, 487 U.S. at 257. The Federal Rules permit only "attorney[s] authorized by law" to conduct grand jury proceedings. Fed. R. Crim. P. 1(b)(1)(D), 6(d)(1). That is why "[a] federal court is without jurisdiction in a criminal prosecution where the Government lacks an authorized representative." *United States v. Bennett*, 464 Fed. App'x 183, 184-85 (4th Cir. 2012); *see United States v. Providence Journal Co.*, 485 U.S. 693, 708 (1988). Here, Ms. Halligan was not such an authorized

15

representative—and yet she held herself out to the grand jury as the chief prosecutor for the district.

The government insists (at 19-20) that Ms. Halligan was "an 'attorney for the government'" when she secured the indictment. That is wrong. The Federal Rules define "[a]ttorney for the government" to mean "the Attorney General or an authorized assistant"; "a United States attorney or an authorized assistant"; or "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. 1(b)(1). When Ms. Halligan purported to authorize issuance of the indictment, she fit none of those descriptions. As the government concedes (at 21), "Ms. Halligan's original appointment cited only Section 546"—but that appointment was invalid.

The government (at 27) suggests that fundamental errors cannot extend beyond "the wholesale exclusion of minorities from the grand jury." But its cited authorities address only the distinct question of when a court must "set aside a final judgment of conviction" based on a "violation in the antecedent grand jury proceedings." *United States v. Mechanik*, 475 U.S. 66, 70 n.1 (1986). Here, Mr. Comey seeks dismissal of the indictment at the outset of the case.

In any event, the same result obtains under the "customary harmless-error inquiry." *Bank of Nova Scotia*, 487 U.S. at 256. Absent Ms. Halligan's unlawful appointment, there is every reason to believe that Mr. Comey would not have been indicted before the statute of limitations expired. Neither the prior interim U.S. Attorney nor anyone else in the U.S. Attorney's Office was willing to pursue this prosecution. Mem. 23-24. Thus, in the waning days of the limitations period, the President directed the Attorney General to appoint a White House aide as U.S. Attorney; and Ms. Halligan presented an indictment to the grand jury without the participation of any other prosecutor. *Id.* at 24. In turn, the grand jury indicted after having been led to believe that the chief prosecutor in the district had presented the case—when in fact that alleged prosecutor possessed the same authority as someone who walked in off the street. Ms. Halligan's improper appointment

16

as U.S. Attorney thus "substantially influenced the grand jury's" issuance of an indictment in this case. *Bank of Nova Scotia*, 487 U.S. at 256.

The government's contrary arguments are unpersuasive. The government characterizes the invalid appointment as an error relating to the "signature[] on the indictment." Opp. 21 (citation omitted). But Ms. Halligan did not merely sign the indictment—she alone presented it to the grand jury and authorized its issuance. Where a prosecutor is not "a proper representative" of the government and "no other attorneys [are] working . . . on th[e] case," dismissal is the only remedy commensurate with the violation. *Garcia-Andrade*, 2013 WL 4027859, at \*5-6 & n.2; *see Trump*, 740 F. Supp. 3d at 1302-03. In contrast, the government's cited cases (at 21-22) involved indictments signed by a properly serving "Assistant United States Attorney," *Baldwin*, 541 F. Supp. 2d at 1214, or "reviewed and approved" by a properly serving "United States Attorney," *Kelley v. United States*, 989 F.3d 67, 71 (1st Cir. 2021). And those decisions "distinguish[ed]" cases where no attorneys other than the unauthorized official had "examined and approved the indictment." *Id.*

The government also maintains (at 25) that "any error in [Mr. Comey's] indictments was harmless given the grand jury's independent decision to indict." But the government goes on to cite decisions holding that "dismissal of [an] indictment" *can* be appropriate "'if it is established that [a] violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256. As already explained, that standard is satisfied here.

The government falls back on the notion that the Attorney General "could have" appointed Ms. Halligan to a different position that would have allowed her to "conduct grand-jury proceedings and sign indictments." Opp. 26. But in fact, the Attorney General did not purport to

17

appoint Ms. Halligan to such a position until October 31, 2025—after the statute of limitations had expired. That alone ends the inquiry. Nor would a different appointment have been as simple as "cit[ing] a different provision of Title 28." *Id.* Other courts have rejected the Attorney General's attempts to appoint special attorneys in various contexts, *see Giraud*, 2025 WL 2416737, at *23-28; *Trump*, 740 F. Supp. 3d at 1266-1276, and there is no basis to assume that such a counterfactual appointment would have been valid here. Even if a valid case-specific appointment was possible, the grand jury may have viewed the indictment with a more skeptical eye if it were presented by an attorney tasked specifically with "conduct[ing] and supervis[ing] the prosecution[] in *United States v. Comey*," Dkt. 137-1, as opposed to by an attorney supposedly cloaked with the authority of a U.S. Attorney. Particularly where the grand jury issued a no true bill on one count and only narrowly indicted on two others, Mem. 5, there is at least "grave doubt" that Ms. Halligan's unlawful appointment played a "substantial[]" role in the issuance of an indictment before the statute of limitations expired, *Bank of Nova Scotia*, 487 U.S. at 256.

