IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> v. <br><br> JAMES B. COMEY, JR., <br><br> *Defendant.* | CRIMINAL NO. 1:25-CR-272-MSN |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Defendant James B. Comey, Jr.'s motion to dismiss the indictment should be denied. He argues that Count One should be dismissed because Senator Ted Cruz's questions "were fundamentally ambiguous." *See* Dkt. 105 ("Def. Mem.") at 1. But Senator Cruz's questions were not fundamentally ambiguous. To the contrary, as the defendant recognizes, Senator Cruz's questions are susceptible to two interpretations—"narrow and broad." *Id.* at 14 n.5. Picking between those interpretations is the jury's job. *See United States v. Sarwari*, 669 F.3d 401, 407 (4th Cir. 2012). It's "what juries are for." *United States v. Elfenbein*, 144 F.4th 551, 567 (4th Cir. 2025).

The defendant also argues that Count One should be dismissed because his answers to Senator Cruz's questions were literally true. But the literal-truth defense doesn't "apply to an answer that would be true on one construction" of a question "but false on the other." *Sarwari*, 669 F.3d at 407 (cleaned up). And the defendant's attempts to explain away his answers as true under the broad interpretation of Senator Cruz's questions are unavailing.

The defendant's arguments to dismiss Count Two fail for the same and additional reasons. The literal-truth defense doesn't apply to the 18 U.S.C. § 1505 violation charged in Count Two.

*See United States v. Safavian*, 528 F.3d 957, 968 (D.C. Cir. 2008).  In any event, as further outlined in the government's contemporaneously filed response to the defendant's motion for a bill of particulars, the defendant is on sufficient notice that Count Two does not rest solely on the false statements at issue in Count One.

The motion to dismiss should be denied, and the case should proceed to trial.

### I.  BACKGROUND

In May 2017, the defendant testified in an FBI oversight hearing before the Senate Judiciary Committee.  He engaged in the following colloquy with Senator Grassley:

> GRASSLEY:  Director Comey, have you ever been an anonymous source in news reports about matters relating to the Trump investigation or the Clinton investigation?
>
> COMEY:  Never.
>
> GRASSLEY:  Question two on relatively related, have you ever authorized someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton investigation?
>
> COMEY:  No.

*See* Exhibit B to Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, Dkt. No. 59-2 at 4–5.  In September 2020, the defendant again testified before the Senate Judiciary Committee.  During the defendant's testimony, he engaged in the following colloquy with Senator Cruz:

> CRUZ:  All right.  Let's shift to another topic.  On May 3, 2017 in this committee, Chairman Grassley asked you point blank 'have you ever been an anonymous source in news reports about matters relating to the Trump investigation or Clinton investigation?'  You responded under oath 'never.'  He then asked you 'have you ever authorized someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton administration.'  You responded again under oath, 'no.'
>
> Now, as you know, Mr. McCabe, who works for you, has publicly and repeatedly stated that he leaked information to The Wall Street Journal and that you were

> directly aware of it and that you directly authorized it. Now, what Mr. McCabe is saying and what you testified to this committee cannot both be true; one or the other is false. Who's telling the truth?
>
> COMEY: I can only speak to my testimony. I stand by what, the testimony you summarized that I gave in May of 2017.
>
> CRUZ: So, your testimony [is] [] you've never authorized anyone to leak. And Mr. McCabe if he says contrary is not telling the truth, is that correct?
>
> COMEY: Again, I'm not going to characterize [Andy's] testimony, but mine is the same today.

*See* Exhibit C to Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, Dkt. No. 59-3 at 11 ("Oversight Hearing Transcript").

In September 2025, a grand jury charged the defendant with violations of 18 U.S.C. § 1001(a)(2) and 18 U.S.C. § 1505 based on his September 2020 congressional testimony. Indictment, Dkt. No. 1. He has now moved to dismiss the indictment. Def. Mem., Dkt. No. 105.

## II.     ARGUMENT

### A.     Senator Cruz's questions were not fundamentally ambiguous.

A question is fundamentally ambiguous when it lacks "a meaning about which men of ordinary intellect could agree," *Sarwari*, 669 F.3d at 407—in other words, when its meaning could not be discerned by a jury. *Cf. Elfenbein*, 144 F.4th at 567 (requiring the question to be "intractable"). When a question is that ambiguous, there is no response to the question that can support a false-statement conviction. That's because, faced with that degree of ambiguity, it is "impossible" for the jury "to know … the meaning of the question and whether a witness intended to make a false response." *United States v. Strohm*, 671 F.3d 1173, 1179 (10th Cir. 2011). That degree of ambiguity is rare, so it's the "exception, not the rule." *See Elfenbein*, 144 F.4th at 566 (citation omitted).

