**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 1:25-CR-272-MSN** |
| **JAMES B. COMEY, JR.** | |
| ***Defendant.*** | |

## <u>GOVERNMENT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER TO RELEASE GRAND JURY MATERIALS TO THE DEFENDANT</u>

To obtain disclosure of grand jury material the defendant must demonstrate that particularized and factually based grounds exist to show that irregularities *in the grand jury proceedings* may create a basis for dismissal of the indictment. *See* Fed. R. Crim. P. 6(e)(3)(E)(ii). While United States Magistrate Judge William E. Fitzpatrick cited that standard, *see* Dkt. No. 191 at 4, the magistrate fundamentally erred by principally relying on information *separate and apart* from the grand jury proceedings in ordering disclosure. Accordingly, the government hereby objects to the factual findings and legal conclusions contained in the magistrate judge's November 18, 2025, memorandum and order (Dkt. No. 191, 192) as providing a basis to support the release of all grand jury materials to the defendant. The magistrate's order should be modified and set aside, and the government should not be required to provide the defendant with the grand jury materials that are sought.

The magistrate determined, pursuant to the Court's supervisory powers over the grand jury, that the use in a grand jury presentation—or even in preparing for a presentation—of evidence allegedly obtained in violation of a third party's Fourth Amendment rights or a defendant's

claimed attorney-client privilege are bases for ordering the disclosure of grand jury material. This determination was made despite the magistrate acknowledging that the presentation of such evidence later deemed subject to suppression or obtained in violation of the attorney-client privilege is insufficient to dismiss an indictment. That was contrary to law.

The magistrate judge also found that two alleged misstatements of the law by the U.S. Attorney to the grand jury provided another basis for ordering disclosure of the grand jury material. That, too, was contrary to law, since those alleged misstatements—even if they were incorrect statements of the law—are no basis to dismiss the indictment.

## I.    BACKGROUND

On October 13, 2025, shortly after the defendant's initial appearance, the government sought the Court's assistance in implementing a filter protocol to prevent disclosure to the investigative team of potentially privileged or privileged material. Dkt. No. 38.[1]  At that time, the government had already engaged with the defendant on the filter protocol, but the defendant objected to a filter protocol, preferring to challenge the underlying search warrants. *Id.* at 1, 4. The defendant opposed the government's motion. Dkt. No. 71.  He asked the Court to "direct the government to disclose" five categories of information related to the protocol, none relating to grand jury material. *Id.* at 12.  He noted that his "concerns with the government's respect for— and ability to safeguard—the defendant's attorney-client privileged materials are not merely hypothetical" because, he claimed, lead case agents "may have been exposed to attorney-client privileged materials." *Id.* at 6.

On October 29, 2025, the Court noted that "briefing on the government's proposed filter

---

[1] On October 19, 2025, the government moved to expedite ruling on its motion for implementation of a filter protocol. Dkt. No. 54.  This motion also alerted the Court that the "evidence for filter review could also inform a potential conflict and disqualification issue for the current lead defense counsel, Patrick Fitzgerald." *Id.*  The next day, the defendant filed his opposition to an expedited ruling, requesting the full 14 days to file a response. Dkt. No. 55.

protocol raises several legal questions that must be resolved before any protocol is authorized." Dkt. No. 102 at 2. Citing the government's motion and the defendant's response, Dkt. Nos. 38 & 71, the Court appointed the magistrate judge "to preside over all proceedings related to the potential review of privileged materials in this case." Dkt. No. 102 at 1–2.

On October 30, 2025, the defendant filed a separate motion and memorandum seeking disclosure of grand jury material. Dkt. No. 106. In it, he "request[ed] that the Court direct the government to disclose the transcripts and audio recordings of all proceedings before the grand jury in this case" under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). *Id.* at 1. He argued, in part, that disclosure is required because "the agent who served as a witness in the proceedings may have been exposed to Mr. Comey's privileged communications with his attorneys and thus may have conveyed that information to the grand jury." *Id.*

On November 13, 2025, the government responded in opposition to the defendant's Motion to Disclose Grand Jury Proceedings. Dkt. No. 184. The defendant's reply is due on November 20. *Id.* The hearing has been set for December 9. *Id.*

During a November 5 hearing on the filter protocol before the magistrate judge, the government explained that an agent recently reviewing digital data from one of the 2019 and 2020 D.C. warrants observed a conversation that might have "involved attorney-client confidences." 11/5/25 Tr. at 12:23–13:6. The agent "immediately stopped" his review and alerted supervisors, and no further review has occurred. *Id.*

The defense stated that it was unknown whether the information seized under the 2019 and 2020 warrants had undergone a responsiveness review. *Id.* at 19:9–14. And defense counsel argued that, if the government had accessed "both the nonresponsive and responsive set," it "clearly" would have violated the Fourth Amendment. *Id.* at 20:11–19. The magistrate judge

3

asked defense counsel, "What information do you need that you don't have in order to file a motion to properly challenge the original search, the continued use?" *Id.* at 23:14–16. Counsel responded that, among other things, they needed to know, "What does the government have now? What did they access and provide to the grand jury? . . . Where did they get those materials?" *Id.* at 24:17– 20. The magistrate replied:

> The questions that [counsel] asks are going to be answered. She's entitled to know with great specificity how these warrants were executed, how the information was separated, how the information was used, up to and including how the information was using in the grand jury proceedings. As part of this, I am going to order the government to disclose to the defense all grand jury materials, not just the testimony of the agent, but anything that was said during the course of the grand jury. How the grand jury was instructed, any presentation to the grand jury, any questions that were asked of either the agent or the United States Attorney, all of that is to be disclosed because I think the defense needs that in order to marry up the information that they have or the information that they will get to how it was used. I don't know what motions are going to be filed. Maybe no motions are going to be filed, but they're entitled to this information quickly.

