IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| United States of America, ) | |
| ) | |
| v. ) | Case No.: 1:25-CR-00272-MSN |
| ) | |
| James B. Comey, Jr., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**JAMES B. COMEY, JR.'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS**

## TABLE OF CONTENTS

                                                      **Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.     A Bill of Particulars Is Warranted as to Count One of the Indictment .............................. 2

        A.     The Government's Failure to Identify a Coherent Factual Basis for Count One Prevents Mr. Comey From Preparing for Trial ....................... 2

        B.     The Government's Approach to the Discovery Process Has Obfuscated, not Illuminated, the Basis for Count One ............................. 7

II.    A Bill of Particulars Is Warranted as to Count Two of the Indictment ............................ 9

III.   Mr. Comey's Motion Does not Seek "Inordinate Detail" ................................................ 12

CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
   373 U.S. 83 (1963) .................................................................................................2, 6, 7, 8

*Hamling v. United States*,
   418 U.S. 87 (1974) ..................................................................................................................1

*Russell v. United States*,
   369 U.S. 749 (1962) .......................................................................................................1, 6, 11

*United States v. Anderson*,
   441 F. Supp. 2d 15 (D.D.C. 2006) ..........................................................................................8, 10

*United States v. Automated Med. Labs., Inc.*,
   770 F.2d 399 (4th Cir. 1985) ...................................................................................................2, 4, 5

*United States v. Blair*,
   2021 WL 424411 (D. Md. Feb. 5, 2021) ................................................................................7, 9, 10

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987) .....................................................................................................8

*United States v. Brandon*,
   298 F.3d 307 (4th Cir. 2002) ....................................................................................................1

*United States v. Fletcher*,
   74 F.3d 49 (4th Cir. 1996) .......................................................................................................1

*United States v. McComber*,
   2021 WL 5760731 (D. Md. Dec. 3, 2021) .................................................................................12

*United States v. Perry*,
   30 F. Supp. 3d 514 (E.D. Va. 2014) ........................................................................................2, 7, 8

*United States v. Randall*,
   171 F.3d 195 (4th Cir. 1999) ....................................................................................................10

*United States v. Sampson*,
   448 F. Supp. 2d 692 (E.D. Va. 2006) ......................................................................................1, 2, 9

*United States v. Simmons*,
   11 F.4th 239 (4th Cir. 2021) ....................................................................................................10

*United States v. Smith*,
   44 F.3d 1259 (4th Cir. 1995) ...................................................................................................1

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Sykes*,
   2016 WL 8291220 (E.D.N.C. Aug. 22, 2016) .......................................................................... 4

*United States v. Trie*,
   21 F. Supp. 2d 7 (D.D.C. 1998) ............................................................................... 2, 8, 10

*United States v. Wicks*,
   187 F.3d 426 (4th Cir. 1999) .................................................................................................. 1

**Statutes**

18 U.S.C.
   § 1001(a)(2) ............................................................................................................................ 2
   § 1505 ..................................................................................................................................... 9

**News Reports and Other Media**

Charles Savage & Katie Benner, *Trump Administration Secretly Seized Phone Records of Times Reporters*, N.Y. Times (June 2, 2021), https://perma.cc/D3N4-X2R6 .................................................................................................. 7

Matt Apuzzo, Michael S. Schmidt, Adam Goldman & Eric Lichtblau, *Comey Tried to Shield the F.B.I. From Politics. Then He Shaped an Election*, N.Y. Times (Apr. 22, 2017), https://perma.cc/2BDJ-TAT2 .................................................................. 6

## INTRODUCTION

This case is less than seven weeks from trial, and Mr. Comey still has little indication of what the actual factual bases are for the charges against him amidst the government's shifting theories and voluminous discovery. Far from fairly advising Mr. Comey of the charges against him and enabling him to prepare for trial, the government has taken every opportunity to obfuscate its case against Mr. Comey, in its sparsely worded putative indictment, its conflicting narratives in its opposition motions, and in its provision of mountains of seemingly irrelevant discovery. The Court should not permit a trial by ambush and should order the government to provide a bill of particulars.

