IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| United States of America, ) | |
| ) | |
| v. ) | Case No.: 1:25-CR-00272-MSN |
| ) | |
| James B. Comey, Jr., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**JAMES B. COMEY JR.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS**

Exhibit 1

PATRICK J. FITZGERALD, ESQ.

c/o Carmichael, Ellis, and Brock
108 N. Alfred Street
Alexandria, VA 22314
patrickjfitzgeraldlawoffice@gmail.com

Lindsey Halligan, Esq.
United States Attorney
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria VA 22314

October 2, 2025

Re: *United States* v. *James Comey*; No. 1:25-CR-272

Dear Ms. Halligan:

I write in relation to the above-referenced matter to request that you promptly produce all materials contemplated under Rule 16 of the Federal Rules of Criminal Procedure and pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny, as set forth in greater detail below. As part of that production, we write to make specific requests to preserve and produce certain documents highly relevant to core issues we intend to raise in our challenge to the indictment.

Relevant Background Facts

James Comey has exercised his First Amendment rights to criticize President Trump over the last eight years. Meanwhile, President Trump's personal enmity for Mr. Comey has been open, notorious, and frequent. All of that is part of how a free and open democracy works. But this prosecution represents a dangerous departure from the laws and principles that define our democracy. The President intensely pressured the Department of Justice ("DOJ") to bring a vindictive (and meritless) prosecution against Mr. Comey in an effort to silence him and intimidate other critics.

In September 2025, there was a torrent of public reporting that the United States Attorney's Office for the Eastern District of Virginia ("the EDVA") was investigating Mr. Comey for allegedly providing false sworn testimony.[1] There was also substantial reporting that the Assistant United States Attorneys ("AUSAs") at EDVA had serious concerns about the merits of the prosecution and that then Interim United States Attorney Erik Siebert (a career prosecutor whom President Trump had nominated to serve as United States Attorney) shared those concerns. There were also reports that the testimony of a key witness did not support the Government's case. Substantial reporting indicates that Mr. Siebert understood that President

---

[1] In that regard, on September 17, 2025, I wrote the DOJ to ask for a meeting to discuss why the case should not be brought but never received a substantive response, much less a meeting.

Trump would fire him as a result of his decision not to bring the case. Mr. Siebert resigned on Friday, September 18, 2025. On that same day, the then First Assistant United States Attorney ("FAUSA"), Maya Song, who, upon information and belief, similarly shared concerns about the merits of the putative prosecution of Mr. Comey, was demoted to line attorney.

Although the President's improper, inflammatory and inaccurate statements about this matter are numerous, one need only look at a handful of social media posts by the President to understand the blatantly vindictive nature of this prosecution. First, in a post that apparently was intended to be addressed to the Attorney General alone, but was released more broadly on social media, the President demanded that action be taken by the DOJ against his critics and that he wanted Lindsey Halligan, a lawyer then assigned to the White House staff, to be part of those prosecutions:

> Pam: I have reviewed over 30 statements and posts saying that, essentially, 'same old story as last time, all talk, no action.' Nothing is being done. What about Comey, Adam 'Shifty' Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done. Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job.
>
> … Lindsey Halligan is a really good lawyer… We can't delay any longer, it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT

*See* Truth Social Post by the President on 9/20/25 at 6:44 pm.[2]

Thereafter, that same evening, President Trump announced on social media that he would appoint Lindsey Halligan as "United States Attorney," noting that he needed a "tough prosecutor" to "get things moving," despite her having no experience as a prosecutor.[3] And, again that evening, when asked about his social media posts, President Trump stated to reporters, "I just want people to act, they have to act and we want to act fast. One way or the other. They're guilty, they're not guilty. We have to act fast."[4]

So, on September 22, 2025, Lindsey Halligan was sworn in as United States Attorney for the EDVA.[5] Three days later, on September 25, 2025, President Trump continued his entirely

