IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-CR-00272-MSN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JAMES B. COMEY, JR.'S MOTION TO DISMISS INDICTMENT BASED ON FIFTH AMENDMENT, RULE 6, AND GRAND JURY VIOLATIONS

James B. Comey, Jr., by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 12(b), moves this Court to dismiss the government's indictment. As explained in the accompanying Memorandum, the case should be dismissed because the grand jury never approved the operative indictment. "A grand jury may indict only if at least 12 jurors concur." Fed. R. Crim. P. 6(f). But here, at least 12 jurors did not concur in the operative two-count indictment; and the grand jury rejected the only indictment that the government presented to it. The government's attempt to prosecute Mr. Comey without a valid "indictment of a Grand Jury" violates the Fifth Amendment. U.S. Const. Amend. V. Moreover, dismissal is independently warranted because of the government's misconduct before the grand jury. Among other things, the government relied on information it obtained in violation of the Fourth Amendment and the attorney-client privilege; and it made serious misstatements of law to the grand jury. Collectively, those violations raise "'grave doubt that the decision to indict was free from the substantial influence of" the government's misconduct, warranting dismissal with prejudice. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (citation omitted).

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

    A.    The Grand Jury Proceedings ...................................................................... 3

        1.    The presentment proceedings ........................................................ 3

        2.    The post-presentment proceedings ............................................... 5

    B.    Pre-Trial Litigation .................................................................................... 8

        1.    The unlawful appointment motion and hearing ............................ 8

        2.    The filter protocol motion and order ........................................... 10

        3.    The vindictive and selective prosecution motion and hearing .................................................................................. 11

ARGUMENT ................................................................................................................... 12

    I.    THE CASE MUST BE DISMISSED BECAUSE THE OPERATIVE INDICTMENT WAS NOT APPROVED BY THE GRAND JURY ................. 12

        A.    The Fifth Amendment and Rule 6 Require that 12 Grand Jurors Concur in the Operative Indictment ........................................................ 12

        B.    The Grand Jury Did Not Approve the Operative Indictment Here .......... 13

        C.    No Indictment Was "Found" Within the Five-Year Limitations Period ........................................................................................................ 20

    II.    THE INDICTMENT SHOULD BE DISMISSED WITH PREJUDICE BASED ON MISCONDUCT BEFORE THE GRAND JURY .......................... 20

CONCLUSION ................................................................................................................. 23

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988)..................................................................................2, 20, 21

*Blueford v. Arkansas*,
    566 U.S. 599 (2012)....................................................................................17, 19, 20

*Chiles v. United States*,
    No. 20-cv-80, 2021 WL 6010347 (N.D. W. Va. Dec. 20, 2021).............................12

*Cooper v. United States*,
    247 F. 45 (4th Cir. 1917) .......................................................................................12

*Gaither v. United States*,
    413 F.2d 1061 (D.C. Cir. 1969).....................................1, 2, 12, 13, 14, 15, 17, 18, 19

*Russell v. United States*,
    369 U.S. 749 (1962)...............................................................................................18

*Stirone v. United States*,
    361 U.S. 212 (1960)...............................................................................................12

*United States v. Bush*,
    659 F.2d 163 (D.C. Cir. 1981)...............................................................................17

*United States v. Chanen*,
    549 F.2d 1306 (9th Cir. 1977) ...............................................................................13

*United States v. Goodson*,
    204 F.3d 508 (4th Cir. 2000) .................................................................................21

*United States v. Hasting*,
    461 U.S. 499 (1983)...............................................................................................21

*United States v. Hill*,
    26 Fed. Cas. 315 (D. Va. 1809) .............................................................................13

*United States v. Johnson*,
    258 F. App'x 510 (4th Cir. 2007)...........................................................................18

*United States v. Perholtz*,
    622 F. Supp. 1253 (D.D.C. 1985)....................................................................17, 18

*United States v. Sandoval-Gonzalez*,
    642 F.3d 717 (9th Cir. 2011) .................................................................................21

*United States v. Thompson*,
    287 F.3d 1244 (10th Cir. 2002) .......................................................................12, 20

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United States v. Williams*,
504 U.S. 36 (1992) ..................................................................................21

**Constitution, Statutes, and Rules**

U.S. Const.
Amend. V ........................................................................................1, 12, 13

18 U.S.C.
§ 641 .......................................................................................................5
§ 793 .......................................................................................................5
§ 1001(a)(2) ............................................................................................3
§ 1505 .....................................................................................................4
§ 3282(a) ...........................................................................................1, 20
§ 3288 ...................................................................................................20

28 U.S.C. § 546 ..............................................................................................3

Fed. R. Crim. P. 1(b)(1)(D) ........................................................................16

Fed. R. Crim. P. 6(e)(1) ..............................................................................16

Fed. R. Crim. P. 6(f) ..........................................................1, 12, 13, 15, 17

**Miscellaneous**

Kyle Cheney, *'We can't delay any longer': Trump urges Bondi to prosecute his
rivals*, Politico (Sept. 20, 2025) ..........................................................22

## INTRODUCTION

In previous filings, Defendant James B. Comey, Jr., has identified multiple independent reasons why this case is legally flawed and must be dismissed with prejudice.  This Motion focuses on fundamental errors in the grand jury process itself.  Those errors reflect the reckless and ill-conceived nature of this prosecution: A president intent on prosecuting Mr. Comey before the statute of limitations expired directed the appointment of a White House aide, Lindsey Halligan, as interim U.S. Attorney, and she then rushed to secure an indictment while flagrantly violating basic grand jury rules in the process.  Those grand jury errors warrant dismissal twice over.