### 3. The Attorney General has not properly ratified Ms. Halligan's actions

The Attorney General's purported ratification of Ms. Halligan's actions is invalid. "[I]t is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made*." *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994). In *NRA Political Victory Fund*, the Supreme Court held that the Solicitor General's "attempt[] to ratify the FEC's filing" of a petition for certiorari "came too late in the day to be effective" because his "time period for filing" had expired. *Id.* The same logic applies here. The Attorney General's attempt to ratify the indictment on October 31, 2025, came "too late in the day to be effective" because the statute of limitations had expired. *Id.*

The government claims (at 27) that when the Attorney General ratified the indictment on October 31, she could have "personally obtain[ed] a new indictment using th[e] grace period" in

18 U.S.C. § 3288. But Section 3288 applies only "when[] an indictment . . . *is dismissed* for any reason after the period prescribed by the applicable statute of limitations has expired." *Id.* (emphasis added). On October 31, the indictment in this case had not been "dismissed." *Id.* So Section 3288 did not allow the Attorney General to "do the act ratified . . . *at the time the ratification was made.*" *NRA Political Victory Fund*, 513 U.S. at 98. To the extent the government wishes to rely on Section 3288, it could seek to do so only *after* the indictment in this case is dismissed. This Court therefore need not opine on the hypothetical application of Section 3288.

In any event, Section 3288 would not allow the government to reindict Mr. Comey if the indictment were dismissed. The grace period is triggered only if an "indictment is found," 18 U.S.C. § 3282; but here, the purported indictment was void *ab initio*. And the government cannot "grant itself a six-month extension of the statute of limitations . . . simply by filing a patently defective and meaningless charging document." *United States v. Gatz*, 704 F. Supp. 3d 1317, 1330 (S.D. Fla. 2023). Moreover, Section 3288 states that "[t]his section does not permit the filing of a new indictment . . . where the reason for the dismissal was the failure to file the indictment . . . within the period prescribed by the applicable statute of limitations, *or some other reason that would bar a new prosecution*." *Id.* (emphasis added). That proviso applies here. Using an illegal appointment to procure an indictment days before the statute of limitations expires—thus depriving a person of repose—is precisely the type of "reason" that must "bar a new prosecution" under Section 3288. Indeed, Section 3288 expressly precludes reindictment when the first indictment was filed after expiration of the statute of limitations. To give that provision meaning, the statute must also bar new prosecutions when a void purported indictment is secured simply to prevent the statute of limitations from expiring. Any other reading would "obliterate the statute of limitations." *United States v. Clawson*, 104 F.3d 250, 252 (9th Cir. 1996).

### B.  Dismissal of the Indictment Should Be with Prejudice

The Court should dismiss the indictment with prejudice.  That is the only remedy that will promote the interests protected by the Appointments Clause and deter the government from deploying unlawful appointments to effectuate retaliation against perceived political opponents. In contrast, a dismissal without prejudice will reward the government for its willful manipulation of Section 546 and the statute of limitations by allowing it to seek reindictment within six months of the dismissal.  And at minimum, a dismissal without prejudice would empower the government to use the "threat of re-indictment" to chill Mr. Comey's right to speak out against the President. *United States v. Adams*, 777 F. Supp. 3d 185, 218 (S.D.N.Y. 2025) (dismissing with prejudice to avoid similar concern).  This case calls out for an exercise of the Court's "supervisory power" to "deter" the government's "illegal conduct."  *United States v. Hasting*, 461 U.S. 499, 505 (1983).

Contrary to the government's suggestion (at 29), the unlawful appointment here stems directly from the President's vindictive targeting of Mr. Comey.  And the Attorney General's appointment itself willfully flouted a 39-year-old OLC memorandum.  Nor can the government plausibly claim that Mr. Comey "suffered no prejudice," *id.*: Absent the unlawful appointment, Ms. Halligan would have been barred from entering the grand jury room—and Mr. Comey would now be experiencing the peace of an expired statute of limitations.  The Court should reject the government's "counterfactual" speculation that it could have appointed Ms. Halligan a different way, *id.*, and require the government to follow the law *before* seeking to deprive individuals of liberty.  Where, as here, the government has unlawfully appointed the President's political ally so that she could indict the President's perceived political enemy before the statute of limitations expired, the government should not have an opportunity to try again.

### <u>CONCLUSION</u>

The indictment should be dismissed with prejudice.

Dated: November 10, 2025

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

/s/   *Jessica N. Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone:  (703) 684-7908
Facsimile:  (703) 649-6360
Email:  jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone:  (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 479-6000

Ephraim A. McDowell (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

Michael R. Dreeben (*pro hac vice*)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone:  (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of November, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/  *Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*