On the other hand, a question is merely arguably ambiguous when it is "susceptible to multiple interpretations." *See Sarwari*, 669 F.3d at 407. A response to an arguably ambiguous question can support a false-statement conviction. In those circumstances, "the meaning of [the] … question and the truthfulness of [the] defendant's answer are best left to the jury." *United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998). Indeed, that's "what juries are for." *Elfenbein*, 144 F.4th at 567; *see id.* at 567 n.14 (stating that "'the construction of an arguably ambiguous question …' is a matter for the jury" (quoting *United States v. Harra*, 985 F.3d 196, 216 (3d Cir. 2021))).

Further, in the Fourth Circuit, a defendant's answer doesn't have to be false under every interpretation of an arguably ambiguous question to support a false-statement conviction. *See Sarwari*, 669 F.3d at 407; *see also Elfenbein*, 144 F.4th at 567 n.14. So the fact that a false-statement charge rests on a "particular interpretation" of an arguably ambiguous question is no reason to dismiss the charge. *See* Def. Mem., Dkt. 105 at 7. Instead, when a defendant's answer "is true under one understanding of the question but false under another," the jury "determines whether the defendant knew his statement was false." *Sarwari*, 669 F.3d at 407.

Drawing the line between a fundamentally ambiguous and an arguably ambiguous question "can be somewhat elusive." *See Harra*, 985 F.3d at 209 n.8. To draw the line, many courts—including the Fourth Circuit—ask whether the question lacks a "meaning about which men of ordinary intellect could agree."[1] *See, e.g.*, *Sarwari*, 669 F.3d at 407; *Strohm*, 671 F.3d at 1179;

---

[1] The defendant offers a slightly—yet meaningfully—different approach. He says that a question is fundamentally ambiguous if "there are multiple ways to interpret it and 'men of ordinary intellect would not agree' on which interpretation is correct." Dkt. 105 at 7 (cleaned up) (quoting *United States v. Chujoy*, 207 F. Supp. 3d 626, 651 (W.D. Va. 2016)); *see* Dkt. 105 at 8, 16. That approach inappropriately intrudes on the role of the jury. The question for the Court is whether people *could* agree on an interpretation of Senator Cruz's questions. If they could agree, then the question as to whether people *would* agree gets decided in the jury room. *Cf. Elfenbein*, 144 F.4th at 567.

4

*United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003). Yet even that is an "admittedly slippery category." *Elfenbein*, 144 F.4th at 566. At bottom, the distinction "seems to be" that while an arguably ambiguous question is open to more than one interpretation, "it is also capable … of taking on" one of those interpretations. *See Harra*, 985 F.3d at 209 n.8. Meanwhile, for a fundamentally ambiguous question, "there is no rational basis" to settle on its meaning. *See id.*

Senator Cruz's questions to the defendant were nowhere near fundamentally ambiguous. In fact, the defendant hardly argues otherwise. As the defendant concedes, Senator Cruz asked the defendant to "affirm or deny prior testimony." *See* Mot. for Disclosure of Grand Jury Proceedings, Dkt. No. 106 at 8. In response, the defendant reasserted his prior testimony that he had never authorized someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton investigation. Now, in his motion, the defendant says that Senator Cruz's questions are susceptible to two interpretations—"narrow and broad." *See* Def. Mem., Dkt. 105 at 14 n.5. Under the narrow interpretation, Senator Cruz asked the defendant only whether he authorized McCabe to be an anonymous source. Under the broad interpretation, Senator Cruz asked the defendant whether he authorized anyone at the FBI to be an anonymous source.

The broad interpretation is the better one. It comports with Senator Cruz's facially broad questions. And it recognizes that Senator Cruz's "preliminary statements" about McCabe were merely confronting the defendant with information that potentially undermined his prior testimony. *See* Def. Mem., Dkt. 105 at 17. Plus, it's clear that the defendant's answers addressed the broad question. He expressly set aside any aspect of Senator Cruz's question dealing with McCabe, stating that he could "only speak to [his] testimony" and he was "not going to characterize [Andy's] testimony." *See* Oversight Hearing Transcript at 11. He then reasserted his broad 2017 testimony, stating that he stood by it and that his testimony was "the same today" as it was then. *See id.*

The alleged ambiguities raised by the defendant do little to obscure this meaning of Senator Cruz's questions. To start, the defendant says that the questions were compound. And he argues that "[w]hen a government official" asks a compound question but "'elicits a single response from the witness, it may be impossible … to know which question the witness believed he was answering.'" Def. Mem., Dkt. 105 at 8 (quoting Linda F. Harrison, *The Law of Lying: The Difficulty of Pursuing Perjury Under the Federal Perjury Statutes*, 35 U. Tol. L. Rev. 397 (2003)).