*Id.* at 26:4–21. The magistrate judge ordered the government to produce that information by 5:00 pm the next day. *Id.* at 26:21–22.

The government appealed the disclosure order. Dkt. No. 164. The Court remanded the matter to the magistrate judge "for further proceedings to analyze whether there are particularized and factually based grounds for disclosure." Dkt. No. 167 at 2.

On November 10, 2025, the magistrate judge held a telephonic hearing on the issue. Dkt. No.176. The magistrate judge requested the government produce, *in camera*, all the grand jury materials, and informed the defendant he could submit any *ex parte* information regarding the grand jury materials by the following day. *Id.* [2]

---

[2] Although the docket indicates the government provided the materials for *in camera* review, Dkt. No. 179, the docket does not reflect that defendant submitted *ex parte* information to the Magistrate Judge. However, the magistrate judge referenced the defendant's *ex parte* notice in its opinion. *See* Dkt. 191 at 7.

On November 17, 2025, the magistrate judge issued a Memorandum Opinion and ordered "that, by 3:00 p.m. on November 17, 2025, the Clerk of Court shall make available to the defense all grand jury materials filed on the docket under seal by the government (ECF 179); and . . . that the government shall, no later than 5:00 p.m. on November 17, 2025, produce to the defense the complete audio recording of the grand jury proceedings." Dkt. No. 192, 193.

On November 17, 2025, the government filed an emergency motion to stay the magistrate order. Dkt. No. 195. The defendant opposed. Dkt. No. 196. The Court granted the government's motion in part, stayed the order, and allowed the parties to file objections. Dkt. No. 197.

## II.    ARGUMENT

As a threshold matter, what began as the government's request for a filter protocol has morphed into a dispute regarding the defense's right to access grand jury materials, and has resulted in effectively a preliminary determination from the magistrate concerning the defense's ability to seek the suppression of evidence, disqualification, or dismissal because of alleged prosecutorial misconduct.[3] But the narrow issue presented was and is whether the defendant has met his burden of showing that particularized and factually based grounds exist to support the proposition that irregularities *in the grand jury proceedings* may create a basis for dismissal of the indictment. *See, e.g.*, Dkt. 184 at 5–6 (collecting cases); *see also, e.g.*, *United States v. Naegele*, 474 F. Supp. 2d 9, 10 (D.D.C. 2007). The defendant has not met his burden.[4] Therefore, the government objects to the magistrate judge's factual findings and legal conclusions contained in

---

[3] Rule 6(e) constrains the government's ability to describe what information or evidence the grand jury considered (or did not consider). Nothing in this response should be taken as a concession that particular evidence was presented to the grand jury.

[4] Consequently, disclosure of the grand jury material on the theory that the defendant might use that material to file *additional motions* to dismiss is inappropriate; Rule 6(e) does not permit a defendant to inspect grand jury material in the hope that the material will support a motion to suppress, disqualify, or dismiss based on conduct unrelated to the grand jury proceedings. *See* Dkt. 184 at 7.

the order and accompanying opinion.  *See* Dkt. Nos. 191 and 192.

In his order, the magistrate judge made what appear to be a series of effectively preliminary legal rulings and factual findings, pursuant to "its supervisory authority to dismiss the indictment," *see* Dkt. No. 191, at 19, as its basis for ordering disclosure of the grand jury material despite having received neither substantial briefing nor having been presented evidence concerning the following issues.  *See id.* at 20–22.  The Government respectfully submits that doing so was erroneous.[5]

***Preliminary Fourth Amendment rulings.***

- The magistrate judge appears to have determined that the government may have failed to comply with attachments accompanying four search warrants issued during the Arctic Haze investigation in 2019 and 2020, which authorized the government to search for and seize evidence of violations of 18 U.S.C. §§ 641 and 793.[6]  *See id.* at 8–9, 20–21.  The magistrate judge further determined—despite noting that "the validity of an indictment is not affected by the character of the evidence considered," *see id.* at 18 (cleaned up)—that those Fourth Amendment considerations warranted disclosure of the grand jury material.  *See id.* at 21.

- The magistrate judge similarly appears to have determined that defendant has established a reasonable basis to file a suppression motion challenging the execution of the above-described

---

[5] In particular, the Government objects in the strongest terms to the magistrate's suggestion that any error on the part of the Government might have been in reckless or willful disregard of the law.  *See* CM/ECF No. 191 at 21–22.  Indeed, it is difficult to square that suggestion with, among other things, the magistrate's acknowledging that even the use of illegally-obtained evidence or attorney-client information in the grand jury is no basis to dismiss an indictment, *see id.* at 18, that attorney-client information does not appear to have been presented to the grand jury, *see id.* at 14, the fact that the non-privileged evidence reviewed by the government and presented to the grand jury was obtained pursuant to judicially-authorized search warrants, *see id.* at 6, the fact that defendant stated to the Department of Justice's Office of Inspector General that he did not consider Richman's disclosures to the media to be part of their attorney-client relationship, *see* Dkt. 138-11 at 50, and the fact that the government employed a filter protocol in the Artic Haze investigation and sought judicial relief in this prosecution via a filter protocol.

[6] The magistrate judge did not explain how lawfully-seized evidence regarding those crimes might not also serve as evidence of other crimes in a subsequent prosecution of a third party who cannot vicariously assert the Fourth Amendment rights of the person whose property was searched and seized.  *See id.* at 9 n.3.

search warrants, even though none of the search warrants were directed (as far as the government is aware) at property owned or controlled by the defendant. *See id.* at 20–21.