## ARGUMENT

A motion for a bill of particulars is not a motion to dismiss an indictment. Both devices address the concern that a "cryptic form of indictment . . . requires the defendant to go to trial with the chief issue undefined," "gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture," and makes it impossible "for courts called upon to pass on the validity of convictions under the statute to bring an enlightened judgment to that task." *See Russell v. United States*, 369 U.S. 749, 766, 769 (1962) (citations omitted). Contrary to the government's argument (at 8-9), however, the test in ruling on a motion for a bill of particulars is not whether the indictment is "sufficient" to survive dismissal, but whether "deprivation of the information sought will render the defendant subject to unfair surprise." *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) (citing *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996)); *cf. United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002) (addressing motion to dismiss indictment); *Hamling v. United States*, 418 U.S. 87 (1974) (same); *United States v. Wicks*, 187 F.3d 426 (4th Cir. 1999) (same); *United States v. Smith*, 44 F.3d 1259 (4th Cir. 1995) (same).

The trial court has broad discretion in deciding whether to require a bill of particulars as needed "'to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial.'" *Sampson*, 448 F. Supp. 2d at 696 (quoting *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985)). For example, a bill of particulars can be necessary to cabin trial preparation for a defendant who has been provided with "mountains of documents" with little to no indication of their relevance, *United States v. Perry*, 30 F. Supp. 3d 514, 523-24 (E.D. Va. 2014), or to allow a defendant to request materials under, and the court to monitor the government's compliance with, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, *see United States v. Trie*, 21 F. Supp. 2d 7, 25 (D.D.C. 1998).

**I.       A Bill of Particulars Is Warranted as to Count One of the Putative Indictment**

Count One of the putative indictment charges Mr. Comey with making a false statement to Congress, in alleged violation of 18 U.S.C. § 1001(a)(2). *See* ECF No. 1 at 1. The government argues in its opposition that Count One is "straightforward" and that Mr. Comey's requests for additional detail regarding Count One amounts to a request for "detailed disclosure of the government's evidence in advance of trial." Opp. at 13 (quoting *Automated Med. Labs, Inc.*, 770 F.2d at 405). Not so. Mr. Comey seeks the information required to mount a defense to a charge that not only misstates Mr. Comey's testimony, but also appears wholly unsupported by the discovery produced by the government.

**A.       The Government's Failure to Identify a Coherent Factual Basis for Count One Prevents Mr. Comey From Preparing for Trial**

According to the government, "Count One of the indictment charges the defendant with falsely stating on or about September 30, 2020 to a U.S. Senator—*i.e.*, Senator Cruz—that he had not authorized Richman to the be an anonymous source in news reports regarding the Clinton email

2

investigation." Opp. at 13.[1] The government contends that this charge is "straightforward" and "does not . . . require the Government to identify every occasion on which defendant authorized Richman to act as an anonymous source regarding the Clinton investigation." *Id.* But the government's failure to identify a *single* instance in which Mr. Comey authorized Mr. Richman (while Mr. Richman was "at the FBI") to act as an anonymous source makes this charge, at minimum, less than "straightforward" to defend against at trial.

The government provided almost none of this detail about Count One in the putative indictment. Count One alleges only that "[o]n or about September 30, 2020," Mr. Comey "willfully and knowingly" made "a materially false, fictitious, and fraudulent statement in a matter within the jurisdiction of the legislative branch of the Government of the United States" when he stated during a Senate Judiciary Committee Hearing that he "had not 'authorized someone else at the FBI to be an anonymous source in news reports' regarding an FBI investigation concerning PERSON 1," when in fact, Mr. Comey "then and there knew, he in fact had authorized PERSON 3 to serve as an anonymous source in news reports regarding an FBI investigation concerning PERSON 1." ECF No. 1 at 1. The government did not clarify until October 15, 2025 that "PERSON 1" referred to Hillary Clinton, and "PERSON 3" referred to Daniel Richman, Br. at 1, and it did not confirm until its Opposition that the question at issue was posed by Senator Cruz, Opp. at 13.