---

[2] https://truthsocial.com/@realDonaldTrump/posts/115239044548033727

[3] https://truthsocial.com/@realDonaldTrump/posts/115239306164275142

[4] https://www.youtube.com/watch?v=vnnMHG0GnkQ

[5]https://www.politico.com/news/2025/09/22/bondi-taps-lindsey-halligan-federal-prosecutor-00575547https://www.politico.com/news/2025/09/22/bondi-taps-lindsey-halligan-federal-prosecutor-

improper public comments concerning Mr. Comey, including stating, "I think I'd be allowed to get involved if I want, I don't really choose to do so. I can only say that Comey is a bad person. He's a sick person."[6] Within hours, Mr. Comey was indicted on two counts on the basis of a grand jury presentation by Ms. Halligan, evidently without the participation of any other prosecutor assisting her before the grand jury. The grand jury returned a no true bill on one of three proposed counts. The two counts were approved by a mere 14 votes each.

The indictment was followed by a series of additional improper public comments by the President concerning the case, including one social media post stating that Mr. Comey is "one of the worst human beings this Country has ever been exposed to" and that he was a "former Corrupt Head of the FBI."[7]

The Defense Theory of the Case

By way of a brief overview, it is the defense's position, grounded in facts that are largely public already, that:

*First*, you were unlawfully appointed Interim United States Attorney for the express but improper purpose of pursuing a vindictive and/or selective prosecution of Mr. Comey based on insufficient (or no) evidence, all in retaliation for Mr. Comey exercising his First Amendment rights to criticize the President.

*Second*, it is our position that this prosecution entirely lacks merit to the point that there was no probable cause to support it, a fact that we intend to establish that both supports claims of vindictive and/or selective prosecution and provides an independent basis for dismissal. Relatedly, based upon a thorough review of the underlying facts known to us, it already appears that the Indictment that was returned could only have been obtained if the grand jury was affirmatively misled about the facts, the controlling law, or both. While to-date you have not responded to my September 27, 2025, email asking for identification of Person 3 in the Indictment, for example, we believe that if either Andrew McCabe or Daniel Richman is Person 3, that their prior statements to the Government were exculpatory.

*Finally*, the Government's collective effort – led by the President – to demonize Mr. Comey repeatedly both before and after his indictment is a circumstance (thankfully) without

---

00575547. (In the interim, on September 20, 2025, on the heels of the departure of Mr. Siebert, Margaret Cleary, a former local prosecutor and Assistant United States Attorney from the Western District of Virginia, was appointed by the Attorney General to serve as the Acting United States Attorney for EDVA. Like Mr. Siebert, and like the other career prosecutors in that office, Ms. Cleary reportedly expressed her concerns about the merits of the proposed prosecution of Mr. Comey.)

[6] https://www.youtube.com/watch?v=UEHplff4Rpo (at 23:11)

[7] https://truthsocial.com/@realDonaldTrump/posts/115267513846352215

3

precedent in American history. Those blatantly improper statements are both an independent basis for a claim of outrageous Government conduct but also further proof of the unlawfully vindictive and/or selective nature of this prosecution.

Notably, we also seek to preserve these documents for the claim we will bring under the Hyde Amendment against the Government after our client is vindicated.

Defense Discovery Requests

While reserving all rights to seek additional discovery and amend our theory of the case, we briefly outline the categories of the defense's requests for discovery below followed by more detailed descriptions of each:

(1) Any and all documents and communications that relate to the purported appointment of Lindsey Halligan as Acting or Interim United States Attorney or otherwise purports to invest Lindsey Halligan with the authority to investigate, charge, and/or prosecute this case;

(2) Any and all documents and communications relating to whether probable cause supports the prosecution, including but not limited to, all internal memoranda discussing that issue or recommending that a prosecution of this case proceed or be declined;

(3) Any and all documents and communications concerning the grand jury presentation, including any documents indicating whether exculpatory evidence would be and was presented to the grand jury;[8]

(4) Any and all documents and communications concerning President Trump's personal hostility to James Comey;

(5) Any and all documents and communications reflecting the DOJ's awareness of the views of President Trump or members of his administration concerning his desire to prosecute persons he deemed his opponents (including, but not limited to, James Comey) and the DOJ's efforts to comply with the President's wishes as well as fears of DOJ personnel of the consequences if they failed to do so;

(6) Any and all documents and communications concerning the appointment of Maggie Cleary as Acting United States Attorney for the Eastern District of Virginia including, but not limited to, any discussion of the likelihood that she would bring charges against James Comey or Letitia James if so appointed, as well as any documents

---

[8] See my email to you dated September 24, 2025.