*First*, the case should be dismissed because the grand jury never approved the operative indictment.  "A grand jury may indict only if at least 12 jurors concur."  Fed. R. Crim. P. 6(f).  Here, the grand jury voted to *reject* the only indictment that the government presented to it.  Instead of presenting the grand jury with a revised indictment, Ms. Halligan signed a new two-count indictment that the grand jury had never seen or voted on.  Because at least 12 jurors did not "approve the actual indictment," there is no valid indictment of Mr. Comey.  *Gaither v. United States*, 413 F.2d 1061, 1072 (D.C. Cir. 1969).  The government's attempt to prosecute Mr. Comey without a valid "indictment of a Grand Jury" violates Mr. Comey's Fifth Amendment rights.  U.S. Const. Amend. V.  And because no indictment has been "found . . . within five years" of Mr. Comey's alleged offenses, the statute of limitations on those offenses has expired.  18 U.S.C. § 3282(a).

The government's late-breaking "Notice Correcting the Record" cannot save the putative indictment.  ECF No. 206.  That filing contradicts numerous other representations that the government has made to this Court.  And it rests on an erroneous overreading of an ambiguous exchange between the grand jury foreperson and the magistrate judge.  Even if the grand jury

was in fact presented with the operative indictment, that would only raise a host of additional problems for the government—not least of which is the apparent absence of any recording of that presentment.

*Second*, dismissal is independently warranted because of the government's misconduct before the grand jury. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 255-56 (1988). Mr. Comey has extensively documented that misconduct in prior filings. *See* ECF Nos. 106, 208, 210. And Judge Fitzpatrick's recent opinion details "a disturbing pattern of profound investigative" and prosecutorial "missteps" that have undermined "the integrity of the grand jury proceeding" in this case. ECF No. 191 at 24. Among other things, the government executed search warrants in a manner that violated the Fourth Amendment and relied on the information obtained from those searches as part of its grand jury presentation; relied on attorney-client privileged information as part of its grand jury presentation; and made serious misstatements of law to the grand jurors. *See id.* at 20-22. Collectively, those violations raise "'grave doubt' that the decision to indict"—which the grand jury reached only by a narrow margin and after lengthy deliberations—"was free from the substantial influence of" the government's misconduct. *Bank of Nova Scotia*, 287 U.S. at 256. The putative indictment should therefore be dismissed. And that dismissal should be with prejudice because of the flagrant nature of the government's misconduct during the grand jury process—particularly combined with the flagrantly unconstitutional initiation of this prosecution at the President's behest.[1]

---

[1] Mr. Comey respectfully submits that the Court can and should consider this motion along with Mr. Comey's other dispositive motions. ECF Nos. 59, 60, 105. Those motions are fully briefed, and the government has filed its notice concerning *Gaither v. United States*, 413 F.2d 1061 (D.C. Cir. 1969). *See* ECF No. 201. The defense requests that the Court direct the government to file its response to this Motion—if any—by November 24, 2025.

## BACKGROUND

At the President's direction, the Attorney General purported to appoint Ms. Halligan as interim United States Attorney for the Eastern District of Virginia under 28 U.S.C. § 546.  ECF No. 59-1.  Before that purported appointment, Ms. Halligan had never worked as a prosecutor.  Yet three days after the purported appointment—and just days before the statute of limitations expired on Mr. Comey's alleged offenses—she presented an indictment to a grand jury seeking to charge Mr. Comey with multiple crimes.

### A.     The Grand Jury Proceedings

#### 1.     The presentment proceedings

On September 25, Ms. Halligan sought a grand jury indictment of Mr. Comey.  According to Ms. Halligan, the grand jury proceeding began at about 2:18 PM.  ECF No. 188-1 at 2.  No other prosecutor participated at any stage of the proceedings.  ECF No. 191 at 14.  Thus, besides Ms. Halligan, the only individuals who participated in or witnessed the presentation of the indictment were the grand jurors, the court reporter, and an FBI agent (Agent-3) who appeared as a witness.  The grand jury coordinator (a U.S. Attorney's Office employee) and court security officer (CSO) were stationed outside the grand jury room.

The record establishes that Ms. Halligan presented the grand jury with an indictment that included three counts:

- Count One alleged that "[o]n or about September 30, 2020," Mr. Comey violated 18 U.S.C. § 1001(a)(2) by "falsely stating" to Senators Lindsey Graham and Josh Hawley "during a Senate Judiciary Committee hearing that he, JAMES B. COMEY, JR., did not remember 'being taught' of" Hillary Clinton's "'approval of a plan concerning'" Donald Trump "and the 2016 U.S. Presidential election."

- Count Two alleged that "[o]n or about September 30, 2020," Mr. Comey violated 18 U.S.C. § 1001(a)(2) by "falsely stating" to Senator Ted Cruz "during a Senate Judiciary Committee hearing that he, JAMES B. COMEY, JR., had not 'authorized someone else at the FBI to be an anonymous source in news reports' regarding an FBI investigation concerning" Hillary Clinton.

- Count Three alleged that "[o]n or about September 30, 2020," Mr. Comey violated 18 U.S.C. § 1505 "by making false and misleading statements before" the "Senate Judiciary Committee."

ECF No. 3; *see* ECF No. 191 at 16. The government has produced the transcript and audio recording of the presentment to the Court in connection with motion practice. ECF No. 179. But the defense has not yet viewed the grand jury materials. *See* ECF No. 208. Nonetheless, the proceedings before Judge Fitzpatrick and the government's representations to the defense and this Court establish four important facts about the presentment.