But "Who's telling the truth?" is not a compound question. *See* Oversight Hearing Transcript at 11. It is an either-or question. To give the question even an appearance of being compound, the defendant must artificially split the question up. *See* Def. Mem., Dkt. 105 at 9. Under that parsing, however, any question could be recast as a compound question. Further, to the extent the question presented an inquiry into the truth of McCabe's statements—or Senator Cruz's description of McCabe's statements—it wasn't a distinct inquiry from the truthfulness of the defendant's prior testimony. Instead, at most, it was an inquiry into a *subset* of the defendant's prior testimony. But raising an inquiry into a subset of a broader inquiry doesn't take away the broader inquiry.

For example, in *United States v. Castner*, the "examiner asked [the defendant] whether he had received the information from 'somebody else … like Ricky or David themselves.'" 203 F.3d 823, 2000 WL 103070, at *1 (4th Cir. 2000) (unpublished table decision). Yet singling out "Ricky or David" for special consideration did not mean "the examiner's question was … limited to Ricky or David." *Id.* The same is true here. By highlighting one potential way in which the defendant's prior testimony could have been untruthful—*i.e.*, by authorizing McCabe to be an anonymous source—it didn't limit the broader scope of Senator Cruz's question as to whether the defendant's prior testimony was truthful. Plus, even if Senator Cruz's questions were truly compound

6

questions that raised distinct inquiries, it isn't "impossible … to know which question the witness believed he was answering." *See* Harrison, *supra* at 405.  It is perfectly clear which question the defendant was answering.  He expressly declined to address McCabe's testimony and adopted the unequivocal denial that he had previously provided.

The "other ambiguities" do no more to obscure the meaning of Senator Cruz's questions. *See* Def. Mem., Dkt. 105 at 14.  The defendant flags Senator Cruz's mistaken use of "Clinton administration" instead of "Clinton investigation."  *See* Oversight Hearing Transcript at 11.  Yet Senator Cruz had correctly referred to the "Clinton investigation" two sentences prior and he was recounting the defendant's own testimony, so the mistake would have been obvious to the defendant.  *See id.*  Indeed, notwithstanding the mistake, the defendant reaffirmed his prior testimony without qualification.  So the defendant appears to have fully comprehended the meaning of Senator Cruz's question despite the mistake.  Plus, no reasonable person would think that Senator Cruz was asking the defendant about an administration that "had ceased to exist some 17 years before."  *See* Def. Mem., Dkt. 105 at 15.  Likewise, the defendant objects to "Senator Cruz's use of the words 'never' and 'ever.'"  *Id.*  But again, Senator Cruz was recounting the defendant's own testimony, so that wouldn't have "injected additional ambiguity."  *See id.*  Finally, the defendant argues there "was no reason to assume that [Senator Cruz] was referring to anyone but full-time employees" when he asked about "someone else at the FBI."  *Id.*  But the defendant's distinction between "full-time employees" and other employees is unmoored from the question's broad phrasing that covered anyone "at the FBI."

In any event, choosing between competing interpretations of Senator Cruz's questions is the jury's role.  *See Sarwari*, 669 F.3d at 407.  The Court's role is deciding whether "men of ordinary intellect could agree" on the meaning of Senator Cruz's questions.  *See id.*  They certainly

could. And the defendant hardly disagrees. Instead, he argues that Count One must be dismissed because it rests on a "[p]articular [i]nterpretation" of Senator Cruz's questions. *See* Def. Mem., Dkt. 105 at 16. That is, he argues there's no allegation that he gave a false answer under the narrow interpretation of Senator Cruz's questions. Therefore, because the government "does not allege that the defendant's answer was false under every interpretation of the question," *see id.* at 7, he argues that Count One "should be 'stricken.'" *See id.* at 16 (quoting *United States v. Serafini*, 167 F.3d 812, 824 (3d Cir. 1999)).