### *Preliminary finding regarding privilege concerns.*

- The magistrate judge, despite acknowledging that the testifying agent was provided "a limited overview" regarding the privilege concerns, and the fact that based on its review of the grand jury transcripts no "overtly privileged communications" were presented to the grand jury, *see id.* at 14, nevertheless determined that the defense was entitled to production of the grand jury material on the theory that privileged information might have been used "by the government to prepare and present its grand jury presentation." *See id.* at 21.

- The magistrate judge further determined that the government took "ineffective" efforts to "identify and insolate potentially privileged information contained in the materials seized" pursuant to the search warrants, and that the government did not provide the defendant during the course of the Arctic Haze investigation "the opportunity to assert a privilege over his communications until after the indictment was obtained."[7] *See id.* at 7.

- ***Preliminary rulings regarding alleged prosecutorial legal error before the grand jury.***

- Finally, the magistrate judge appears to have determined that the U.S. Attorney may have provided incorrect legal instructions to the grand jury, and that the operative indictment returned by the grand jury may not have been "the same charging document presented to and

---

[7] The problems raised by the magistrate judge's findings on this issue are compounded by the fact that the scope of Richman's representation of the defendant remains unclear. That consideration is especially demonstrated by defendant's statements to the DOJ's Office of Inspector General that "he didn't consider" his directing Richman to provide information to the media to be privileged, and that he "didn't "intend to assert any kind of privilege about the direction to Richman." *See* Dkt. No. 138-11 at 50 (August 2019 OIG report).

Nevertheless, the magistrate judge in his opinion did not explore (or seek to explore) the scope of Richman's attorney-client relationship with the defendant. *See* Dkt. No. 191 at 7; *cf.* Va. R. Prof. Conduct 1.2 cmt. 6 (noting that "[t]he objective of scope of services provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client," and that the "terms upon which representation is undertaken may exclude specific objectives or means").

deliberated upon by the grand jury." *See id.* at 15, 18.  Those purported errors, the magistrate determined, further warranted disclosure of the grand jury materials.  Those determinations by the magistrate judge were also mistaken.

## A.  Standard of review.

The Federal Rules of Criminal Procedure provide that a "district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense."  Fed. R. Crim. P. 59(a).  A magistrate judge "must promptly conduct the required proceedings and, when appropriate, enter on the record an oral or written order stating the determination."  *See id.*

A party "may serve and file objections" to such an order "within 14 days after being served with a copy of a written order," and the "district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous."  *See id.*  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.  It is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. Williams*, 736 F. Supp. 3d 400, 403–04 (E.D. Va. 2024) (cleaned up).

## B.  A court may dismiss an indictment pursuant to its supervisory powers based on alleged misconduct before the grand jury only in extraordinary circumstances.

"As a general matter, judicial review of grand jury proceedings is extremely limited," and the "grand jury is traditionally considered an independent body that is unrestricted by the technical rules of evidence and procedure."  *United States v. Invidior Inc.*, 2019 WL 6039969, at *3 (W.D. Va. Nov. 14, 2019).  "Defendants alleging grand jury abuse bear the burden of rebutting the presumption of regularity attached to a grand jury's proceeding."  *United States v. Alvarado*, 840 F.3d 184, 189 (4th Cir. 2016).

Nevertheless, "[t]he Supreme Court has . . . recognized that a district court may use its

supervisory power to dismiss an indictment because of misconduct before the [grand] jury, at least where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme] Court and Congress to ensure the integrity of the grand jury's functions."[8] *United States v. Strouse*, 286 F.3d 767, 771–72 (5th Cir. 2002) (internal quotation marks omitted).[9] "The Supreme Court has also recognized that the supervisory power of Article III judges should be used to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy to designed to deter illegal conduct."[10] *Id.* at 772 (internal quotation marks omitted).[11]  It is plain, however, that the supervisory power is not to be used as a

---

[8] The Court in *Williams* explained that "Rule 6 of the Federal Rules of Criminal Procedure contains a number of such rules," and that "[a]dditional standards of behavior for prosecutors (and others are set forth in the United States Code." *See* 504 U.S. at 46 n.6.  The magistrate judge notably did *not* find that such an alleged violation occurred in ordering production of the grand jury material.

[9] In reviewing a motion to dismiss for alleged grand-jury error, a court is not to evaluate the quality of the evidence presented; "the validity of an indictment is not affected by the character of the evidence considered." *United States v. Calandra*, 414 U.S. 338, 344–45 (1974). "Review of facially valid indictments on such grounds would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it." *United States v. Williams*, 504 U.S. 36, 54–55 (1992) (cleaned up). Thus, "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment," and "a challenge to the reliability or competence of the evidence presented to the grand jury will not be heard." *Williams*, 504 U.S. at 54 (internal quotation marks omitted). That is so because a "complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was incomplete or misleading." *See id.* (internal quotation marks omitted).

[10] Should a defendant demonstrate that error—whether constitutional or non-constitutional— occurred before the grand jury, "the age-old rule of harmless error applies." *United States v. Akinyoyenu*, 199 F. Supp. 3d 34, 36 (D.D.C. 2016); *see also, e.g.*, *United States v. Agu*, 2000 WL 1910161, at *1 (5th Cir. 2000) (per curiam); *United States v. Benjamin*, 2019 WL 4920875, at *6 (D.V.I. Oct. 5, 2019) (collecting cases). "[D]ismissal of an indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (internal quotation marks omitted).