In its briefing thus far, the government cited numerous communications and articles as the basis for Count One—none of which reflect Mr. Comey authorizing Mr. Richman (while "at the FBI") to be an anonymous source regarding the Midyear Exam investigation. In its Opposition to

---

[1] As used herein, "Opp." refers to the United States' Response in Opposition to Defendant's Motion for Bill of Particulars, ECF No. 183, and "Br." refers to James B. Comey, Jr.'s Motion for a Bill of Particulars, ECF No. 107.

3

Defendant's Motion to Dismiss Indictment Based on Vindictive and Selective Prosecution, the government identified four instances that allegedly formed the basis for Count One: (1) communications with Mr. Richman in the days following Mr. Comey's letter to Congress on October 28, 2016, *see* ECF No. 138 at 9-10; (2) an email exchange between Mr. Comey and Mr. Richman in April 2017, regarding an article in the *New York Times*, *see id.* at 7; (3) exchanges between Mr. Richman and individuals other than Mr. Comey in February 2017 and May 2017, *see id.* at 7-8; and (4) Mr. Comey's testimony regarding his decision to share a memo he had written with Mr. Richman and others following his firing from the FBI on May 9, 2017, *see id.* at 9-12.

The government's position (at 8-9) is that presenting "facts" alone is enough to put Mr. Comey on notice of the nature of the charges against him. And the government is correct that, in some circumstances, providing the defendant with the "central facts" underlying the charge can obviate the need for a bill of particulars. Opp. at 12 (citing *United States v. Sykes*, 2016 WL 8291220, at *37 (E.D.N.C. Aug. 22, 2016)). But this presupposes that the facts alleged actually form the basis for the charge. For example, in *United States v. Automated Medical Laboratories, Inc.*, on which the government relies, a bill of particulars was not warranted with respect to the government's charge that the defendant participated in a conspiracy to falsify logbooks and records because the government provided relevant information regarding the factual basis for the charge "wherever it *could* do so." 770 F.2d at 405 (emphasis in original). In advance of trial, the government identified for defense counsel examples of logbooks and records that it contended were false, "generally described the type of evidence regarding each log and indicated the page numbers that the government intended to highlight at trial," and provided the defendant with "a copy of the logbook or document pertaining to each substantive count." *Id.* The court found that the government's provision of these relevant details was enough to "satisfy the purpose of a bill

4

of particulars, which is to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial." *Id.*

Here, the government has repeatedly failed to provide a coherent factual basis for its theory that Mr. Comey authorized Mr. Richman to be an "anonymous source" in news reports regarding the Midyear Exam investigation while Mr. Richman was "at the FBI." Of the communications following Mr. Comey's October 28, 2016 letter that the government cites in both briefs, none reflect Mr. Comey authorizing Mr. Richman to be an anonymous source. For instance, the communications show Mr. Richman discussed materials that were already public, like Mr. Comey's letter to Congress. *See*, *e.g.*, Opp. at 3 ("Wittes and I are spending a lot of time *saying your letter means exactly, and only what it says*." (emphasis added)); *id.* at 3-4 (quoting the defendant as telling Mr. Richman that Richman's contributing to a New York Times Opinion piece "would [be] shouting into the wind," and "that they would 'figure it out'" without Richman's contributions). And even where the government alleges that Mr. Comey encouraged Mr. Richman to speak to the press in late October and early November 2016, there is no indication that Mr. Richman did so anonymously; to the contrary, one of the exhibits the government cites references Mr. Richman's televised interview with Anderson Cooper. Opp. at 4 (citing ECF No. 138-6, 138-7). The remaining communications cited by the government in its Opposition to Defendant's Motion to Dismiss Indictment Based on Vindictive and Selective Prosecution suffer from numerous defects, but most critically, all occurred *after* February 7, 2017, when Mr. Richman left the FBI. This alone makes the government's theory that Mr. Richman was "at the FBI" when these communications occurred incomprehensible.

As the government's own briefing demonstrates, Count One is far from "straightforward"; with less than two months before trial, the government cannot even explain how Mr. Comey

5

allegedly authorized Mr. Richman to serve as an anonymous source in news reports regarding an investigation into Hillary Clinton while Mr. Richman was "at the FBI." If the government has any factual basis for Count One, Mr. Comey is entitled to know it so that he can be apprised of the nature of the accusation. *Russell*, 369 U.S. at 766 (explaining that one of the "basic principles of fundamental fairness" on which our criminal justice system is founded is "that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him" (citation omitted)).