4

reflecting frustration or disappointment with her after her appointment when, as publicly reported, she expressed concerns about a prosecution;

(7) Any and all documents concerning the decisions to purport to appoint Lindsey Halligan as Interim or Acting United States Attorney including, but not limited to, any discussion of the likelihood that she would bring charges against James Comey or Letitia James;[9]

(8) Any and all documents and communications by the Federal Bureau of Investigation ("FBI") or DOJ to President Trump or his staff following President Trump's public comments or posts about James Comey from September 1, 2025, forward; and

(9) Any and all documents and communications reflecting any effort to delete documents or posts concerning this case by anyone at DOJ (including the FBI or the White House).[10]

The defense now details these categories of discovery requests below.

* * *

---

[9] https://truthsocial.com/@realDonaldTrump/posts/115239044548033727

[10] https://www.foxnews.com/politics/trump-pressures-bondi-prosecute-adversaries-now-deleted-social-media-post-theyre-all-guilty-hell

5

**DOCUMENT CATEGORY ONE: DOCUMENTS PURPORTING TO APPOINT LINDSEY HALLIGAN ACTING OR INTERIM UNITED STATES ATTORNEY OR OTHERWISE PURPORTING TO AUTHORIZE MS. HALLIGAN TO INVESTIGATE, CHARGE, OR PROSECUTE THIS CASE**

A core issue in this case is whether Interim United States Attorney Lindsey Halligan was lawfully appointed and, if not, what remedy should obtain. *See United States v. Girraud*, Crim No. 24-768 (MWB)(D.N.J.) (opinion dated August 21, 2025) and *United States v. Garcia*, Crim No. 2:25-CR-00230-DGC-BNW (opinion dated September 30, 2025). Accordingly, we seek any and all documents purporting to empower Ms. Halligan to investigate, charge and prosecute this case. The relevance of responsive documents to our motion to challenge Ms. Halligan's appointment is self-evident. In addition, any effort by the Attorney General to appoint Ms. Halligan with knowledge that the Attorney General lacked the legal authority to do so would be relevant to other putative motions, including a vindictive prosecution motion, a selective prosecution motion, and an outrageous government conduct motion.

Accordingly, in addition to the standard Rule 16 discovery that we are entitled to receive promptly, we believe that we are entitled to receive the following categories of documents pursuant to Rule 16 and *Brady* and its progeny, all of which are material to Mr. Comey's ability to defend this case in pretrial motion practice and/or at trial:

(1) Any and all documents and communications concerning the appointment of Ms. Halligan as Acting or Interim United States Attorney;

(2) Any and all documents and communications, including the dates and precise times of creation, purporting to authorize Ms. Halligan to investigate, authorize, or prosecute this case in any manner;

(3) Any and all documents and communications involving or concerning Ms. Halligan while still employed at the White House as to what she would plan to do if appointed as Acting or Interim United States Attorney for the EDVA:

(4) Any and all documents and communications to which personnel of the Executive Office of the President of the United States were a party concerning that Office's expectations of Ms. Halligan as it relates to the prosecution of Mr. Comey, or any actions Ms. Halligan was expected, hoped, or promised to take if Ms. Halligan was appointed Acting or Interim United States Attorney for the EDVA;

(5) Any and all documents and communications reflecting the date and precise time when United States Attorney Erik Siebert resigned and/or was terminated and the reasons for that resignation and/or termination;

(6) Any and all documents reflecting the date and precise time when First Assistant United States Attorney Maya Song was demoted from her position as First Assistant United States Attorney to line Assistant United States Attorney, and the reasons for that demotion;

(7) Any and all documents reflecting the date and precise time when a successor First Assistant United States Attorney, acting or otherwise, was named and appointed following the demotion of Ms. Song, and the reasons for that appointment;