First, in attempting to establish probable cause for Count Three, Ms. Halligan relied exclusively on the alleged false statements that served as the bases for Counts One and Two. The government first informed the defense of that fact in a meet and confer on November 12. See ECF No. 204 at 8. It then identified only these two statements as examples of allegedly false testimony in its opposition to Mr. Comey's Motion for Bill of Particulars. ECF No. 183 at 14.

Second, as Judge Fitzpatrick found, Ms. Halligan "suggest[ed] to the grand jury that Mr. Comey does not have a Fifth Amendment right not to testify at trial." ECF No. 192 at 15. Specifically, in explaining to the grand jury how the government intended to prove its case, she stated: ███████████████████████████████████████████████

███████████████████████████████████████████████ *Id.*

Third, as Judge Fitzpatrick found, Ms. Halligan "suggested to the grand jury that they did not have to rely only on the record before them to determine probable cause but could be assured the government had more evidence–perhaps better evidence–that would be presented at trial." *Id.* at 16.  Again explaining to the grand jury how the government intended to prove its case, she stated: ███████████████████████████████████████████████████████

███████████████████████  *Id.*

Fourth, as Judge Fitzpatrick found, materials retained and searched in violation of the Fourth Amendment (which may have included privileged communications between Mr. Comey and his attorney Daniel Richman) formed the "cornerstone of the government's grand jury presentation."  *Id.* at 14.  The government had originally obtained those materials pursuant to a 2019 warrant that authorized the government—as part of the Arctic Haze investigation—to search for materials related to potential violations of 18 U.S.C. § 641 and 18 U.S.C. § 793.  *Id.* at 9.  Although the Arctic Haze investigation had concluded in 2021, the government retained those materials and searched them in September 2025 without seeking a new warrant.  *Id.* at 10-11. Agents reviewed and printed privileged communications between Mr. Comey and his lawyer and provided what the government has characterized as a "limited overview" to Agent-3.  ECF No. 172-2.  Ms. Halligan referred to those materials in her presentation to the grand jury and elicited extensive testimony about privileged materials from Agent-3.  ECF No. 192 at 14.

### 2.      The post-presentment proceedings

The grand jury apparently deliberated for more than two hours.  *See* ECF No. 188-1 at 2. At the end of the deliberation, the grand jury returned a "no true bill" indicating its "failure to concur in an indictment."  ECF No. 3 at 1.  The foreperson's report stated the following:

> As the foreperson of the grand jury of this court at a session held at Alexandria, Virginia on Sep 25, 2025, I report that 12 or more grand jurors did not concur in finding an indictment in this case.

*Id.* The foreperson signed and dated that report, which was appended as a cover page to the three-count indictment that the grand jury had rejected. *Id.*

Although the defense lacks complete information about the exact order of subsequent events, the government's representations at the November 19 hearing, ECF No. 207, Ms. Halligan's November 14 declaration (ECF No. 188-1), the government's filings, and the transcript of the grand jury return proceeding before Judge Vaala (ECF No. 10) suggest that the following events occurred.

After the close of deliberations, the grand jury foreperson informed the U.S. Attorney's Office grand jury coordinator that the grand jury had voted to reject Count One but had voted to approve Counts Two and Three. ECF No. 200 at 23 n.23. The grand jury coordinator then informed someone from the U.S. Attorney's Office about that result. *Id.* According to Ms. Halligan, then-First Assistant U.S. Attorney Maggie Cleary informed her of the grand jury coordinator's account at about 6:40 PM. ECF No. 188-1 at 2. Ms. Halligan "proceeded to the courtroom for the return of the indictment in front of the magistrate judge." *Id.*

At some point before appearing in front of Judge Vaala, Ms. Halligan and the foreperson signed the last page of the "Report of a Grand Jury's Failure to Concur in an Indictment," ECF No. 3 at 4, and someone from the U.S. Attorney's Office printed a new indictment that included only two counts, ECF No. 1. Count One of the putative new indictment corresponded to Count Two of the original indictment; Count Two of the putative new indictment corresponded to Count Three of the original indictment. *Id.* at 1-2. Ms. Halligan and the foreperson signed the new indictment. *Id.* at 2. But there is no record of the grand jury seeing the new indictment—let alone voting on it.

6

Ms. Halligan and the foreperson then appeared before Judge Vaala at 6:47 PM.  ECF No. 10 at 1.  They presented Judge Vaala with both the "no true bill" and the new two-count indictment.  After the foreperson stated that the grand jury had failed to find probable cause as to Count One, Judge Vaala asked the foreperson several questions:

> THE COURT: Okay. When you say one count -- so I'm looking at two different -- I'm looking at case 25-cr-272, *United States of America v. James B. Comey, Jr.* I have an indictment with two counts that my courtroom deputy read that looks to be signed by you, ma'am.
>
> THE FOREPERSON: Yes.
>
> THE COURT: And it says 14 grand jurors concurred in the indictment.  And then I have a report of a grand jury's failure to concur in an indictment, and it just reports that -- has three counts, and it says that the grand jurors did not concur in finding an indictment in this case.
>
> THE FOREPERSON: So the three counts should be just one count.  It was the very first count that we did not agree on, and the Count Two and Three were then put in a different package, which we agreed on.
>
> THE COURT: So you --
>
> THE FOREPERSON: So they separated it.
>
> THE COURT: Sorry, I didn't mean to interrupt you.  So you voted on the one that has the two counts?
>
> THE FOREPERSON: Yes.

*Id.* at 3-4.