Yet that is not the law in this circuit. The Fourth Circuit has rejected the view that a "false statement conviction 'could not stand' if a defendant's statement accords 'with a reasonable construction' of the information sought." *See Sarwari*, 669 F.3d at 407 n.3 (quoting *United States v. Race*, 632 F.2d 1114, 1120 (4th Cir. 1980)); *see also Elfenbein*, 144 F.4th at 567 n.14 (disavowing the view that "a statement is false, and so supports fraud liability, only if it contradicts *all* reasonable interpretations"). Instead, when a defendant's answer "is true under one understanding of the question but false under another," the jury "determines whether the defendant knew his statement was false." *Sarwari*, 669 F.3d at 407. Therefore, choosing between the narrow and broad interpretations is a decision for the jury, not the Court.

### B. The defendant's answers were not literally true.

The defendant argues that Count One should be dismissed because he gave "literally true" answers to Senator Cruz's questions. Def. Mem., Dkt. 105 at 16. But the literal-truth defense is "a narrow one." *Sarwari*, 669 F.3d at 406. "It applies only where a defendant's allegedly false statements were *undisputedly* literally true." *Id.* (cleaned up). That means the defense doesn't apply "in cases in which 'the focus is on the ambiguity of the question asked.'" *See id.* at 407 (quoting *United States v. Boskic*, 545 F.3d 69, 92 (1st Cir. 2008)). And it doesn't apply to "an

8

answer that would be true on one construction of an arguably ambiguous question but false on the other."[2]  *See id.* (cleaned up); *see also Smith*, 54 F.4th at 767.

As discussed, Senator Cruz's questions should be understood as asking the defendant to affirm or deny his 2017 testimony, without limiting the scope to McCabe.  And the defendant doesn't deny that Senator Cruz's questions could be given this interpretation.  *See* Def. Mem., Dkt. 105 at 14 n.5.  Therefore, since the literal-truth defense doesn't apply to "an answer that would be true on one construction of an arguably ambiguous question but false on the other," *see Sarwari*, 669 F.3d at 407 (cleaned up), the defense is available to the defendant only if he explains how his answers are literally true under the broad interpretation.  His attempted explanations are unavailing.

The literal-truth defense holds that a defendant cannot be guilty of violating § 1001 when his allegedly false statement was "literally true but not responsive to the question asked and arguably misleading by negative implication."  *Bronston v. United States*, 409 U.S. 352, 353 (1973);[3] *see Smith*, 54 F.4th at 767 (applying the literal-truth defense to § 1001 offenses).  Here, the defendant's answers were false "and require[ ] no resort to implication in determining [their]

---

[2] The defendant phrases the rule this way:  "Where a witness's answer is 'not responsive to the question asked,' it cannot serve as the basis for a 'false-statements' charge if it was 'literally true' under *any* interpretation of the question."  Def. Mem., Dkt. 105 at 16–17 (emphasis added) (quoting *United States v. Smith*, 54 F.4th 755, 767 (4th Cir. 2022)).  That is correct only if *any* is understood to mean *every*.

[3] Bronston (who was the sole owner of a company) had a personal bank account in Switzerland between October 1959 and June 1964.  *See Bronston*, 409 U.S. at 353–54.  After the company petitioned for bankruptcy, he was asked in a 1966 bankruptcy hearing whether he had "ever" had "any bank accounts in Swiss banks," and he responded that "[t]he company had an account there for about six months."  *See id.* at 354.  So Bronston's answer *was* literally true—the company had in fact had such an account—but unresponsive and misleading by negative implication, since it was "addressed to the company's assets and not to his own—thereby implying that he had no personal Swiss bank account at the relevant time."  *See id.* at 355.

9

truth or falsity." *See United States v. Seife*, 948 F.2d 1283, 1991 WL 237924, at *2 (4th Cir. 1991) (unpublished table decision).

Start with the defendant's answer that he stood by his 2017 testimony. He argues that this statement "was truthful regardless of whether that prior testimony was itself truthful." Def. Mem., Dkt. 105 at 18. To be sure, when a defendant accurately confirms that he previously gave certain testimony, that confirmation cannot be false even if the underlying testimony was false. *See United States v. Lighte*, 782 F.2d 367, 374 (2d Cir. 1986). But when, as here, the witness "expresses his agreement with the content of the prior testimony, then the witness is in trouble." Richard H. Underwood, *Perjury! The Charges and the Defenses*, 36 Duq. L. Rev. 715, 723–24 n.35 (1998); *see, e.g.*, *United States v. Weissman*, No. S2 94 CR. 760 (CSH), 1996 WL 742844, at *19 (S.D.N.Y. Dec. 20, 1996).