The harmless error rule does not apply, and a defendant is not required to demonstrate prejudice, however, in a small class of constitutional cases "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988). Structural error occurs "only in a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997). The *Bank of Nova Scotia* Court explained that "racial discrimination in selection of grand jurors" or the exclusion of women from a grand jury constituted such structural error. *See Bank of Nova Scotia*, 487 U.S. at 257.

"means of prescribing . . . standards of prosecutorial conduct in the first instance."[12] *United States v. Williams*, 504 U.S. 36, 46–47 (1992).

### C. The magistrate's order was contrary to law in assuming an alleged Fourth Amendment violation is a potential basis for dismissal of an indictment.

The magistrate judge determined that one of the principal bases warranting disclosure of the grand jury materials to the defendant was what the magistrate characterized as a variety of "potential violations of the Fourth Amendment" that, the Court found, might support a motion to suppress, and that its supervisory authority authorized it to order disclosure of the grand jury material as a result. *See* Dkt. No. 191 at 19, 21. But those alleged violations are no basis for ordering disclosure, because they were not "a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

Moreover, the magistrate's preliminary legal conclusion—which is not the subject of a motion to suppress—was contrary to law for two straightforward reasons. First, as the magistrate acknowledged, the review and use of evidence obtained allegedly in violation of the Fourth Amendment is not a basis for dismissal of an indictment. Second, the defendant cannot demonstrate a reasonable expectation of privacy in Richman's email accounts or property.[13] So any Fourth Amendment violation—even as to Richman, a nonparty—was no basis for ordering disclosure of grand jury material. That's so because if the use of evidence obtained in violation of

---

[12] The Court's statement in *Williams* aptly describes the fundamental problem with the magistrate judge's order. Rather than determining whether disclosure was warranted because of a "matter that occurred before the grand jury" that might support a motion to dismiss the indictment, *see* Fed. R. Crim. P. 6(e)(3)(E)(ii), the magistrate relied on its supervisory authority in principally determining that Fourth Amendment and privilege considerations warranted disclosure, despite acknowledging that those considerations were not substantive grounds to dismiss the indictment. But "prescribing . . . standards of prosecutorial conduct in the first instance" like those relied upon by the magistrate judge in ordering disclosure is emphatically what *Williams* proscribes. *See* 504 U.S. at 46–47.

[13] The Government agrees, however, that any information obtained from Richman's property that contains attorney-client privileged, attorney-client confidential, or attorney work-product information of the defendant should not be made available to the investigative team. Indeed, that is the reason that the Arctic Haze investigation employed a filter protocol and the reason the government again requested one from the Court in October.

the Fourth Amendment is no basis for dismissal of an indictment, the use of such evidence can't be a basis for ordering disclosure of grand jury materials to support a motion to dismiss an indictment pursuant to Rule 6(e)(3)(E)(ii).

> **i. The magistrate judge's order was contrary to law in concluding that the use and review of evidence allegedly obtained in violation of the Fourth Amendment violations is a basis for the disclosure of grand jury material.**

The magistrate judge acknowledged that "the validity of an indictment is not affected by the character of the evidence considered." Dkt. No. 191 at 18 (cleaned up). Thus, a "grand jury may consider incompetent or unconstitutionally-obtained evidence, and judicial supervision may not be sought to challenge an indictment issued on the basis thereof." *In re Grand Jury Proceedings*, 142 F.3d 1416, 1425 (11th Cir. 1998). That's so because the Fourth Amendment's exclusionary rule does not apply to a grand jury investigation. *United States v. Calandra*, 414 U.S. 338, 349–52 (1974). The Fourth Amendment "does not prevent the use of illegally seized evidence in grand jury proceedings," *see Stone v. Powell*, 428 U.S. 465, 485 (1976), and, consequently, an indictment founded on evidence seized in violation of the accused's Fourth Amendment rights is "not thereby rendered defective." *United States v. Lawson*, 502 F. Supp. 158, 166 (D. Md. 1980).

Despite that clear governing law, the magistrate judge undertook to review preliminarily whether the Government's review or use of materials obtained in the Arctic Haze investigation in presenting the indictment to the grand jury had—in a general sense—violated the Fourth Amendment.[14] That is, despite, among other things, defendant's not having filed a motion to suppress, the district court sought to determine whether the Government had complied with the

---

[14] Consistent with that review, the district court noted that the Court of Appeals for the Fourth Circuit "has held that the government's prolonged retention and continued access to materials that are non-responsive to a search warrant may violate the Fourth Amendment." *See* CM/ECF No. 191 at 11 n.6. While the Government concededly did not seek a new search warrant in 2025 before seeking the indictment, *see id.* at 11, the evidence relied upon by the government in seeking the indictment was plainly responsive to the each of the Attachments B appended to the Arctic Haze warrants.

terms of the attachments to the search warrants obtained during the Arctic Haze investigation and whether evidence seized pursuant to those warrants was properly presented to the grand jury. *See generally* Dkt. No. 191 at 8–12, 19.

That analysis by the magistrate judge was contrary to law for the simple reason that, under governing law, a putative Fourth Amendment violation is not a basis for dismissal of an indictment pursuant to a federal court's limited supervisory powers. Indeed, were the law otherwise, the governing authority summarized above was clearly wrongly decided. That is so because, as the magistrate's analysis demonstrated here, "a complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was incomplete or misleading." *United States v. Williams*, 504 U.S. 36, 54 (1992) (cleaned up). But the Supreme Court has emphasized that such a review is emphatically not part of federal courts' supervisory authority; indeed, "[r]eview of facially valid indictments on such grounds would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it." *See id.* at 54–55 (cleaned up).