      A bill of particulars is necessary to allow Mr. Comey to learn the substance of the charges asserted by the government before trial, to cabin trial preparation, and to appropriately tailor his requests for discovery and exculpatory material. *See Perry*, 30 F. Supp. 3d at 523 ("[I]n cases involving vaguely asserted charges of fraud, perjury, or alteration of records, a bill of particulars may be necessary in order to provide a defendant a full and fair opportunity to prepare a defense."). One of the articles referenced by the government is the April 2017 article that was the subject of the Arctic Haze investigation. Mr. Richman is quoted by name in that article, and the article also notes that the reporters spoke with thirty other sources. *See* ECF No. 38 at 7; *see also* Matt Apuzzo, Michael S. Schmidt, Adam Goldman & Eric Lichtblau, *Comey Tried to Shield the F.B.I. From Politics. Then He Shaped an Election*, N.Y. Times (Apr. 22, 2017), https://perma.cc/2BDJ-TAT2 ("'Jim sees his role as apolitical and independent,' said Daniel C. Richman, a longtime confidant and friend of Mr. Comey's. 'The F.B.I. director, even as he reports to the attorney general, often has to stand apart from his boss.'"). Mr. Comey has served *Brady* requests on the government that seek, for each article the government intends to rely upon for Count One's alleged authorization to be an anonymous source, information about alternative sources of information. *See* Exs. 1-3. The government has not provided this information for the April 2017 article, or any article. The

6

defense has concerns that certain of those records have, in fact, been destroyed.[2] Without knowing which articles the government intends to rely upon at trial, the defense is unable to ascertain whether the government has met its *Brady* obligations.

### B. The Government's Approach to the Discovery Process Has Obfuscated, not Illuminated, the Basis for Count One

The government has produced more than 300,000 pages of discovery, along with substantial quantities of classified discovery.[3] That mountain of documents—in a two-count false-statement case—has only served to obscure the allegations and requires a bill of particulars.

As the government acknowledges, "the production of discovery does not necessarily obviate the need for a bill of particulars." Opp. at 11 n.3 (quoting *United States v. Blair*, 2021 WL 424411, at *4 (D. Md. Feb. 5, 2021)). That is, "[a] defendant is not fairly apprised of necessary information merely because the government provided 'mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified' at trial." *Perry*, 30 F.

---

[2] As part of the Arctic Haze investigation, prosecutors subpoenaed call detail records for the authors of that article, including Mr. Apuzzo's, Mr. Schmidt's, Mr. Goldman's, and Mr. Lichtblau's conversations with more than 30 potential sources for the April 2017 article. *See* Charles Savage & Katie Benner, *Trump Administration Secretly Seized Phone Records of Times Reporters*, N.Y. Times (June 2, 2021), https://perma.cc/D3N4-X2R6. The government also secured a court order to seize logs—but not contents—of the reporters' emails, but "no records were obtained." *See id.* Needless to say, the fact that the reporters spoke with dozens of additional sources for that article other than Mr. Richman is exculpatory evidence in this case (and must have been recognized as exculpatory evidence in the Arctic Haze investigation, as well). The defense requested this information in a discovery demand. *See* Exs. 2-3. Based on an FBI 302 report produced in discovery, it appears that the Arctic Haze prosecutors and agents may have destroyed grand jury materials relating to members of the news media. The defense asked the government for an accounting of the relevant evidence that it destroyed, via letter on November 12, 2025, *see* Ex. 3. In an email on November 20, 2025 at 10:29 AM ET, the government represented that the 302 was inaccurate and the records had not, in fact, been destroyed. Mr. Comey reserves his rights with respect to the government's potential spoliation of exculpatory evidence and will further investigate the government's claim.

[3] Although the government has declassified evidence it views as inculpatory so it could be attached to court filings, *see* ECF No. 138, it has maintained potentially exculpatory evidence at the classified level. The defense expects to raise issues related to the government's selective declassification and general over-classification in future filings. *See* Ex. 4.