(8) Any and all documents and communications indicating that the demotion of Maya Song was in any way related to either: (1) her assessment of the merits of the putative case against Mr. Comey; or (2) to avoid having her succeed to the position of United States Attorney pursuant to the Federal Vacancies Reform Act, 5 U.S.C. 3345 et *seq*.) or both;

*(9)* Any and all documents and communications (or memoranda of understanding related to the same), including their dates and precise times of creation, reflecting any delegations of authority from the Attorney General to anyone from January 1, 2025, to present – including, but not limited to, as Special Attorney to the Attorney General or Special Assistant United States Attorney under 28 U.S.C. 509, 510, 515, et seq. – to investigate, charge, or prosecute cases in the EDVA.

(10)   Any and all documents and communications from January 1, 2025, to present by DOJ or the Executive Office of the President of the United States related to the Office of Legal Counsel ("OLC") opinion dated November 13, 1986, authored by then Deputy Assistant Attorney General Samuel A. Alito, Jr.

**CATEGORY TWO: DOCUMENTS CONCERNING THE LACK OF PROBABLE CAUSE OR GOOD FAITH BASIS TO PROCEED**

We believe the evidence underlying the two counts Mr. Comey faces will fail to amount even to probable cause, let alone beyond a reasonable doubt. So too did most of the DOJ, according to public reporting.

In the September 27, 2025, article titled, "Trump Overcame Internal Dissent To Get His Case Against Comey: The Comey family has emerged as one of Trump's biggest targets for retribution in his second term" (hereafter "WSJ Article"), for example, the *Wall Street Journal* reported:

- "President Trump asked advisers directly last week: Where were the prosecutions that he wanted to see? He had been hearing from allies that the Justice Department wasn't moving aggressively against the people who had investigated and prosecuted him, according to people familiar with the matter. Chief among them was former Federal Bureau of Investigation Director James Comey. Senior Justice Department officials told him the evidence against Comey wasn't a slam dunk, and prosecutors in Virginia didn't want to bring the case. Other White House officials worried that such a case could end badly. Trump told the DOJ officials to make the best case they could, officials said. He said any lack of evidence was just like what he faced in his own criminal cases, the people said."

- "The Trump-appointed U.S. attorney in the Eastern District of Virginia, Erik Siebert, had told colleagues he didn't see a case against Comey or Democratic New York Attorney General Letitia James, people familiar with the matter said."

- "On [Lindsey Halligan's] first day as U.S. attorney, career prosecutors in the office presented her with a detailed memo outlining that they hadn't found probable cause to support charging Comey and explained that securing a conviction would be even harder, people familiar with the matter said. They also noted it would raise ethical issues."

This reporting, many others like it, and the defense's own review of the facts call into question whether the government had a good faith basis to proceed with the case. The defense requests:

(1) Any and all documents and communications addressing whether the putative prosecution of Mr. Comey lacked probable cause or a good faith basis to proceed, including, but not limited to, any indication that pursuit of the prosecution would violate either DOJ norms or ethics rules, or both. The request includes but is not limited to, all internal memoranda discussing those issues whether done by any member of the prosecution team individually or as a collective effort.

8

    a. Upon information and belief from media reporting, this should at least include the prosecution team's prosecution and/or declination memo as well as any memo or other document prepared by or for Acting United States Attorney and then First Assistant United States Attorney Maggie Cleary, and any notes prepared in connection with or taken during briefings for Ms. Cleary and/or Ms. Halligan. The request also includes and all other documents and communications indicating the views of all the attorneys involved in the prosecution, including, but not limited to:
        i. Attorney General Pam Bondi
        ii. Deputy Attorney General Todd Blanche
        iii. United States Attorney Erik Siebert for EDVA,
        iv. Maggie Cleary (named as Acting United States Attorney for EDVA)
        v. Lindsey Halligan (named as Interim United States Attorney for EDVA)
        vi. Maya Song (First Assistant United States Attorney for EDVA)
        vii. Brian Samuels (Criminal Chief for EDVA)
        viii. Assistant United States Attorney ("AUSA") Lisa McKeel (EDVA)
        ix. AUSA Patrick McGorman (EDVA)
        x. Edward R. Martin and any other members of the "Weaponization Task Force"[11];