Judge Vaala then asked Ms. Halligan for an explanation of what happened:

> THE COURT: So this has never happened before.  I've been handed two documents that are in the Mr. Comey case that are inconsistent with one another.  There seems to be a discrepancy.  They're both signed by the foreperson.  The one  that says it's a failure to concur in an indictment, it doesn't say with respect to one count.  It looks like they failed to concur across all three counts, so I'm a little confused as to why I was handed two things with the same case number that are inconsistent.
>
> MS. HALLIGAN: So I only reviewed the one with the two counts that our office redrafted when we found out about the two -- two counts that were true billed, and I signed that one.  I did not see the other one.  I don't know where that came from.

7

THE COURT: You didn't see it?

MS. HALLIGAN: I did not see that one.

THE COURT: So your office didn't prepare the indictment that they --

MS. HALLIGAN: No, no, no -- I -- no, I prepared three counts. I only signed the one -- the two-count. I don't know which one with three counts you have in your hands.

THE COURT: Okay. It has your signature on it.

MS. HALLIGAN: Okay. Well...

*Id.* at 5. Judge Vaala then instructed the foreperson to modify the "Report of a Grand Jury's Failure to Concur in an Indictment"—by hand—to reflect that it applied only to Count One. *Id.* at 6. The report filed on the docket reflects that modification. ECF No. 3 at 1.

### B.       Pre-Trial Litigation

Mr. Comey and the government have filed three motions that are relevant here: (1) Mr. Comey's Motion to Dismiss Indictment Based on Unlawful Appointment (ECF No. 60); (2) the government's Motion for Implementation of Filter Protocol (ECF No. 38); and (3) Mr. Comey's Motion to Dismiss Indictment Based on Vindictive and Selective Prosecution (ECF No. 59). Given the Court's familiarity with these motions and the relevant hearings and orders, Mr. Comey recounts only the key details here.

### 1.       The unlawful appointment motion and hearing

On October 20, Mr. Comey moved to dismiss the indictment on the ground that it had been secured by an improperly appointed interim U.S. Attorney. ECF No. 60. That motion was transferred to Judge Currie. ECF No. 62. On October 28, Judge Currie ordered the government to submit "for in camera review, all documents relating to the indictment signer's participation in the grand jury proceedings, along with complete grand jury transcripts." ECF No. 95. The government purported to comply with Judge Currie's order on November 3.

The next day, however, Judge Currie issued an order stating that the grand jury materials she had received were incomplete:

> This court has reviewed the transcript and finds it fails to include remarks made by the indictment signer both before and after the testimony of the sole witness, which remarks were referenced by the indictment signer during the witness's testimony. In addition, the package contains no records or transcripts regarding the presentation of the three-count indictment referenced in the Transcript of the Return of Grand Jury Indictment Proceedings before the Magistrate Judge.

ECF No. 148 at 1.  Accordingly, Judge Currie ordered the government to provide "a complete Transcript and/or recording of all statements made by the indictment signer to the grand jury on September 25, 2025, to include statements made prior to and after the testimony of the witness and during the presentation of the three-count and subsequent two-count indictments." *Id.* at 1-2. On November 5, the government filed a notice of compliance, explaining that it had just received the relevant audio recording and transcript that day, which it provided to Judge Currie.  ECF No. 158 at 1-2.

On November 13, the parties appeared before Judge Currie for a hearing on the motion. In an exchange with the government on the effect of the Attorney General's purported October 31 ratification of Ms. Halligan's actions, ECF No. 137-1, Judge Currie observed that the purported ratification could not pertain to the entirety of Ms. Halligan's conduct before the grand jury because the complete transcript had not been prepared until after the purported ratification. Judge Currie also noted that the transcript still appeared to be incomplete because it concluded at 4:28 PM—almost two-and-a-half hours before the return proceeding in front of Judge Valaa. Judge Currie asked whether it was possible that, during the portion of the proceeding for which there was no transcript, Ms. Halligan had been alone with the grand jury or other individuals had appeared.

The day after the hearing, the government filed a declaration from Ms. Halligan that purported to explain the discrepancy by providing a "brief timeline of the events that day." ECF No. 188-1 at 2. The declaration stated that Ms. Halligan "had no interaction whatsoever with any members of the grand jury" between the close of her presentation at 4:28 PM and the start of the return proceeding at 6:40 PM. *Id.*

### 2. The filter protocol motion and order

After the indictment was filed, the parties engaged in conversations about limitations on the government's handling and use of privileged information. On October 13, the government filed a motion asking the Court to approve the use of a filter team to handle potentially privileged information. ECF No. 38. Mr. Comey opposed, ECF No. 71, and on October 29, this Court assigned Judge Fitzpatrick to resolve legal issues related to the government's motion, ECF No. 102.

On October 5, Judge Fitzpatrick denied the government's motion. ECF No. 161. Additionally, after Mr. Comey explained that the government had relied on potentially privileged information when presenting the indictment to the grand jury, Judge Fitzpatrick ordered the government to file under seal "all documents relating to the September 25, 2025 grand jury proceedings, including complete audio recordings and transcripts." *Id.* at 2. The government immediately appealed and, on November 7, this Court "remanded to Judge Fitzpatrick for further proceedings to analyze whether there are particularized and factually based grounds for disclosure." ECF No. 167 at 2.

On November 17, Judge Fitzpatrick issued an opinion that specified eleven particularized grounds justifying disclosure. ECF No. 191 at 21-22. Nine of those grounds related to the government's use of materials—including potentially privileged information—obtained in violation of the Fourth Amendment. *Id.* Judge Fitzpatrick also found that Ms. Halligan "made

statements to the grand jurors that could reasonably form the basis for the defense to challenge whether the grand jury proceedings were infected with constitutional error." *Id.* at 22. Based on those findings, he ordered the government to immediately disclose the grand jury materials to the defense. This Court stayed that ruling pending its consideration of the government's objections to Judge Fitzpatrick's order. ECF No. 197.