It is hard to imagine testimony that more clearly expresses agreement with prior testimony than the defendant's testimony in this case. To start, Senator Cruz had definitively recounted the defendant's prior testimony before asking a question. So it would be strange to interpret his question as merely asking whether the defendant had given that testimony. Instead, Senator Cruz's question went directly to the truth of the prior testimony. Because the question was "clearly about the underlying facts to the question," it "permits a reasonable juror to draw the conclusion beyond a reasonable doubt that [the defendant] understood that he was speaking to the underlying facts … rather than simply acknowledging that he had in fact previously uttered words to the same effect." *See United States v. DeSalvo*, 797 F. Supp. 159, 172 (E.D.N.Y. 1992).

In response to Senator Cruz's question about the truthfulness of his prior testimony, the defendant testified that he stood by it. That can be interpreted only as an expression of agreement with his prior testimony. *See stand by something*, Cambridge Dictionary (online ed.) ("to continue

10

to believe that something you have said before is still true"), https://dictionary.cambridge.org/dictionary/english/stand-by (last visited Nov. 12, 2025).

The defendant's answer to Senator Cruz's second question went even further. Senator Cruz asked: "So, your testimony [is] [ ] you've never authorized anyone to leak. And Mr. McCabe if he says contrary is not telling the truth, is that correct?" Oversight Hearing Transcript at 11. The defendant answered: "Again, I'm not going to characterize [Andy's] testimony, but mine is the same today." *Id.* The defendant argues that "his statement that his testimony is 'the same today' simply meant that he did not intend to revisit his prior testimony." Dkt. 105 at 18. This defies any reasonable interpretation of the defendant's answer. By stating that his testimony "is the same today," he was freshly reasserting his 2017 testimony. Indeed, there must have actually been 2020 testimony for it to be "the same" as the 2017 testimony. And that testimony was false in 2020 just like it was in 2017.

### C. The defendant fails to raise a legitimate reason to dismiss Count Two.

The defendant argues that Count Two should be dismissed for "lack of specificity." *See* Def. Mem., Dkt. No. 105 at 20. However, as outlined in the government's contemporaneously filed response to the defendant's motion for a bill of particulars, the government has provided sufficient information to put the defendant on notice.

The defendant separately argues that "[t]o the extent Count Two rests on the same false statements as Count One, that count should also be dismissed" based on his arguments that Senator Cruz's questions were fundamentally ambiguous and that his answers were literally true. Def. Mem., Dkt. No. 105 at 20. But the literal-truth defense doesn't apply to a § 1505 offense. *See Safavian*, 528 F.3d at 968; *see also United States v. Browning*, 630 F.2d 694, 699 (10th Cir. 1980). That's because "[e]ven a literally true statement may be misleading." *Safavian*, 528 F.3d at 968;

11

*see Browning*, 630 F.2d at 699 ("Literal truth is not the test here."). Likewise, the defendant hasn't established that a fundamentally ambiguous defense applies to a § 1505 offense.

In any event, as outlined in the government's contemporaneously filed response to the defendant's motion for a bill of particulars, Count Two does not rest solely on the false statements at issue in Count One. Count Two also rests on the defendant's statements to Senators Graham and Hawley regarding his alleged lack of memory on the so-called Clinton plan to "tie Trump" to Russia. *See* Exhibit 13 to Resp. to Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, Dkt. 138-13.

### III.   CONCLUSION

The Court should deny the defendant's motion to dismiss the indictment.

Respectfully submitted this 13th day of November, 2025.

    LINDSEY HALLIGAN
    UNITED STATES ATTORNEY

    */s/ N. Tyler Lemons*
    N. Tyler Lemons
    Assistant United States Attorney
    North Carolina Bar No. 46199
    Gabriel J. Diaz
    Assistant United States Attorney
    North Carolina Bar No. 49159
    2100 Jamieson Avenue
    Alexandria, VA 22314
    Tel: (703) 299-3700
    tyler.lemons@usdoj.gov
    gabriel.diaz@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 13th day of November, 2025, I filed the foregoing motion with the Clerk of Court via the CM/ECF system, thereby causing it to be served upon all counsel of record.

      Respectfully submitted,

/s/ N. Tyler Lemons
N. Tyler Lemons
Assistant United States Attorney
North Carolina Bar No. 46199
Gabriel J. Diaz
Assistant United States Attorney
North Carolina Bar No. 49159
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700
tyler.lemons@usdoj.gov
gabriel.diaz@usdoj.gov