### ii. The magistrate judge's order was contrary to law in assuming that defendant may vicariously assert Richman's Fourth Amendment rights.

The magistrate judge's generalized Fourth Amendment analysis was contrary to law for the second and independently sufficient reason that the defendant cannot properly seek suppression in this prosecution of evidence obtained from locations or property in which he has no reasonable expectation of privacy. The magistrate judge does not appear to have considered this controlling legal principle. *See* Dkt. No. 191 at 20–21.

"Fourth Amendment rights are personal rights and may not be vicariously asserted. A defendant seeking to suppress evidence based on an alleged Fourth Amendment violation must therefore demonstrate that he had a reasonable expectation of privacy in the location or items

12

searched." *United States v. White*, 2018 WL 4103490, at *8 (S.D.N.Y. Aug. 28, 2018). Thus, "a defendant can only challenge a warrant that authorizes the search or seizure of items in which he had a protected Fourth Amendment interest. It is insufficient for the defendant to show that a third party had a protected interest in the information searched because it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *United States v. Zelaya-Veliz*, 94 F.4th 321, 333 (4th Cir. 2024); *see also, e.g.*, *White*, 2018 WL 4103490, at *8. "Thus, to prevail in a motion to suppress evidence obtained from a search, the defendant has the burden of showing that the government implicated a protected interest of his in conducting the search." *Zelaya-Veliz*, 94 F.4th at 333.

Consequently, numerous federal courts have determined that a third party—like the defendant—cannot vicariously challenge the propriety of the Government's execution of a search warrant on an email (or other online) account belonging to another. *E.g.*, *United States v. Johnson*, 2019 WL 917175, at *6–7 (D. Mass. Feb. 25, 2019); *United States v. Bazar*, 2015 WL 6396011, at *1 (S.D. Ca. Oct. 21, 2025). "This is so even if those devices" or email accounts "contained communications sent by [the defendant] to the third parties who owned or possessed them."[15] *United States v. Barros*, 2022 WL 1239924, at *3 (D. Mass. Apr. 27, 2022). The "government's intent to offer the challenged evidence" does not change that analysis. *See id.*; *see also, e.g.*, *United States v. McGuire*, 2017 WL 185573, at *4 (D. Nev. Feb. 2, 2017) (report and recommendation) (noting that "Fourth Amendment standing" must be "demonstrate[d]" on "an individual basis"), *denied as moot*, 2018 WL 709961 (D. Nev. Feb. 2, 2018).

Here, the magistrate judge appears to have preliminarily determined that the Government's

---

[15] "The law is clear that the burden on the defendant to establish Fourth Amendment standing is met only by sworn evidence, in the form of affidavit or testimony, from the defendant or someone with personal knowledge." *United States v. Bondars*, 2018 WL 9755072, at *1 (E.D. Va. Apr. 23, 2018) (cleaned up).

review and use of materials obtained during the Arctic Haze investigation while preparing and during for the grand jury presentation raised Fourth Amendment concerns—despite the Court's not having received a motion to suppress or having conducted a hearing—and, consequently, that those Fourth Amendment considerations provided a basis for ordering disclosure of the grand jury material. *See* CM/ECF No. 191 at 20–21. The magistrate, however, does not to appear to have considered that any such argument might properly be raised by *Richman*, not to the defendant. Given the governing law summarized above—and the fact that, as the magistrate judge correctly noted, "the validity of an indictment is not affected by the character of the evidence presented," *United States v. Calandra*, 414 U.S. 338, 334–35 (1974)—it was contrary to law for the magistrate judge to apparently rely on a theory tacitly providing the defendant third-party standing vis-à-vis the material seized from Richman in order to order disclosure of the grand jury material.

**D. The magistrate judge's order clearly erred in assuming without explanation that there has been a privilege violation and was contrary to law in ordering disclosure of the grand jury material as a result.**

The magistrate judge in ordering disclosure pursuant to its supervisory authority acknowledged that it did not appear that "any overtly privileged communications" were presented to the grand jury, *see* Dkt. No. 191 at 14, and, further, that "the grand jury's consideration of evidence obtained in violation of the attorney-client privilege, on its own, does not constitute grounds for dismissal of an indictment." *See id.* at 18. The magistrate nevertheless determined that alleged deficiencies in the government's filter protocol during the Arctic Haze investigation and during the present prosecution warranted its ordering disclosure of the grand jury material pursuant to its supervisory authority. *See id.* at 21–22. That, too, was error, because any errors concerning the filter protocol were not "a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

Regardless, the magistrate's privilege analysis was incorrect for two independently

14

sufficient reasons.  First, the magistrate judge's conclusion that disclosure was warranted pursuant to its supervisory authority was contrary to law.  That's so because, as the magistrate acknowledged, review and use of evidence obtained allegedly in violation of attorney-client privilege is not a basis for dismissal of an indictment.  If the review and use of such evidence isn't a basis for dismissal, it should not be determined to be a basis for disclosure to support a motion seeking dismissal pursuant to Rule 6(e)(3)(E)(ii).[16]   Second, the magistrate judge clearly erred as a factual matter in determining preliminarily that a sufficient basis existed to determine that there may have been a privilege violation—and that disclosure of the grand jury material was warranted—since the nature of the defendant's relationship with Richman is still not in evidence.[17] Indeed, that is why the government sought judicial approval of a filter protocol in this prosecution.

    i.  **The magistrate judge's order requiring disclosure was contrary to law because the use of privileged material is not a basis for dismissing an indictment.**