7

Supp. 3d at 524; *see also United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006) ("The Court agrees with the defendant that it is not a sufficient response to a motion for a bill of particulars to point to the voluminous discovery already provided or to a governmental open file policy.").

Where, as here, discovery is voluminous, a bill of particulars can be warranted to enable the defendant to identify relevant materials in discovery and monitor the government's compliance with its obligations under *Brady* and its progeny. *See United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (district court erred in denying motion for bill of particulars where the government produced "mountains of documents to defense counsel," including "numerous documents unrelated to the charges pending"); *Perry*, 30 F. Supp. at 524 (a bill of particulars was warranted where government's production contained "tens of thousands of documents"); *Trie*, 21 F. Supp. 2d at 26 (scope of *Brady* obligations could be evaluated after government's provision of bill of particulars).

The government says it has provided "broad discovery . . . which includes electronic data, investigative summaries, emails, previous hearing transcripts, and witness interviews" from multiple wide-ranging investigations. *See* Opp. at 15; Br. at 7. But that discovery reflects a scattershot approach that makes it exceedingly difficult, if not impossible, to dig through the blizzard of data to find the bases for the government's charge. Here, the government's production also includes numerous publicly available news articles, some of which quote Mr. Richman by name, Br. at 7, and some of which were published well after Mr. Richman confirmed that he was no longer serving as an SGE.

The government's only response to Mr. Comey's contention that this volume of irrelevant discovery hinders, rather than facilitates, his ability to prepare for trial, is that the "discovery

8

produced . . . is more fulsome than required at this stage." Opp. at 8. Given the size of the pile, that is surely so, but it does nothing to help the defendant prepare for trial. Br. at 5.

### II.      A Bill of Particulars Is Warranted as to Count Two of the Putative Indictment

Count Two of the putative indictment charges Mr. Comey with "corruptly endeavor[ing] to influence, obstruct and impede" a Senate Judiciary Committee investigation on September 30, 2020 "by making false and misleading statements before that committee," in alleged violation of 18 U.S.C. § 1505. ECF No. 1 at 2. Although the government told the defense in a meet and confer on November 12, 2025 that the entirety of Count Two included the alleged false statement in Count One as well as a statement regarding a 2016 CIOL, the government now appears to suggest (at 14) that Count Two may be based on any other statement made by Mr. Comey at the September 30, 2020 hearing, "*[f]or instance*, the defendant's statements to Senators Grassley and Cruz regarding his use of Richman as an anonymous source concerning the Clinton email investigation and his statements to Senators Graham and Hawley regarding his alleged lack of memory concerning the so-called Clinton plan to 'Tie Trump' to Russia." Opp. at 14 (emphasis added). The government's position appears to be that pointing to a four-hour hearing in which Mr. Comey allegedly made the false statement, together with the discovery provided to date, is enough to allow Mr. Comey to prepare for trial. *See id.* The government is wrong.

Courts regularly require the government to provide a bill of particulars in fraud or false statements cases where the government fails to identify the allegedly false statements and state why they were false. *See, e.g.*, *Sampson*, 448 F. Supp. 2d at 696 (count of indictment that alleged that "Defendant committed mail fraud by delivering fraudulent documents relating to a 2004 Yukon Denali" failed to "state which specific documents were fraudulent and what was allegedly fraudulent about the documents at issue"); *Blair*, 2021 WL 424411, at *6 (requiring bill of particulars in medical insurance fraud case where allegations included "multiple crimes committed

9

over a period of months" but government failed to identify which of the 491 prescriptions for which it produced discovery were at issue); *Anderson*, 441 F. Supp. 2d at 20 ("In striking the proper balance between the government's legitimate interests and the interest of the defendant in being able adequately to prepare his defense and not suffering unfair surprise at trial, the Court concludes that Anderson is entitled to know precisely which allegedly false statements the government relies on in each paragraph, the way in which the government alleges them to be false, and when approximately they were allegedly made.").