(2) This request also includes all documents and communications reflecting the views of AUSAs or DOJ attorneys (from any part of DOJ or any other United States Attorney's Office) who were asked to participate in the prosecution in any way but declined or otherwise expressed reservations about participation. This request includes, but is not limited to, attorneys who refused to participate in the presentation of the case to the grand jury or who declined to sign the indictment or declined to join the prosecution team after indictment[12]; and

(3) This request also includes all documents and communications reflecting the views of all investigative personnel of the FBI or contract employees thereof or any other law enforcement agency involved in the investigation.

---

[11] *See* WSJ Article: "Tensions over the case came to a head last week after some administration officials, including Ed Martin, a Justice Department official pursuing cases of interest to Trump, privately told the president that the Justice Department was slow-walking cases against Trump critics, people familiar with the discussions said."

[12] *See* WSJ Article: "She presented the case by herself and was the only prosecutor in the U.S. attorney's office to put her name on the indictment."

**CATEGORY THREE: DOCUMENTS CONCERNING THE PRESENTATION TO THE GRAND JURY**

Relatedly, considering the unprecedented circumstances surrounding this case and the general lack of inculpatory evidence related to the two counts Mr. Comey faces, the nature of the government's presentation to the grand jury is inherently suspect. The defense requests:

(1) Any and all documents, communications, or other items concerning the grand jury presentation, specifically including, but not limited to, any and all notes, transcripts and audio recordings of the grand jury proceeding (including all witness testimony, all exhibits, all legal instructions and any colloquy between the prosecutors and the grand jury members);

(2) Any and all documents and communications discussing or indicating which government employees appeared before the grand jury related to this case on September 25, 2025.

(3) Any and all documents and communications indicating whether the prosecutor should disclose exculpatory evidence to the grand jury hearing this case, including, but not limited to, whether to disclose to the grand jury: (a) the statements of Daniel Richman; (b) the statements of James Comey; and (c) the statements and impeachment information concerning Andrew McCabe;

(4) Any and all documents and communications discussing whether the grand jury should hear directly from the witness Daniel Richman;

(5) Any and all documents and communications discussing whether or not to engage with defense counsel for Mr. Comey prior to returning the indictment, including, but not limited to, whether such notice should not be provided to avoid the risk that Mr. Comey would ask to testify before the grand jury.

(6) Any and all documents and communications discussing whether to provide notice to Mr. Comey as a target that an indictment would be sought, including, but not limited to, whether such notice should not be provided to avoid the risk that Mr. Comey would ask to testify before the grand jury.

**CATEGORY FOUR: DOCUMENTS CONCERNING VINDICTIVE AND/OR SELECTIVE PROSECUTION**

As noted above, all of these arguments and discovery requests, though sufficient on their own to warrant dismissal of the charges against Mr. Comey, also relate to the government's overarching effort to vindictively and/or selectively prosecute Mr. Comey. "To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Villa*, 70 F.4th 704, 708-09 (4th Cir. 2023) (cleaned up). "Absent this kind of direct evidence, a defendant may state a claim indirectly with evidence of circumstances from which an improper vindictive motive may be presumed." *Id*. at 709 (cleaned up). The above detailed facts related to the vindictive and selective nature of this prosecution are but a small sample of what exists in the public domain. The government's discovery obligations reach far further than publicly available information. The defense hereby requests:

(1) Any and all documents and communications reflecting the DOJ's awareness of the views of President Trump or members of his administration concerning President Trump's desire to prosecute persons he deemed his opponents—including, but not limited to, James Comey, Letitia James (Attorney General for New York), United States Senator Adam Schiff, John Brennan (former Director of Central Intelligence), John Bolton (former National Security Advisor); and Christopher Wray (former Director of the FBI);

(2) This request, includes, but is not limited to, any and all documents and communications discussing the potential prosecution of more than one of the above named people in the same document; [13]