### 3.    The vindictive and selective prosecution motion and hearing

On October 20, Mr. Comey filed a motion to dismiss the indictment because this prosecution is both vindictive and selective, in violation of the Due Process Clause, the First Amendment, and equal protection principles. ECF No. 59. On November 19, the parties appeared before this Court for a hearing on the motion. ECF No. 207.

At the hearing, the government provided additional details about the grand jury proceedings. Most importantly, the government admitted that Ms. Halligan had never presented the operative two-count indictment to the grand jury. *See* ECF No. 207 at 48. The government explained that although the "Report of a Grand Jury's Failure to Concur in an Indictment," ECF No. 3, did not indicate that the grand jury had voted to find probable cause on any count of the indictment, Ms. Halligan heard—via the grand jury coordinator and Ms. Cleary—that 14 grand jurors had voted to find probable cause for Counts Two and Three. ECF No. 207 at 44. Someone (presumably at the U.S. Attorney's Office) then prepared a new two-count indictment; Ms. Halligan and the foreperson signed that indictment and took it to Judge Vaala. *Id.* at 45. But the government conceded that the new two-count indictment was never presented to, voted on, or approved by the grand jury. *Id.* at 48.

## ARGUMENT

## I.    THE CASE MUST BE DISMISSED BECAUSE THE OPERATIVE INDICTMENT WAS NOT APPROVED BY THE GRAND JURY

To be legally valid, an indictment must be presented to the grand jury, and at least 12 grand jurors must approve of that indictment.  That basic requirement was not satisfied here.  The grand jury voted to reject the only indictment that was presented to it.  But rather than presenting a revised indictment to the grand jury, Ms. Halligan signed a new two-count indictment that the grand jury never saw—let alone approved.  Thus, the supposedly operative indictment in this case is not an "indictment of a Grand Jury" at all.  U.S. Const. Amend. V.

### A.    The Fifth Amendment and Rule 6 Require that 12 Grand Jurors Concur in the Operative Indictment

The Fifth Amendment provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. amend. V.  A "paper cannot be called a bill of indictment until it is found 'a true bill' by a properly constituted grand jury."  *Cooper v. United States*, 247 F. 45, 47 (4th Cir. 1917).  "[A]n indictment is 'found' when a grand jury indicts."  *United States v. Thompson*, 287 F.3d 1244, 1250 (10th Cir. 2002).  In turn, Federal Rule of Criminal Procedure 6 makes clear that "[a] grand jury may indict only if at least 12 jurors concur."  Fed. R. Crim. P. 6(f); *see, e.g.*, *Chiles v. United States*, No. 20-cv-80, 2021 WL 6010347, at *3 (N.D. W. Va. Dec. 20, 2021) ("In order to return a true bill, at least twelve jurors must agree.").

The "very purpose" of these rules is to limit a person's "jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218 (1960).  After all, "[t]he decision to hale a man into court is a serious one, subject to official abuse."  *Gaither v. United States*, 413 F.2d 1061, 1066

(D.C. Cir. 1969).   To allow such an action, "12 ordinary citizens must agree upon an indictment." *Id.*

In *Gaither*, the D.C. Circuit applied these principles to hold that an indictment was invalid where the full grand jury did not vote to approve it.   There, "the grand jury voted to 'present' the defendants for grand larceny," after which "[a]n indictment was drafted by the United States Attorney's office, and was signed by the foreman of the jury under the traditional certification 'A True Bill.'"  *Gaither*, 413 F.2d at 1065.  But "[t]he grand jury as a body did not consider the case again" or vote on the actual indictment.  *Id.*  The court ruled that this procedure "was error" because Rule 6 requires "that 12 jurors approve the actual indictment."  *Id.* at 1071-1072.

The D.C. Circuit grounded its holding in history and tradition.  The court explained that the American criminal law has consistently required the "submission of the formal indictment to the grand jury for approval."  *Id.* at 1069.  The court cited two nineteenth-century decisions—including one from the District of Virginia—reflecting that practice.  *Id.* at 1069-1070; *see United States v. Hill*, 26 Fed. Cas. 315 (D. Va. 1809).   And the court emphasized that no precedent or history supported the government's proposed practice of "returning [an] indictment into court without its ratification by the full grand jury."  *Gaither*, 413 F.2d at 1069.  In short, the grand jury must "of course" "review the indictment and adopt it as its own."  *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977).

### B.    The Grand Jury Did Not Approve the Operative Indictment Here

1.    Under the foregoing principles, this prosecution is unlawful because it does not rest on the "indictment of a Grand Jury."  U.S. Const. amend. V.  "A grand jury may indict only if at least 12 jurors concur."  Fed. R. Crim. P. 6(f).  But here, at least 12 jurors did not concur in the only indictment presented to the grand jury.  To the contrary, as to that indictment, the grand

13

jury returned a "no true bill," as evidenced by the signed "Report of a Grand Jury's Failure to Concur in an Indictment," ECF No. 3 at 1.

During the indictment return proceeding, however, the foreperson stated that while fewer than 12 grand jurors had concurred in Count One, 14 grand jurors had concurred in Counts Two and Three. *See* ECF No. 10 at 3-4. That account is inconsistent with the original terms of the "Report of a Grand Jury's Failure to Concur in an Indictment"—which did not state that the grand jury concurred as to Counts Two and Three. ECF No. 3 at 1. But assuming the foreperson's account was accurate, the government would have needed to draft a new two-count indictment (with Count One deleted) and submit that "formal indictment to the grand jury for approval after the prosecutor had drafted it." *Gaither*, 413 F.2d at 1069.