The magistrate judge acknowledged that attorney-client privileged material did not appear to have been presented to the grand jury, *see* CM/ECF No. 191 at 14, and that "the grand jury's consideration of evidence obtained in violation of the attorney-client privilege, on its own, does not constitute grounds for dismissal of an indictment." CM/ECF No. 191 at 18.  Nevertheless, the magistrate found that disclosure of the grand jury materials was warranted pursuant to its supervisory authority principally because of the "unacceptable prospect that privileged materials

---

[16] Similarly, the magistrate's conclusion that purported deficiencies in the Government's filter protocol—a matter which has not yet been litigated here—meant that "privileged material [might have been] used, directly or indirectly, by the government to prepare to prepare and present its grand jury presentation," *see* CM/ECF No. 191 at 21, warranted disclosure of the grand jury material pursuant to its supervisory authority was contrary to law.  That's so for substantially the same reason—if the review and use of such evidence isn't a basis for dismissal, it should not properly be deemed a basis for disclosure.

[17] The Government of course has not had the opportunity to review any *ex parte* submission provided by the defendant regarding this issue.  *See* CM/ECF Nos. 176, 191 at 7.

were used to shape the government's presentation and therefore improperly inform the grand juror's deliberations." *See id.* at 14–15. But that decision was contrary to law for a simple reason: If the Government's *direct* use of evidence obtained in violation of the attorney-client privilege as part of its the grand jury presentation is, as the magistrate noted, no basis for dismissal of the indictment, its *indirect* use would, *a fortiori*, provide even less of a basis.[18] And since disclosure of grand jury material would not be warranted on the first basis, it plainly is not on the second.

The magistrate judge's order was similarly contrary to law in determining that alleged deficiencies in the Government's filter protocol during the Arctic Haze investigation and during the present prosecution, *see* Dkt. No. 191 at 7–8, 21–22, warranted its ordering disclosure of the grand jury material pursuant to its supervisory authority.[19] Again, that's so because if the *direct use* of attorney-client privileged information in a presentation—which the magistrate acknowledged did not appear to have occurred, *see* Dkt. No. 191 at 14—is no basis for dismissal, purported deficiencies in the antecedent investigation shouldn't be deemed to be, either.

ii. **The magistrate judge's order requiring disclosure clearly erred in determining without additional factfinding that there may have been a privilege violation warranting disclosure.**

The magistrate judge also clearly erred as a factual matter in determining without a sufficient basis that there may have been a privilege violation—and that disclosure of the grand jury material was accordingly warranted—since the nature of the defendant's attorney-client

---

[18] Despite the guidance provided by the FBI's Office of General Counsel to the investigators, *see* Dkt. No. 191 at 13, the Government does not concede that the present investigative team, including the agent who testified before the grand jury, are subject to disqualification or any other remedy as a result.

[19] The magistrate judge in reaching that conclusion suggested that the Government erred by making "a conscious decision to exclude [defendant] from the filter process," even though defendant was and is the holder of any privilege as between himself and Richman. *See* Dkt. No. 191 at 8. The Government, however, is unaware of authority that would require it to engage with a potential target or subject of a criminal investigation in that fashion, particularly when the Artic Haze warrants were filed under seal.

relationship with Richman remains, as least as to the Government, unclear.[20]

Although the defendant apparently retained Richman as his counsel "the day after his removal" as FBI Director or "very shortly thereafter," *see* CM/ECF No. 191 at 7, the government is as yet unaware of the scope of Richman's representation of the defendant.[21]  Indeed, the defendant informed DOJ's Office of Inspector General that "he didn't consider" his directing Richman to provide information to the media to be privileged, and that he "didn't "intend to assert any kind of privilege about the direction to Richman."  *See* Dkt. No. 138-11 at 50 (August 2019 OIG report).  But Richman's concededly non-privileged provision of information to the media— and the defendant's authorization and approval of the same—is squarely at issue in this prosecution.  *See* Dkt. No. 138 at 4–10.

As the Court of Appeals for the Fourth Circuit has explained, "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," and, when applicable, "it affords confidential communications between lawyer and client

---

[20] Indeed, the Court of Appeals for the Fourth Circuit has provided a considerably more nuanced standard in adjudicating whether dismissal of an indictment or disqualification is appropriate because of an alleged violation of the attorney-client privilege than that apparently utilized by the magistrate in ordering disclosure.  *See United States v. Brugman*, 655 F.2d 540, 545–46 (4th Cir. 1981).

The Court of Appeals has "identified four factors that a court must consider when evaluating whether the government has violated the Sixth Amendment by invading the attorney-client relationship: (1) whether the government's intrusion was intentional in order to garner confidential, privileged information; (2) whether the government directly or indirectly obtained evidence through the intrusion that it later used at trial; (3) whether the information gleaned by the government from the intrusion was otherwise used to the substantial detriment of the defendant; and (4) whether the defendant learned the details of the defendant's trial preparation."  *United States v. Elbaz*, 396 F. Supp. 3d 583, 592 (D. Md. 2019) (cleaned up; citing *Brugman*, 655 F.2d at 546).  Moreover, in "the Fourth Circuit, the defendant must put forward some showing of prejudice to succeed on a claim for a Sixth Amendment violation based on an invasion of the attorney-client relationship."  *Elbaz*, 396 F. Supp. 3d at 592 (cleaned up).

Here, however, the magistrate did not in ordering disclosure—despite any filtering errors not being a "matter before the grand jury," *see* Fed. R. Crim. P. 6(e)(3)(E)(ii)—consider any of the above-described factors, other than by determining that privileged materials may have been "used to shape the presentation and therefore improperly inform the grand jury's deliberations."  Dkt. 191 at 15.  Nevertheless, as described above, that was no basis for ordering *disclosure*, since, as the magistrate acknowledged, even the grand jury's overt consideration of privileged material would have been no basis for *dismissal*.  *See* Dkt. 191 at 18.