As described in Mr. Comey's Motion for a Bill of Particulars, the lengthy September 30, 2020 hearing at which the government alleges Mr. Comey made "false and misleading statements" spanned topics ranging from the FBI's Crossfire Hurricane investigation, to the investigation into Hillary Clinton's alleged mishandling of classified information, to white supremacist activities in the United States. Br. at 3. The government surely knows, seven weeks out from trial, which of Mr. Comey's statements at the September 30, 2020 hearing it believes were false, and could say so without burden.

Indeed, the government *must* know which statements it plans to rely on because it cannot broaden or alter the charges in the putative indictment; that is, it is not free to rummage through Mr. Comey's September 30, 2020 testimony and identify statements that it now contends are misleading but were never presented to or considered by the grand jury. *See United States v. Simmons*, 11 F.4th 239, 268-69 (4th Cir. 2021); *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (only the grand jury may broaden or alter the charges in the indictment). Mr. Comey "should not have to waste precious pre-trial preparation time guessing which statements he has to defend against . . . when the government knows precisely the statements on which it intends to rely and can easily provide the information." *Trie*, 21 F. Supp. 2d at 21; *see also Blair*, 2021 WL

10

424411, at *6 (noting that "the burden on the defense to wade through the massive amount of discovery, as compared to the relatively minor imposition on the government that would flow from the requested disclosure, need not be overlooked"). Allowing the government to wait until trial to identify the statements that form the basis of its prosecution, or even the topic of investigation Mr. Comey allegedly endeavored to obstruct would result in a failure "to fulfill [the] primary office" of an indictment—"to inform the defendant of the nature of the accusation against him." *Russell*, 369 U.S. at 767.

Nor would the government's approach allow Mr. Comey to adequately prepare a defense to Count Two. The topics covered at the September 30, 2020 hearing were subjected to extensive investigations during the first Trump administration, none of which resulted in charges against Mr. Comey and all of which likely generated exculpatory evidence to which Mr. Comey is entitled. Without knowing what Count Two is actually about, Mr. Comey cannot ensure he receives the exculpatory discovery to which he is entitled.

Finally, the government's position (at 7, 14) that Count Two may relate to Mr. Comey's testimony that he did not recall being "taught" [*sic*] of "an investigatory lead from the intelligence community" regarding "U.S. presidential candidate Hillary Clinton's approval of a plan concerning U.S. presidential candidate Donald Trump and Russian hackers hampering U.S. elections as a means of distracting the public from her use of a private email server" counsels in favor of requiring a bill of particulars. *See* Opp. at 7 (quoting ECF No. 138-14). This precise theory was presented to the grand jury, which found there was insufficient evidence to indict Mr. Comey for making a false statement. *See* ECF No. 3. And although the government purports to have probable cause to bring Count Two under this theory, it has since admitted that the grand jury did not even *see* the revised indictment. *See* ECF No. 195 at 48:16-23. A bill of particulars as to

11

Count Two is critical because, as set forth in Mr. Comey's Reply Memorandum in Support of Motion for Disclosure of Grand Jury Proceedings, the government's reliance on this theory may be grounds for dismissal of Count Two.

### III. Mr. Comey's Motion Does not Seek "Inordinate Detail"

The government contends (at 14-15) that even if a bill of particulars were warranted, Mr. Comey's request "inappropriately seeks to compel the Government to provide inordinate detail regarding 'the precise manner in which the defendant[] committed the crimes charged.'" Opp. at 14 (quoting *United States v. McComber*, 2021 WL 5760731, at *6 (D. Md. Dec. 3, 2021)). Not so. Mr. Comey requested basic information regarding the government's factual basis for contending that the statement in Count One was false, as well as identification of the specific false statement or statements at issue in Count Two and the government's factual basis for alleging falsity with respect to each statement at issue. *See* Br. at 3-4. For the reasons set forth in Sections I and II, *supra*, this is appropriately addressed through a bill of particulars.

### CONCLUSION

For the reasons set forth above, the government should be required to provide a bill of particulars as to Count One and Count Two of the putative indictment.

Dated: November 20, 2025        Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/   Jessica N. Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone:  (703) 684-7908
Facsimile:  (703) 649-6360
Email:  jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone:  (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 479-6000

Ephraim A. McDowell (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

Michael R. Dreeben (*pro hac vice*)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone:  (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of November, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Jessica N. Carmichael
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*