(3) That request includes, but is not limited to, any and all documents and communications that list more than one of the above named people in the same document (whether or not the document describes itself as a "list");

(4) That request includes, but is not limited to, any and all documents and communications that discuss the priority and sequencing of putative prosecutions of more than one of the above named people;

---

[13] There is no *a priori* reason why DOJ, acting independently of the President and consistent with DOJ norms, should be discussing the putative prosecution of Senator Adam Schiff for a purported mortgage fraud in 2012 (which we understand Senator Schiff vigorously denies) and a putative prosecution of Mr. Comey for alleged false statements in 2020 Congressional testimony (which we vigorously deny) as related matters.

11

(5) The above request specifically includes, but is not limited to, documents and communications involving any of the following: President Trump, Stephen Miller (White House Deputy Chief of Staff), Attorney General Pam Bondi, Deputy Attorney General Todd Blanche, FBI Director Kash Patel, Edward R. Martin and any members of their respective staffs;

(6) The above request specifically includes documents and communications reflecting receipt and/or awareness by DOJ personnel of such communications or posts of whatever form by the President (including "Truth Social" posts) and the actions or reactions to such posts by any DOJ personnel;

(7) The above request specifically includes documents and communications concerning communications by President Trump to DOJ personnel that were not posted to the public;

(8) The above request specifically includes documents and communications concerning how to communicate prosecution decisions back to the President and the actual communications with the President about: (i) concerns by the prosecution team that the case was not appropriate for prosecution; and (ii) developments concerning the effort to seek an indictment. This request includes, but is not limited to, any documents and communications reflecting fear or concern by members of the FBI (including its contractors), DOJ (including EDVA) considering the putative prosecution as to President's reaction to any hesitation to prosecute (including a decision not to prosecute)[14];

(9) The above request specifically includes documents and communications about how Mr. Comey would be arrested and whether or not an opportunity would be sought to make an arrest in a public place or in a manner that would allow Mr. Comey to be photographed;

(10) The above requests specifically include all documents and communications concerning the possible or actual termination, demotion, or criticism of prosecutors who expressed concern about proceeding with the prosecution, specifically including, but not limited to, any of the following:

---

[14] *See* WSJ Article: "The indictment Thursday sent shock waves through the office, leaving some prosecutors questioning how long they would remain in their jobs and concerned about future political pressure in cases large and small"

12

    a. Attorney General Pam Bondi;
    b. Deputy Attorney General Todd Blanche;
    c. United States Attorney Erik Siebert;
    d. Interim United States Attorney Maggie Cleary;
    e. Acting United States Attorney Lindsey Halligan;
    f. First Assistant United States Attorney Maya Song;
    g. Criminal Chief Brian Samuels;
    h. AUSA Lisa McKeel; and
    i. AUSA Patrick McGowan

(11) The above request specifically includes copies of all public postings concerning the Comey investigation and the Comey prosecution by officials in the Trump administration, including but not limited to:

    a. President Trump
    b. Vice President J.D. Vance
    c. Attorney General Pam Bondi
    d. FBI Director Kash Patel
    e. Deputy Attorney General Todd Blanche
    f. United States Attorney Lindsey Halligan
    g. White House Deputy Chief of Staff Stephen Miller
    h. Edward R. Martin

(12) The above request specifically includes any and all documents and communications related to similarly situated individuals the DOJ did not initiate prosecutions against by way of complaint or indictment. This request includes, among others, all documents and communications concerning the investigation of and/or decision not to charge any individuals from September 30, 2020 to present for allegations of perjury, false statements, and/or obstructing a congressional proceeding. This request includes copies of all referrals and documents and communications regarding all referrals to DOJ by Congress (both Republicans and Democrats) from September 30, 2020, to present for potential investigation regarding allegations of perjury, false statements, and/or obstructing a congressional proceeding.