The government has now offered conflicting accounts, but the best reading of the record is that the government never presented a new two-count indictment to the grand jury for a vote. Ms. Halligan's declaration explains that "between concluding [her] presentation and being notified of the grand jury's return, [she] had no interaction whatsoever with any members of the grand jury." ECF No. 188-1 at 2. The declaration further states that the "transcript"—which apparently contains no documentation of a second presentment—"reflects the entirety of the government's presentation and presence in front of the grand jury," and that "[t]here was no additional presentation, interaction, or discussion with the grand jury outside of what is reflected in the transcript." *Id.* at 1-2.

Other statements by the government confirm Ms. Halligan's indication that the two-count indictment was never presented to the grand jury. In its objection to Judge Fitzpatrick's order, the government explained that after the grand jury's vote, "[t]he grand jury coordinator . . . returned to the grand jury room and presented the corrected indictment to *the grand jury*

*foreperson and the deputy foreperson*," ECF No. 200 at 23 n.23 (emphasis added)—not to the full grand jury.  Likewise, the government's notice following the November 19 hearing stated that "the grand jury was provided the *proposed* Indictment"—not the new two-count indictment—and "determined that probable cause existed to believe that the defendant had committed the crimes charged in two counts."  ECF No. 201 at 1 (emphasis added).

Nonetheless, at the indictment return proceeding, Ms. Halligan never stated to the magistrate judge that the grand jury failed to vote on the second, operative indictment.  Ms. Halligan also incorrectly asserted to Judge Vaala that she "did not see" the three-count indictment that was attached to the "Report of a Grand Jury's Failure to Concur in an Indictment."  ECF No. 10 at 5.  In fact, as Judge Vaala noted, that inoperative indictment "ha[d] [Halligan's] signature on it."  *Id.*  Likely assuming that the grand jury had properly voted on the two-count indictment, Judge Vaala directed the foreperson to amend the "Report of a Grand Jury's Failure to Concur in an Indictment" to state that "12 or more grand jurors did not concur in finding an indictment in [*Count 1 only*] in this case."  ECF 3 at 1; *see* ECF No. 10 at 6.  And the foreperson and Ms. Halligan signed both the three-count indictment attached to the "Report of a Grand Jury's Failure to Concur in an Indictment," ECF 3 at 4, as well as a new two-count indictment, ECF No. 1.  But again, it appears that the full grand jury had neither been presented with nor voted on the new two-count indictment.  That new two-count indictment is the supposedly operative indictment in this case, ECF 1—and yet "12 jurors" did *not* "concur" in it, Fed. R. Crim. P. 6(f).  Because Rule 6 requires that "12 jurors approve the actual indictment," the indictment is inval*id.  Gaither*, 413 F.2d at 1072.

On November 20, the government filed a notice "to correct the record regarding statements during the hearing held on November 19, 2025."  ECF No. 206 at 1.  Contrary to the

government's prior statements, it now claims that "the grand jury voted on—and true-billed—the two count indictment." *Id.* But its only support for that claim is the transcript of the foreperson's exchange with Judge Vaala during the return proceeding—specifically, the foreperson's response of "[y]es" to the judge's question of whether the grand jury "voted on the one that has the two counts." ECF No. 206-1 at 4. That response was ambiguous: It could have meant that the grand jury voted to approve a new two-count indictment, or it could have meant that the grand jury voted to approve Counts Two and Three of the original indictment. Thus, the government incorrectly asserts that there is no "ambiguity" or "doubt" about the foreperson's response. ECF No. 206 at 3. Indeed, if the exchange were as clear as the government now maintains, then the government presumably would have invoked it in prior filings and representations to the Court. Instead, it repeatedly indicated that the grand jury did *not* vote on the two-count indictment. *See supra* at 10-11.

If anything, the government's recent Notice to Correct the Record simply raises a host of additional potential problems with these proceedings. To the extent a government attorney presented the new two-count indictment to the grand jury, that presentment was apparently not recorded—which violates Rule 6(e)(1)'s requirement that "all proceedings . . . be recorded by a court reporter or by a suitable recording device." Fed. R. Crim. P. 6(e)(1).[2] To the extent someone else presented the new two-count indictment to the grand jury, it is unclear who that would be and what instructions they would have given—which is why only "attorney[s] authorized by law to conduct proceedings under these rules as a prosecutor" may present to the grand jury. Fed. R. Crim. P. 1(b)(1)(D). And to the extent a new two-count indictment was

---

[2] While Rule 6(e)(1) states that "the validity of a prosecution is not affected by the *unintentional* failure to make a recording," Fed. R. Crim. P. 6(e)(1) (emphasis added), the violation here would be an intentional decision by a government attorney to communicate with grand jurors without a recorder present.

simply handed to the foreperson, then the absence of an experienced legal advisor could have led the foreperson to misunderstand that the grand jury must vote again on the new indictment—and would have left the grand jury without any legal instructions at all.