[21] Consequently, the Government sought judicial assistance regarding this issue in October 2025.

complete protection from disclosure." *In re Grand Jury Subpoena*, 204 F.3d 516, 519 (4th Cir. 2000) (cleaned up). However, since the privilege "impedes the full and free discovery of the truth," it is "to be narrowly construed," and is "recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *See id.* (cleaned up). As a result, "the burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *See id.* (cleaned up).

Here, the magistrate clearly erred—given that the defendant has not, so far as the government is aware, demonstrated the scope of the defendant's attorney-client relationship with Richman and its applicability to their particular communications—in determining without additional factfinding that the Government's awareness regarding a potential privilege violation warranted disclosure of the grand jury materials.[22]

### E. The U.S. Attorney's statements to the grand jury were not improper and provide no basis for disclosure.

The magistrate judge's conclusion that two isolated statements by the U.S. Attorney justify disclosure of grand-jury materials is legally untenable and factually indefensible. The recommendation cannot survive scrutiny because it is built on incomplete quotations, selective omissions, and a reading of the transcript that departs materially from what the record actually shows.

Federal courts have an affirmative obligation to ensure that judicial findings accurately reflect the evidence. Canon 2(A) of the Code of Conduct for United States Judges requires every judge to "act at all times in a manner that promotes public confidence in the integrity and

---

[22] That is so whether or not that determination is characterized as an error of fact or one of law, since, as described above, the magistrate noted that even the Government's use of attorney-client privilege information as part of its grand jury presentation would not warrant dismissal. *See* Dkt. No. 191 at 18. Given that legal principle, it is difficult to apprehend how the Government's mere awareness that a filter protocol was needed pursuant to Rule 6(e)(3)(E)(ii) merit disclosure of the grand jury material that is sought.

impartiality of the judiciary" and to avoid orders that "misstate or distort the record." Canon 3(A)(4) requires courts to ensure that factual determinations are based on the actual record, not assumptions or misrepresentations. Measured against these obligations and the rule of law, the magistrate's reading of the transcript cannot stand.

Even if the challenged statements were accepted as the magistrate judge described them – which they cannot be – they would still fall far short of the demanding standard required for disclosure under Rule 6(e). But the threshold flaw is more fundamental: the order rests on a distorted account of the transcript, and federal courts have an obligation to ensure that judicial findings accurately reflect the evidence in front of them.

The magistrate judge asserts that the U.S. Attorney implied Mr. Comey lacked a Fifth Amendment right not to testify. The complete transcript demonstrates the opposite. The U.S. Attorney issued a single, continuous explanation of how trial testimony differs from the grand jury's function, and the magistrate judge's attempt to split that explanation into two disconnected "statements" produces a meaning that simply is not present in the actual text.

The complete text, as one statement, reads:



*See* Dkt. No. 178-1 at 105 (emphasis added).

The portion the magistrate judge omitted is dispositive. The U.S. Attorney expressly refocused the grand jury on its limited role and told them not to concern themselves with trial testimony. The

instruction is clear, direct, and completely incompatible with the magistrate judge's conclusion. Canon 2(A) obliges the courts to account for the full context before finding impropriety; here, the critical contextual language was not addressed.

At a minimum, the magistrate judge's failure to account for this critical passage renders the analysis unsound. No court can deem a prosecutor's remarks improper while disregarding the very language that corrects any arguably ambiguous phrasing. Courts cannot base a finding of "misstatement" on a partial sentence when the rest of the sentence eliminates the issue.

Federal courts uniformly hold that even genuine errors do not justify dismissal or disclosure unless they "seriously misstate the applicable law" or "cast grave doubt" on whether the grand jury's decision was influenced. *United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011). The magistrate judge could not have found such an effect because the transcript forecloses it. The reliance on *Griffin v. California*, 380 U.S. 609 (1965), is also misplaced. *Griffin* concerns impermissible comment on a defendant's silence at trial. It has no bearing on a general explanation of trial procedure to a grand jury, particularly where the prosecutor immediately told the grand jurors that the question of who might testify at a future trial had nothing to do with their task. The Supreme Court has consistently underscored the presumption of regularity owed to grand-jury proceedings. *United States v. Enterprises*, 498 U.S. 292, 301 (1991). The magistrate judge discarded that presumption without any factual basis.

Furthermore, the magistrate added that the statement by the prosecutor was made in "response to challenging questions from grand jurors," Dkt. No. 191 at 16, which, the magistrate found, additionally supported disclosure, presumably on the theory that the U.S. Attorney had wrongly instructed the grand jury. But the magistrate judge was mistaken. The transcript itself refutes the notion that the U.S. Attorney was responding to unresolved juror confusion about Fifth

Amendment rights. The last question from a grand juror appears several pages earlier in the transcript, during an exchange between the U.S Attorney and the witness about ███████████ and in that exchange the juror's question was resolved. Dkt. No. 178-1 at 101–03.  After questions and answers between the U.S Attorney and the witness and ███████████ the following exchange occurred:



*See id.* at 101–03.  No additional juror questions followed. The U.S. Attorney's later remarks were not an attempt to resolve any confusion, because none existed. The contrary conclusion has no grounding in the transcript. *Id.* at 103–05.