13

**CATEGORY FIVE: DOCUMENTS CONCERNING PRESIDENT TRUMP'S HOSTILITY TO JAMES COMEY**

(1) All documents and communications reflecting President Trump's hostility to James Comey;

(2) All documents and communications reflecting that during the first Trump Administration, President Trump and his staff sought to have James Comey investigated by the DOJ and/or audited by the IRS;

(3) All documents and communications reflecting that during the first Trump Administration, any member of the Administration (including, but not limited to, then Chief of Staff John F. Kelly) cautioned President Trump against directing the DOJ or IRS to investigate or prosecute perceived enemies, including but not limited to, James Comey. This request would specifically include a memo produced by Don McGahn, then White House Counsel, addressing efforts to pursue prosecutions of Trump's perceived adversaries, including, but not limited to, James Comey;

(4) All documents and communications concerning the decision to terminate Maurene Comey from her position as an Assistant United States Attorney in the Southern District of New York that indicate in any way that her relationship to her father, Mr. Comey, was a factor or considered in any way;

(5) All documents and communications indicating that anyone in the DOJ, EDVA, FBI, or the White House was in communication with persons outside the Government about the potential prosecution of Mr. Comey from July 2025 forward to the present date, including, but not limited to, any communications involving:
   i. Lara Loomer[15]
   ii. Peter Navarro[16]

---

[15] *See* Laura Loomer X Account: "This comes 2 months after my pressure campaign on Pam Blondi to fire Comey's daughter and Comey's son-in-law from the DOJ," Loomer boasted in a X post on Wednesday."

[16] *See* WRAL News: "Trump's trade adviser Peter Navarro this week called for Comey to be imprisoned for a host of Trumpworld grievances – many of which federal prosecutors have previously looked at and didn't find reason to charge. Navarro previously did time in federal prison for refusing to comply with congressional subpoenas in the investigation into efforts to overturn the 2020 presidential election leading into the January 6, 2021, US Capitol riot. 'There's a lot of people out there who should be in prison in my judgment, and I think in the judgement of many people in the Trump Administration,' Navarro said. 'James Comey's at the top of that list now.'"

    iii. Mike Davis[17]
    iv. Julie Kelly[18]
    v. Any member of the media

 (6) All documents and communications concerning pressure from President Trump and/or his staff and/or DOJ (including Ed Martin and the "Weaponization Working Group") to terminate Michael Ben'Ary and the DOJ decision to terminate Michael Ben'Ary from his position as an Assistant United States Attorney in the Eastern District of Virginia that – as reported by CNN on October 1, 2025: "Justice Department fires prosecutor falsely tied to Comey case in social media post" – indicate in any way that his purported connection to the investigation of Mr. Comey was a factor or considered in any way in connection with the termination of his DOJ employment;[19]

---

[17] *See* WSJ article: "President Trump campaigned on the fact that he's going to have his Justice Department bring accountability for the lawfare against him and he's delivering on his promise," said Mike Davis, a Republican legal activist and Trump ally. "Retribution is a critical component of justice." Davis said it was a "good thing" that Trump now has a Justice Department that listens to him and does what he says.

[18] *See* https://x.com/julie_kelly2/status/1973469997985853474

[19] *See* https://www.cnn.com/2025/10/01/politics/justice-department-prosecutor-fired-comey-case

**CATEGORY SIX: DOCUMENTS CONCERNING OUTRAGEOUS CONDUCT INCLUDING REPEATED PREJUDICIAL STATEMENTS BY THE PRESIDENT**

(1) All documents and communications concerning communications to the White House expressing either approval or disapproval of the President's social media posts concerning Mr. Comey;

(2) The above request specifically includes, but is not limited to, any DOJ input, suggestions or edits to any of the President's statements or any comments to the President or his staff about the posts before or after they were published;

(3) The above request specifically includes, but is not limited to, any DOJ suggestion to retract or delete any of the President's statements or any comments;

(4) The above request specifically includes, but is not limited to, any DOJ suggestion to disseminate or amplify any of the President's statements or comments;

(5) Copies of all "talking points" or other briefing materials or suggested points to be made (whether "on background," "on deep background," or "off the record," or on the record) to media outlets before, during or after the Indictment of Mr. Comey.