The government also notes that "[t]he Grand Jury foreperson . . . endorsed the revised two count Indictment by signing it" and asserting that it "reflected the vote of the Grand Jury." ECF 201 at 5. But as the D.C. Circuit explained, "the signature of the foreman cannot in itself convert the indictment, admittedly not seen by the full grand jury, into one properly found by 12 jurors as required by Rule 6." *Gaither*, 413 F.2d at 1071. That makes sense: a signature of one member of the grand jury is neither a substitute for the constitutionally required "indictment of a Grand Jury" as a body, U.S. Const. Amend. V, nor for the "concur[rence]" of "12 jurors," Fed. R. Crim. P. 6(f). Likewise, the foreperson's statement that 14 grand jurors approved two counts in the initial indictment, *see* ECF No. 10 at 4, is "not a final resolution of anything," *Blueford v. Arkansas*, 566 U.S. 599, 606 (2012). "When the foreperson told the court how the jury voted on each [count], the jury's deliberations had not yet concluded" because the jurors had not in fact deliberated on the operative indictment. *Id.* (applying same principle in the jury-trial context).

The government correctly observes that the precise "procedure described in *Gaither*" differs from "the grand jury presentation in this case." ECF 201 at 2. But the two procedures share a common flaw: under both, the operative indictment was "not seen by the full grand jury" and thus not "properly found by 12 jurors as required by Rule 6." *Gaither*, 413 F.2d at 1071. Whether that defect occurs through a vote only to "present" the defendant for a crime (as in *Gaither*), or through a vote only on a "proposed" inoperative indictment (as here), ECF 201 at 1, the fundamental problem is the same.

17

The government cites no authority upholding an indictment in the circumstances here. In *United States v. Bush*, 659 F.2d 163 (D.C. Cir. 1981), the court held that an indictment was valid when it was approved by at least 12 jurors but then "amended merely to correct a clerical error plainly insignificant in nature." *Id.* at 167. And the court expressly distinguished a case (like this one) where the operative indictment was "not found by twelve grand jurors" in the first place. *Id.* at 167 n.39. In *United States v. Perholtz*, 622 F. Supp. 1253 (D.D.C. 1985), the court simply held that an indictment was valid where it "was not signed by the foreman of the grand jury" but (unlike here) "was voted by more than twelve ordinary citizens after the actual terms of *the indictment* were fully presented to them." *Id.* at 1261 (emphasis added).

The government's cited cases involving "changes to indictments" support Mr. Comey. ECF 201 at 4. Those cases invoke "the settled rule" that "an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." *Russell v. United States*, 369 U.S. 749, 770 (1962). For instance, the Fourth Circuit has concluded that the government could properly "amend the indictment before trial by deleting 'base' from the reference to 'cocaine base' in the indictment." *United States v. Johnson*, 258 F. App'x 510, 511 (4th Cir. 2007). Here, the change to the indictment was a matter of substance, not "merely a matter of form." *Russell*, 369 U.S. at 770. The government deleted an entire count from the original indictment—and yet the new indictment was not "resubmi[tted] to the grand jury." *Id.*

2.    The error here requires dismissal of the indictment. *Gaither* articulated "a flat rule requiring dismissal of indictments not found by 12 grand jurors" following "the date of th[e] decision" there. 413 F.2d at 1074. While *Gaither* is a D.C. Circuit decision, the government does not dispute that it is consistent with Fourth Circuit precedent. Nor could it: *Gaither* embodies the uncontroversial proposition—expressly codified in the Federal Rules—that at least

18

12 grand jurors must approve the operative indictment.  Because *Gaither* has been on the books for nearly four decades, its "flat rule requiring dismissal" governs here.  *Id.*

Even if a prejudice inquiry applied, it would be satisfied here.  Accepting the foreperson's account as true, a narrow 14-vote majority of grand jurors approved Counts Two and Three in the "proposed Indictment."  ECF No. 201 at 1; *see* ECF No. 10 at 3.  Had the grand jury been properly required to consider a new indictment with only those two counts, there is a "reasonable possibility" that certain grand jurors would have voted differently.  *Gaither*, 413 F.2d at 1075.  That is particularly true because the alleged conduct underlying the proposed Count One—which the grand jury rejected—undergirds what is now Count Two.  Specifically, proposed Count One involved testimony Mr. Comey gave in response to questioning from Senators Graham and Hawley; and as explained above, that same testimony forms part of the basis for the "Obstruction of a Congressional Proceeding" charge in current Count Two.  ECF No. 1 at 2.  Following the grand jury's express rejection of proposed Count One, it is reasonably possible that certain grand jurors would have viewed the obstruction-related charge in a different light if they had been told the basis for that charge.  *See* ECF No. 208 at 7-14 (detailing the lack of support for proposed Count One).[3]

The Supreme Court's decision in *Blueford* illustrates the point.  There, the foreperson announced to the judge "the jury's unanimous votes [of acquittal] on capital and first-degree murder."  *Blueford*, 566 U.S. at 606.  But because the jury had not resolved certain other counts,

---

[3] In fact, it is reasonably possible that—given the late hour—the grand jurors would have already departed for the day if Ms. Halligan had properly sought to convene the grand jury for a vote on the second indictment.  Indeed, in the Eastern District of Virginia, standard practice is for the grand jury to depart immediately following the close of deliberations.  In that circumstance, the grand jury would have lacked a quorum, and Ms. Halligan would have needed to present the new indictment on a different day—thus creating more time for grand jurors to rethink their prior votes.

the judge "sent the jurors back to the jury room." *Id.* at 604. And after further deliberations, the jury was "unable to reach a verdict" on any count. *Id.* at 606. The Court rejected the defendant's argument that "the foreperson's announcement of the jury's unanimous votes" constituted an "acquittal," explaining that "[t]he foreperson's report was not a final resolution of anything." *Id.* The same is true here: The foreperson's assertion that the grand jury agreed on two counts in an inoperative indictment was not "the final resolution of anything," *id.*—and further deliberations could have led the grand jury in a different direction, just as they did in *Blueford*.