Thus, the U.S. Attorney's statement considered in whole, did not serve as an instruction to the grand jury that it did not have to rely on the record before it in determining whether there was probable cause to return an indictment.  Instead, the U.S. Attorney properly informed the jurors

that a trial jury would determine guilt or innocence, not them, that it was understandable to have many questions, and that the government anticipated presenting additional evidence were the case to proceed to trial.  When the U.S. Attorney's comments are read fairly, fully, and in context – as the Code of Conduct requires – the conclusion is unavoidable: there was no misstatement of law, no misleading of the grand jury, and no impropriety whatsoever.  The magistrate judge's contrary finding rests on a misreading of the transcript and cannot support disclosure.

### F.  The grand jury transcript is complete and provides no basis for disclosure

Finally, the magistrate judge concluded that putative problems regarding the completeness of the grand jury transcript and the manner in which the second indictment was presented to the grand jury merited disclosure. Dkt. No. 191 at 16–17. The magistrate erred by dismissing the US. Attorney's declaration explaining what transpired during and after the grand jury presentation as well as the statements of the grand jury foreperson to the judge at the time of the indictment return. A court may not invoke Rule 6(e)(3)(E)(ii) based on speculation about what might be missing. Canon 2(A) prohibits findings that rest on conjecture rather than evidence. The magistrate judge's suggestion that concerns about the transcript's completeness justify disclosure is equally unfounded. The record is unambiguous, and the magistrate judge's interpretation is squarely contradicted by every source that actually participated in the proceedings.

The U.S. Attorney's declaration confirms the events that occurred following the grand-jury proceeding. The court reporter's contemporaneous email confirms it. The grand-jury foreperson's open-court statements confirm it. And the transcript itself confirms it. The confusion arises solely from the magistrate judge's misinterpretation of the administrative correction removing Count One from the indictment after the grand jury returned a true bill on Counts Two and Three. That adjustment simply reflected the grand jury's vote; it was neither unusual nor improper. Courts do

22

not abandon the presumption of regularity based on misunderstandings contradicted by every factual source.

Contrary to erroneous news articles and the defendant's assumptions, there was only one indictment presented to the grand jury. *See* Dkt, No. 10 at 5–6; Dkt. No. 188-1 (Declaration of Lindsey Halligan). As explained in detail by the U.S. Attorney, she only presented the indictment once and the grand jurors only deliberated once for an extended period of time. Dkt. No. 188-1. That fact has been confirmed by the court reporter. *See* Gov. Ex. 1 (email from court reporter). The proposed indictment included three proposed counts, but the grand jury did not return a true bill on original Count One, as the foreperson explained during the return of the indictment. *See* Dkt, No. 3; Dkt. No. 10 at 3, 5–6.

As a result of the grand jury's determination that probable cause existed to believe that defendant had committed two of the charges set forth in the proposed indictment, the draft indictment was amended to remove the first count and keep the remaining two counts on which the grand jury had concurred.[23] Nevertheless, that is what transpired. Dkt No. 1. This was not, as the magistrate judge opines, an "unusual series of events" and is fully explained by the U.S. Attorney's declaration, the court reporter's recollection, the grand jury coordinator's discussion with the grand jury foreperson, and the grand jury foreperson's explanation in court. Consequently, the presumption of regularity associated with grand jury proceedings is not an issue, and the grand jury's vote on the two counts of the operative indictment should not be disturbed. Rule 6(e) (3)(E) (ii) does not authorize disclosure based on conjecture, and courts do not abandon

---

[23] After the Nov. 19, 2025, hearing on the defendant's vindictive prosecution memorandum, the EDVA Grand Jury coordinator informed the undersigned that the grand jury foreperson informed her they had returned a true bill as to counts two and three, and not as to count one. The coordinator was informed by the Deputy Criminal Chief to amend the indictment by removing the text of former count one, and moving the remaining counts, two and three, to reflect as counts one and two. The grand jury coordinator then returned to the grand jury room and presented the corrected indictment to the grand jury foreperson and the deputy foreperson.

the presumption of regularity based on misunderstandings that are flatly inconsistent with the record. The transcript is complete. The procedure was proper. And no aspect of the record supports the magistrate judge's assumptions.

### III.    CONCLUSION

The magistrate judge's recommendation is grounded in misreadings of the transcript, incorrect legal conclusions, and factual assumptions that the record directly disproves.

None of the rationales offered for disclosure withstands examination. The U.S. Attorney did not misstate the law, the grand jury was not misled, and the transcript shows a routine, regular presentation of the indictment.

Because the magistrate's findings are unsupported by the record and inconsistent with the governing legal standards, the Court should set aside the magistrate judge's order and deny the request for disclosure under Rule 6(e) (3) (E) (ii).


Respectfully submitted this 19th day of November, 2025.

Lindsey Halligan
United States Attorney

*/s/ Gabriel J. Diaz*
Gabriel J. Diaz
Assistant United States Attorney
North Carolina Bar No. 49159
N. Tyler Lemons
Assistant United States Attorney
North Carolina Bar No. 46199
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700
gabriel.diaz@usdoj.gov
tyler.lemons@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that I have this 19th day of November, 2025, the government served a copy of the foregoing upon the defendant by CM/ECF to:

Jessica Nicole Carmichael
Counsel for Defendant

Patrick Joseph Fitzgerald
Counsel for Defendant

Rebekah Donaleski
Counsel for Defendant

Respectfully submitted,

*/s/ Gabriel J. Diaz*
Gabriel J. Diaz
Assistant United States Attorney
North Carolina Bar No. 49159
N. Tyler Lemons
Assistant United States Attorney
North Carolina Bar No. 46199
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700
gabriel.diaz@usdoj.gov
tyler.lemons@usdoj.gov