**CATEGORY SEVEN: DOCUMENTS CONCERNING PRIOR INCONSISTENT POSITIONS TAKEN BY THE GOVERNMENT**

(1) All documents that reflect the government's prior positions concerning the credibility of Andrew McCabe's testimony and/or statements, including but not limited to, the draft indictment of Andrew McCabe which, upon information and belief, received a "no true bill" in September 2019.

## CATEGORY EIGHT: ADDITIONAL MATERIAL REQUESTED PURSUANT TO RULE 16 AND *BRADY v. MARYLAND*

(1) All statements or testimony (including any recorded statements, reports of statements, and/or notes of statements taken by agents or attorneys) obtained from Andrew McCabe;

(2) All statements or testimony (including any recorded statements, reports of statements, and/or notes of statements taken by agents or attorneys) obtained from Daniel Richman;

(3) All statements or testimony (including any recorded statements, reports of statements, and/or notes of statements taken by agents or attorneys) concerning the putative prosecution of Mr. Comey obtained from any United States Senator or Senate staff member.

(4) All statements of any witness inconsistent with the government's allegations in Counts One and Two, including but not limited to:

   a. Any and all statements by Daniel Richman indicating that he did not need permission or authorization to talk to the media about matters outside the scope of his part-time engagement by the FBI as an unpaid policy advisor;

   b. Any and all statements by Daniel Richman indicating that James Comey never asked, "authorized," or directed him to be an "anonymous source" concerning the Clinton email investigation or the Russian investigation;

   c. Any and all statements by Andrew McCabe indicating (either explicitly or by omission) that McCabe had not authorized the disclosure of information to a Wall Street Journal reporter in 2016; and

   d. Any and all statements by Andrew McCabe indicating (either explicitly or by omission) that he had not informed James Comey of his plan to authorize the disclosure of information to a Wall Street Journal reporter prior to the publication of the October 2016 article.

These discovery requests and obligations under federal law extend to the Executive Office of the President of the United States and the "DOJ,"—to include, but not be limited to, personnel at the Department of Justice's "Main Justice" headquarters; the United States Attorney's Office for the EDVA and other United States Attorney's Offices where relevant personnel may have been reassigned, detailed, or returned for employment during the relevant time period; the "Weaponization Working Group" (established by Attorney General Pam Bondi on February 5, 2025)[20]; and the FBI (including its employees and contractors).

This letter serves as notice to you, and any of your agents, representatives, employees, and others who have acted or purported to act on your behalf, that you have a duty to preserve any and all information, communications, documents and/or electronically stored information (ESI) (hereafter collectively referred to as "documents") that may be relevant to the claims and defenses in this matter, that are in your custody, possession and control, including within the categories set forth below. Please take any and all steps necessary to ensure that all documents are obtained and produced or if you disagree that a category of documents be produced, then promptly advise us of the disagreement but obtain and preserve the documents. The destruction or loss of potentially relevant documents (including electronic documents, such as emails and computer files) – even if inadvertent – could subject you to significant sanctions. You must also cease any efforts to destroy or otherwise dispose of possibly relevant information.

It is imperative that you take steps to prevent the automatic, intentional or accidental destruction of documents, including any routine operations that may cause the loss of documents, tangible items or ESI. Particular care must be taken to preserve the relevant documents of employees who have resigned, been terminated, or reassigned.

This preservation obligation extends to all forms of communication, including text messages, Microsoft Team messages, and any form of ephemeral messaging (e.g. Signal, Telegram), and that obligation applies to all relevant messages regardless of whether they exist or existed on a personal or government-issued device. Relatedly, this preservation obligation and request for documents and communications extends to evidence members of the DOJ or Executive Office of the President of the United States communicated internally or across agencies on end-to-end encrypted messaging applications with deleting messages, failing to preserve federal records as required by federal law. *See* 44 U.S.C. Chapter 31, *et seq.*

cc:  /S/_____
Maggie Cleary, Esq.                                              Patrick J. Fitzgerald
Brian Samuels, Esq.
Jessica Carmichael, Esq,

---

[20] https://www.justice.gov/ag/media/1388506/dl?inline

19