### C.    No Indictment Was "Found" Within the Five-Year Limitations Period

18 U.S.C. § 3282(a) provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed." "[A]n indictment is 'found' when a grand jury votes to indict." *Thompson*, 287 F.3d at 1251. Here, the grand jury never approved the operative indictment—so that indictment has not been "found" within the meaning of Section 3282(a). Accordingly, the five-year limitations period on Mr. Comey's alleged offenses expired on September 30, 2025. He may therefore not "be prosecuted" for those offenses. 18 U.S.C. § 3282(a).[4]

### II.    THE INDICTMENT SHOULD BE DISMISSED WITH PREJUDICE BASED ON MISCONDUCT BEFORE THE GRAND JURY

Mr. Comey has explained in multiple other filings why the government's serious misconduct related to the grand jury proceedings warrants disclosure of the grand jury materials. ECF Nos. 106, 208, 210. And Judge Fitzpatrick agreed that "the record points to a disturbing pattern of profound investigative" and prosecutorial "missteps" that "potentially undermine the

---

[4]   Because no indictment has been found within the statute of limitations period, 18 U.S.C. § 3288's tolling provision would not save a future attempt by the government to prosecute Mr. Comey for the alleged offenses here.

integrity of the grand jury proceeding." ECF 191 at 24. Mr. Comey incorporates his prior filings by reference here and moves to dismiss the purported indictment based on the government's misconduct related to the grand jury proceedings.[5]

A district court may "dismiss an indictment for errors in grand jury proceedings" where "such errors prejudiced the defendant[]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). A defendant may show prejudice if "'the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (citation omitted). As Mr. Comey has explained, the government's misconduct before the grand jury leaves at least grave doubt about whether the grand jury's decision was tainted by that misconduct. ECF Nos. 106, 208, 210. After all, the grand jury deliberated for more than two hours and issued a no true bill that apparently reflected fewer than 12 votes for one count and only 14 votes for the other two counts. *See United States v. Sandoval-Gonzalez*, 642 F.3d 717, 726 (9th Cir. 2011) ("Longer jury deliberations 'weigh against a finding of harmless error because lengthy deliberations suggest a difficult case.'" (citation omitted)). There is substantial basis to believe that, absent the government's misconduct, the grand jury would have rejected all three counts. Dismissal is therefore warranted under *Bank of Nova Scotia*.

That dismissal should be with prejudice. In criminal cases, a federal court may use its "supervisory powers" to "implement a remedy" aimed at vindicating "recognized rights" and "deter[ring] illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983). "[T]he supervisory power can be used to dismiss an indictment because of misconduct before the grand jury." *United States v. Williams*, 504 U.S. 36, 46 (1992) (citing *Bank of Nova Scotia*, 487 U.S.

---

[5] Mr. Comey reserves the right to supplement this Motion with further facts and argument if and when the grand jury materials are disclosed to the defense.

250). As the Fourth Circuit has explained, such a dismissal may be *with* prejudice. *See United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000).

This case calls out for a remedy that will deter the government's egregious conduct. The President initiated this prosecution because of his vindictive animus toward Mr. Comey. Intent on retaliating against a perceived political enemy before the statute of limitations expired, the President directed the appointment of a White House aide with no prosecutorial experience as interim U.S. Attorney. Within three days, Ms. Halligan rushed into the grand jury—without the participation of any other prosecutor in the U.S. Attorney's Office—to seek an indictment of Mr. Comey.[6] Her presentation to the grand jury relied on unconstitutionally obtained information and potentially privileged material—some of which had been provided to Agent-3 before his testimony—and featured multiple serious misstatements of law. The grand jury then rejected the indictment. Yet rather than presenting a new indictment to the grand jury, Ms. Halligan signed a new two-count indictment that the grand jury had never seen or voted on. After receiving news of the indictment, the President rejoiced and congratulated Ms. Halligan for successfully carrying out his bidding.

The government has thus committed a series of flagrant legal violations. And the government's misconduct has threatened Mr. Comey's liberty—even though Mr. Comey should be experiencing the peace of an expired statute of limitations. If a dismissal is *without* prejudice, the government will inevitably try to prosecute Mr. Comey again. The only way to deter the

---

[6] In fact, Mr. Comey's counsel requested a meeting with the U.S. Attorney's Office the week before the indictment was obtained and offered to toll the statute of limitations to allow for that meeting. A prosecutor in the Office told Mr. Comey's counsel that the Office had been directed not to engage with defense counsel. Apparently, the President and Ms. Halligan believed that it was more important to "act fast," Kyle Cheney, *'We can't delay any longer': Trump urges Bondi to prosecute his rivals*, Politico (Sept. 20, 2025), https://bit.ly/43L39up, than to conduct an appropriate investigation and thorough process.

government from continuing to pursue this deeply flawed effort to prosecute Mr. Comey is to dismiss with prejudice. That strong remedy will also send a signal to the President and the Department of Justice that the current pattern of politically motivated prosecutions violates bedrock American constitutional principles. The Judiciary is a vital bulwark against this Administration's intolerable abuse of executive power; it should fulfill that role by dismissing this profoundly unjust and unconstitutional prosecution with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, the indictment should be dismissed with prejudice.

Dated: November 21, 2025          Respectfully submitted,


JAMES B. COMEY, JR.
By Counsel

*/s/   Jessica N. Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone: (703) 684-7908
Facsimile: (703) 649-6360
Email: jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone: (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000

Ephraim A. McDowell (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

Michael R. Dreeben (*pro hac vice*)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone: (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

24

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 21st day of November, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/   Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*
